IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to ALL ACTIONS | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

**REPLY IN SUPPORT OF MOTION FOR PRODUCTION OF
DOCUMENTS PREVIOUSLY PRODUCED TO DEPARTMENT OF JUSTICE**

**INTRODUCTION**

Defendants have not put forward any record of the burden of producing Plaintiffs' requested material and have not attached a single affidavit of cost or technical difficulty. Nor have they cited any law that undermines this Court's authority to order Plaintiffs' requested discovery. Plaintiffs' Motion seeks production of a narrow and targeted set of critically important and indisputably relevant documents that Defendants have already produced to the Antitrust Division of the United States Department of Justice ("DOJ") as part of their investigations into price-fixing into MDI and TDI. Plaintiffs seek these documents because they are unquestionably relevant and have already been collected, vetted, examined and organized for production. Courts in similar cases have often ordered production because early production of these documents is an effective case management tool that will help expedite discovery and streamline this litigation, while imposing virtually no burden on Defendants because their documents have already been collected. Plaintiffs' Motion should be granted.

**ARGUMENT**

**A.   Plaintiffs Seek Only the Limited Production of Documents Already Produced**

The majority of cases cited in Defendants' Opposition ("Opp.") are non-antitrust cases and involve requests for full discovery; they do not apply here to Plaintiffs' limited request in an

antitrust case.[1] Plaintiffs only seek the limited production of specific documents that were previously produced by the defendants in response to a government subpoena. The burden of producing such documents is minimal, a point that is undisputed by the defendants.

As set forth in the myriad cases cited in Plaintiffs' Motion, most courts in similarly situated cases have held that early production of government-subpoenaed documents was merited. *See* Motion at 5-7. Defendants attempt to distinguish these cases by minor factual differences, including that some requests were granted "without substantive analysis of [the] issue," but that merely emphasizes the routine nature of early production. Opp. at 7-8 and n. 2. Defendants also note that production was ordered in some cases after an amended complaint and motion to dismiss were filed. But in those instances, production would be even *less* urgent compared to the present matter, where production prior to filing an amended complaint could

---

[1] Nearly all of the cases cited by Defendants on pages 4-6 of their Opposition concern requests for full discovery not tied to any prior production to a government authority. Accordingly, those courts found the discovery requests to be "sprawling, costly, and hugely time-consuming," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 n.6 (2007), or "vague, ambiguous and unlimited in scope," *Barbieri v. Wells Fargo & Co.*, No. 09-3196, 2012 WL 3089373, at *5 (E.D. Pa. July 27, 2012). *See also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1357 (11th Cir. 1997) (plaintiffs' interrogatories and requests for production "were models of vague and overly broad discovery requests"); *Rutman Wine Co. v. E&J Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (the costs of discovery would be "prohibitive"); *N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co.*, No. 3:08-288, 2011 WL 4571727, at *3 (W.D. Pa. July 13, 2011) (production would require "undue cost and waste of time and effort"); *Pfizer Inc. v. Johnson & Johnson*, No. 17-cv-4180, 2018 WL 1071932, at *2 (E.D. Pa. Feb. 27, 2018) (discovery requested by the plaintiffs, including more than 110 depositions, "will be a large and costly undertaking in this case"); *McAssey v. Discovery Mach., Inc.*, No. 4:16-CV-705, 2016 WL 3227267, at *2 (M.D. Pa. June 13, 2016) (noting the "time, expense and burden" of the requested discovery); *Nunez v. Wertz*, No. 3:CV-14-0727, 2016 WL 1089156 (M.D. Pa. Mar. 21, 2016) (*pro se* plaintiff's discovery request lacked a defined scope).
    *McLafferty v. Deutsche Lufthansa A.G.*, No. 08-1706, 2008 WL 4612856 (E.D. Pa. Oct. 15, 2008), involved a request for the fruits of a government investigation. But even there, the plaintiffs sought documents that were "seized" by government investigators, not collected and produced by defendants. *Id.* at *1. Thus, the request still involved an "expensive" and "burden[some]" discovery process that the court found outweighed the legitimate "interest of the plaintiffs in proceeding expeditiously with this litigation." *Id.* at 2.

prevent the necessity of future amendments. At base, Defendants' Opposition does little to contradict the proposition that the majority of courts have ruled in favor of similar requests for early production of government-subpoenaed documents.

