IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Cases | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

AMBROSE, United States Senior District Judge

# OPINION AND ORDER

## SYNOPSIS

Pending before the Court is Defendants' Joint Motion to Dismiss the Corrected Consolidated Amended Class-Action Complaint ("CAC") Pursuant to Rule 12(b)(6). (ECF No. 224). Jointly, Defendants filed a Brief in Support and certain Individual Defendants filed separate supplemental filings in support of the same.[1] (ECF Nos. 235, 225, 226, 227, 228, 230, 234, and 259). Plaintiffs have filed a Response to the Joint Motion to Dismiss and the certain individual supplemental filings. (ECF Nos. 247 and 248). Defendants have filed Replies thereto. (ECF Nos. 260, 261, 262, 263, and 266). After careful consideration of the submissions of the parties, and for the reasons set forth below, Defendants' Joint Motion to Dismiss (ECF No. 224) and all related supplemental filings will be denied.

## OPINION

### I. Background

This multi-district litigation stems from an alleged conspiracy to reduce supply and increase price for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor

---

[1]Since the filing of the Motion to Dismiss, Plaintiffs have voluntarily dismissed Bayer AG and Bayer Corp. (ECF Nos. 264, 267). As a result, Bayer A.G and Bayer Corp. are no longer parties to this MDL. *Id.* Therefore, the individual Motion to Dismiss filed by Bayer A.G. and Bayer Corp. (ECF No. 232) is not considered and will be denied as moot.

ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes.[2] Plaintiffs' CAC alleges violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§1, 3, from January 2016 to the present. Defendants assert that the CAC should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails to adequately plead a *per se* antitrust conspiracy and fails to adequately plead a TDI conspiracy claim. (ECF No. 235). The specific issues related thereto have been fully briefed and are now ripe for review. (ECF Nos. 235, 225, 227, 228, 230, 234, 247, 248, 259, 260-263, and 266).

**II.     Standard of Review**

"Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's 'plain statement' lacks enough substance to demonstrate that he is entitled to relief." Sturgeon v. Pharmerica Corp., Civ. No. 15-6829, 2020 WL 586978, at *13 (E.D. Pa. Feb. 5, 2020) (citations omitted). In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court is obligated to "accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the plaintiff]." Phillips v. Cty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008)(citation omitted).

Although the complaint need not include "detailed factual allegations" in order to survive a Rule 12(b)(6) attack, the plaintiff must do more than provide mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "[M]ore than an unadorned, the defendant-harmed-me accusation" must be averred; the complaint must include

---
[2] Unless otherwise noted, the facts are taken from the CAC. (ECF No. 163).

"factual enhancements" rather than just an assertion of the elements of a cause of action. Id. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (citations omitted). Further, the pertinent analysis requires assessing "the allegations of the complaint as a whole." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 47, 131 S. Ct. 1309, 1323, 179 L. Ed. 2d 398 (2011).

As the Third Circuit Court of Appeals recently remarked, "in deciding a Rule 12(b)(6) motion, a court … consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." Hartig Drug Co. Inc. v. Senju Pharmaceutical Co. Ltd., 836 F.3d 261, 268 (3d Cir. 2016) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). Thus, the court "may consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment pursuant to Rule 56. In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Specifically, a court may consider any "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

### III. ANALYSIS

In this complex litigation, it is unnecessary to recount in detail the Plaintiffs' allegations regarding each Defendant, and each Defendant's challenge thereto. The shared kernel of Defendants' Motions to Dismiss pursuant to Rule 12(b)(6) rests on the CAC's alleged lack of specificity, both as to illegal agreement and as to the conduct of each particular Defendant. In sum, Defendants argue that Plaintiffs' conspiracy claim is implausible, and fails to plead either direct or circumstantial evidence of conspiracy.

Antitrust plaintiffs are not required to state in specific detail each defendant's involvement in the alleged conspiracy. In re Generic Pharm. Pricing Antitrust Litig., 338 F. Supp. 3d 404, 435 (E.D. Pa. 2018). "Nonetheless, '[t]he Court properly looks for more than mere repetitive generic

3

reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy.'" Id. at 438 (quoting In re Processed Egg Prods. Antitrust Litig., 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011)). In that vein, plaintiffs may rely on circumstantial evidence, and the inferences to be drawn from that evidence, to state their claims. Id. at 440. In other words, "[a] statement of parallel conduct … needs some … further circumstance" to plead a plausible claim. Twombly, 550 U.S. at 557. Therefore, plaintiffs must allege parallel conduct within a context that suggests a preceding agreement. In re Generic Pharm., 338 F.Supp.3d at 447-48.