In fact, the cases cited in Plaintiffs' Motion were only a representative sample – many other courts have issued similar orders for early production.[2] To be sure, not every court has allowed early production of government-subpoenaed documents. However, the courts' denials in the cases cited by Defendants were typically based on some overriding factual situation not present here. *Domestic Airline Travel Antit. Litig.*, 174 F. Supp. 3d 375, 376 (D.D.C. 2016) (declining to lift an existing discovery stay where an amended consolidated complaint was already filed and there were demonstrated "privacy issues at stake"); *In re Term Commodities Cotton Futures Litig.*, No. 12-cv-5126, 2013 WL 1907738, at *5 (S.D.N.Y. May 8, 2013) (defendants' motion to dismiss was scheduled to be heard only nine days after the court issued its order to stay discovery).[3]

---

[2] *See, e.g.*, *In re Provigil Antitrust Litig.*, No. 06-cv-1797 (E.D. Pa. Sept. 24, 2009), ECF No. 219 (ordering production of "all materials previously produced by that Defendant to the Federal Trade Commission" while motion to dismiss was being briefed); *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa. Feb. 19, 2014), ECF No. 61 (requiring production of documents already produced or generated in underlying patent litigation or submitted to the FDA prior to a decision on the motion to dismiss); *In re Neurontin Antitrust Litig.*, No. 02-cv-1390 (D.N.J. Oct. 29, 2002), ECF No. 25 (ordering early production of documents even while underlying patent litigation was pending and before filing of consolidated complaint); *Galaria v. Nationwide Mut. Ins. Co.*, No. 13-cv-118, 2013 WL 6578730, at *2 (S.D. Ohio Dec. 16, 2013) (allowing discovery during the pendency of the motion to dismiss where plaintiffs argued that "many of the documents have already been gathered, analyzed, organized by [defendants] in . . . meeting their obligations to governmental agencies.").

[3] Other cases cited by Defendants, *In re Flash Memory Antit. Litig.*, No. C-07-0086, 2008 WL 62278 (N.D. Cal. Jan. 4, 2008) and *In re: Graphics Processing Units Antit. Litig.*, No. C06-07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007), were decided more than ten years ago, before the balance of authority cited in Plaintiffs' Motion made such production routine, and during the period when courts were figuring out the import of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and its implications for pleadings, discovery, and motions to dismiss. Two other cases Defendants cite, *Faith Satellite Radio, LLC v. Lutheran Church Mo. Synod*, No. 10-1373,

### B. Defendants Have Not Presented Any Record Evidence of Burden

Critically, Defendants do not claim that any actual burden exists for the requested production. They have provided no affidavit, or even an estimate, regarding costs. Instead they raise only speculative concerns. Defendants state that they should not have to produce "confidential business information…to lawyers representing their customers and other competitor Defendants." Opp. at 9. But any such concern could be ameliorated by this Court ordering that the documents only be reviewed by attorneys and the information kept confidential pursuant to a protective order. Defendants also state in a footnote that they "may have legitimate objections to assert" "once they see the amended complaint in this case" but do not describe what these phantom objections might be or how an amended complaint might make those objections materialize.