The requisite context may be established by allegations of "plus factors" such as motive, a defendant acting contrary to its interests, and evidence implying a traditional conspiracy. In re Generic Pharm., 338 F. Supp. 3d at 448, (citing In re Ins. Brokerage, 618 F.3d at 322 (3d Cir. 2010)). "[P]lus factors are simply circumstances in which the inference of independent action is less likely than that of concerted action." Wallach v. Eaton Corp., 814 F. Supp. 2d 428, 440 (D. Del. 2011). "Plus factor" allegations may include those relating to communications between Defendants at industry gatherings and government agency investigations. See In re Generic Pharm., 338 F. Supp. 3d at 449. Importantly, at the motion to dismiss stage, plaintiffs need not allege or offer evidence that precludes the possibility that defendants acted independently. In re Propranolol Antitrust Litig., 249 F. Supp. 3d 712, 721 (S.D.N.Y. 2017).

"In the antitrust context, 'a claim of conspiracy might appear plausible in light of the well-pled facts in the complaint, only to appear deficient at the summary judgment stage….'" In re Generic Pharms., 338 F. Supp. 3d at 435 (quoting In re Ins. Brokerage Antitrust Litig., 618 F. 3d at 323 n. 21). Indeed, "[e]ven in those contexts in which an allegation of [conspiracy based on] parallel conduct will not suffice to take an antitrust plaintiff's case to the jury, it will sometimes suffice to overcome a motion to dismiss and permit some discovery." In re Ins. Brokerage, 618 F.3d at 323 n.21 (quoting Starr v. Sony BMG Music Entm't, 592 F.3d 314, 329 (2d Cir. 2010)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but

that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984).

Here, although it is admittedly a close question in certain respects, when read as a whole, Plaintiffs have placed their allegations in the CAC in a context that meets the threshold set by Twombly and Iqbal. For example, Plaintiffs' CAC avers coordinated parallel conduct, price increases, plant closures and supply disruptions, Defendants' communication and presence at industry meetings prior to pricing announcements, actions potentially inconsistent with competitive market behavior, and a highly concentrated relevant market that was susceptible to price fixing. Additionally, Plaintiffs' CAC sufficiently avers a motive, that Defendants acted against their interests, and evidence implying traditional conspiracy. Defendants' contentions regarding the possible inference of legitimate, independent business-related conduct do not undermine the sufficiency of these allegations under minimum pleading standards, and the bulk of Defendants' assertions are more appropriate for resolution at a later stage in this litigation.[3] At this stage, for example, Plaintiffs need not explain why some Defendants took many actions and others took few, or the potential market effects of weather events. In addition, the lack of direct evidence of conspiracy has no bearing, at this stage, on the sufficiency of Plaintiff's allegations that rely on indirect evidence.[4]

Further, Defendants' contention that Plaintiffs failed to adequately plead a TDI conspiracy claim (based on a single conspiracy that includes TDI and lack of standing to bring a TDI conspiracy) is rejected. When read in toto, Plaintiffs' CAC has sufficiently pled that they purchased both TDI and MDI and paid inflated prices. Again, in reaching this decision, the Court

---

[3] In re Chocolate Confectionary, 801 F. 3d 383 (3d Cir. 2015), to which Defendants point, arose at the summary judgment stage.

[4] Plaintiffs' access to Department of Justice ("DOJ") documents is, likewise, of no moment. The Court will not engage in guesswork as to the reasons underlying the DOJ's failure to take enforcement action against any Defendant.

5

is mindful both of liberal pleading standards and its obligation to draw all inferences in favor of the Plaintiffs.

## **CONCLUSION**

In conclusion, under applicable standards, Plaintiffs' CAC meets threshold levels of plausibility. Defendants' Motions to Dismiss will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Cases | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

AMBROSE, United States Senior District Judge

# **ORDER OF COURT**

And now, this 9th day of March, 2020, upon consideration of Defendants' Joint Motion to Dismiss the CAC Pursuant to Rule 12(b)(6), it is ordered that the said Motion (ECF No. 224) is DENIED.

It is further ordered that the Motion to Dismiss filed by MCNS Polyurethanes USA Inc. (ECF No. 226) is DENIED.

It is further ordered that the individual Motion to Dismiss filed by Bayer A.G. and Bayer Corp. (ECF No. 232) is DENIED AS MOOT.

A telephone conference is set for March 31, 2020 at 1:30 p.m. All Defendants, except the Foreign Defendants, shall respond to outstanding discovery within 30 days of this order.

BY THE COURT:

*Donetta F. Ambrose*
_____
Donetta W. Ambrose
Senior Judge, U.S. District Court