### C. Economy Is Served by Letting Plaintiffs Get to Work

Production of the government-subpoenaed documents now can only increase judicial economy in this case. Defendants provide no good reason for further delay. While Plaintiffs feel strongly that the facts alleged in the underlying complaints will overcome a Motion to Dismiss, a review of the government-subpoenaed documents would help to further refine the allegations in the upcoming amended complaint. For instance, should the Court decide that foreign defendants be served pursuant to the Hague Convention, limited early discovery may assist Plaintiffs in identifying the appropriate foreign defendants, minimizing the need to undergo multiple rounds of Hague Convention requests.[4] In addition, production of these documents now would inform and streamline the discovery process going forward, as Plaintiffs could likely provide more

---

2010 WL 3909467 (D.D.C. Oct. 4, 2010) and *Anderson v. U.S. Atty's Office*, No. 91-2262, 1992 WL 159186 (D.D.C. June 19, 1992), are neither antitrust cases nor do they involve a request for production of documents already produced to a government authority.

[4] Plaintiffs will soon be filing a motion for alternative service of foreign defendants.

tailored discovery requests and even be prepared to discuss production from specific custodians based on a review of these documents. Rather than speculate, Plaintiffs can form document requests, search methodology, and even custodian lists from the requested production.

### D.  Government Investigations Do Not Impact the Scope of Civil Investigations

Defendants tout, without confirming the source, that the DOJ has closed its investigation. This fact does not impact the scope of Plaintiffs' case nor should it impact this Court's decision. Many civil antitrust cases have been successful despite a lack of prosecution by the government.[5]

### E.  This Court Has Authority to Order Discovery in This Matter

Case law states –and Defendants agree– that this Court has broad discretion with discovery. *See, e.g., N. Am. Commc'ns*, 2011 WL 4571727, at *2 ("Management of the discovery process is left to the discretion of the trying court."); Opp. at 1 (stating that courts "have broad discretion to refuse pre-motion to dismiss discovery"). Plaintiffs respectfully submit that this Court exercise that discretion and order production of the government-subpoenaed documents. *See also Barbieri*, 2012 WL 3089373, at *3 ("Rule 26(d) authorizes district courts to grant

---

[5] *E.g.*, *In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) (DOJ investigation led to no indictments, but court allowed claims of price-fixing to go to trial; $120 million in total settlements achieved); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), *cert. denied sub nom. Archers-Daniels-Midland Co. v. Dellwood Farms, Inc.*, 537 U.S. 1188 (2003) (DOJ investigation led to no indictments, but courts allowed claims of price-fixing conspiracy with respect to high fructose corn syrup to go to trial; $530 million in total settlements achieved); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-1827, 2011 WL 5357906, at *7 (N.D. Cal. Nov. 7, 2011) (denying Toshiba's motion for summary judgment regarding participation in the conspiracy even though Toshiba was never charged by the DOJ); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819, 2010 WL 5141861 (N.D. Cal. Dec. 12, 2010) (Court allowed to go to trial direct purchaser case where DOJ had dropped its investigation; $76.8 million in settlements achieved); *In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa.) (settlements achieved in a case where the DOJ investigation resulted in no indictments); *In re Resistors Antitrust Litigation*, 15-cv-03820 (N.D. Cal.) ($61.2 million in settlements achieved despite DOJ closing its investigation); *In re Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232, at *1 (N.D. Cal. Aug. 26, 2003) ($107 million class settlement where there was no parallel government action).

expedited discovery requests.").

                                            Respectfully submitted,

Dated:  January 14, 2019                        *s/ Jason S. Hartley*

                                            Jason S. Hartley (CA 192514)
HARTLEY LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Tel.: (619) 400-5822
Fax: (619) 400-5832
*hartley@hartleyllp.com*

Megan E. Jones (CA 296274)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel.: (415) 633-1908
Fax: (415) 358-4980
*mjones@hausfeld.com*

***Plaintiffs' Interim Co-Lead Counsel***

Dated:  January 14, 2019                      *s/ William Pietragallo, II*

William Pietragallo, II (PA 16413)
PIETRAGALLO GORDON ALFANO
 BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel.: (412) 263-2000
Fax: (412) 263-2001
*wp@pietragallo.com*

***Plaintiffs' Interim Liaison Counsel***

6