IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Cases | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

AMBROSE, United States Senior District Judge

## OPINION AND ORDER

### SYNOPSIS

This multi-district litigation stems from an alleged conspiracy to reduce supply and increase price for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes.

Before the Court is a joint Motion to Dismiss filed by foreign Defendants BASF SE, Bayer A.G.,[1] Covestro A.G., Mitsui Chemicals, Inc. ("Mitsui"), MCNS, and Wanhua Chemical Group Co., Ltd. ("Wanhua") (collectively, "Defendants" or "foreign Defendants"). (ECF No. 229). All of the foreign Defendants assert that this Court lacks personal jurisdiction over them, and seek dismissal pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 231). Plaintiffs have filed a response to Defendants' Motion, and Defendants have replied. (ECF Nos. 249, 250, 265). Plaintiffs contend that sufficient aggregate minimum contacts exist in the United States to permit the exercise of jurisdiction, based on four concepts: 1) Defendants' status as co-conspirators with domestic entities; 2) the effects of Defendants' tortious conduct in the United States, per Calder v. Jones, 465 U.S. 783, 790-91, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); 3)

---

[1] Since the filing of the Motion to Dismiss, Plaintiffs have voluntarily dismissed Bayer AG and Bayer Corp. (ECF Nos. 264, 267). As a result, Bayer A.G and Bayer Corp. are no longer parties to this MDL. Id.

1

the conduct of Defendants' domestic subsidiaries, under an alter ego theory; and 4) the conduct of Defendants' domestic subsidiaries, under an agency theory.

For the following reasons, the Defendants' Motion will be denied, without prejudice. Further, the Court concludes that a period of limited jurisdictional discovery is warranted.

**OPINION**

### I.  RULE 12(b)(2) STANDARD

"'A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990).

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), [the Court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). If the moving party submits competent evidence contradicting jurisdiction, the non-moving party bears the burden of showing, by a preponderance of the evidence, that the exercise of jurisdiction is proper. NextGear Capital, Inc. v. Gutierrez, No. 18-1617, 2019 U.S. Dist. LEXIS 71565, at *5 (M.D. Pa. Apr. 29, 2019). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff may not, at any time, rely on the pleadings alone to meet its burden. Id. at 101 n.6 (3d Cir. 2004); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

Given this Court's contemporaneous decisions on Defendants' Rule 12(b)(2) and Rule 12(b)(6) Motions, it is important to note that the applicable standards differ. "While a 12(b)(6) motion requires a court to accept the allegations of the non-moving party as true, a 12(b)(2)

motion 'requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies.'" Bassil v. Starwood Hotels & Resorts Worldwide, Inc., No. 12-4204, 2014 U.S. Dist. LEXIS 135927, at *3 (E.D. Pa. Sep. 24, 2014) (quoting Time Share Vacation, 735 F.2d at 66 n.9).

## II.    PERSONAL JURISDICTION

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).[2] "The foreseeability that is critical to due process analysis … is that the defendant's conduct and connection with the forum … are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985). "It is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum …, thus invoking the benefits and protections of its laws." Id. at 475.  Under any jurisdictional theory, the "constitutional touchstone" of personal jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum State." Id. at 474. Requiring "minimum contacts" between the defendant and the forum affords a defendant fair warning that he may be called to defend a suit in that forum. Clarity Sports Int'l LLC v. Redland Sports, 400 F. Supp. 3d 161, 170 (M.D. Pa. 2019).

In accordance with these principles, a court may exercise either specific or general jurisdiction over a defendant. Specific jurisdiction "allows the court to adjudicate claims related to defendant's contacts with the forum." In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 557 (M.D. Pa. 2009).  General jurisdiction, in turn, is based on a defendant's

---

[2] In cases arising under federal law, the jurisdictional inquiry is guided by the Fifth Amendment due process clause, and incorporates Fourteenth Amendment due process standards. In re Bulk [Extruded] Graphite Prods. Antitrust Litig., No. 02-6030, 2007 U.S. Dist. LEXIS 54906, at *11 (D.N.J. July 30, 2007).

3

continuous and systematic contacts with the forum state, regardless of those contacts' relationship to the litigation at hand. See Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). "Because an incorporated organization is a 'legal fiction,' the question of whether it 'has made [sufficient] contacts justifying the exercise of personal jurisdiction is, in reality, a question of whether the contacts made by the agents and employees of the corporation are sufficient to justify the exercise of jurisdiction.'" In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 491 (E.D. Pa. 2005) (quoting 16 Moore's Federal Practice § 108.42[3][b][ii]).

After a court has found that minimum contacts exist, those contacts may be considered in light of other factors, to determine whether the exercise of jurisdiction would comport with fair play and substantial justice. Burger King, 471 U.S. at 476. In appropriate cases, the court may consider the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in convenient and effective relief, the interstate judicial system's interest in the efficient resolution of controversies, and the states' shared interest in furthering substantive social policies. Id. at 477. "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." Id. at 477-78.

**A. Pertinent Forum**

As a threshold matter, the parties dispute whether Defendants' contacts nationwide, or instead in a narrower forum, are relevant to the "minimum contacts" inquiry. As Defendant acknowledges, under the so-called "national contacts doctrine," personal jurisdiction in federal antitrust litigation is assessed based on a defendant's aggregate contacts with the United States as a whole. See In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 298 (3d Cir. 2004). "This means that personal jurisdiction must comply with the due process requirements of the Fifth Amendment, which requires only that the … Plaintiffs show that [defendant] had minimum contacts with the United States as a whole." In re Liquid Aluminum Sulfate Antitrust

Litig., No. 16-2687, 2019 U.S. Dist. LEXIS 39364, at *38 (D.N.J. Mar. 11, 2019). This principle stems from the notion that if Congress has authorized nationwide or worldwide service of process, a court's jurisdiction is not confined to the state in which the court sits. See, e.g., Pinker., 292 F.3d at 369-70. Pertinent here, Section 12 of the Clayton Act provides as follows:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

Defendants contend, however, that because all of them other than Mitsui were served under the Hague Convention, rather than the Clayton Act, a nationwide contacts analysis is inapplicable.[3] In support of their argument, Defendants cite to Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335 (S.D. Fla. 2002).[4] In that case, defendant was served under the Hague Convention. Id. at 1340. The Court found that service under the Clayton Act is the event that activates the statute's worldwide service provision. Id. Further, the Court concluded, it would be inappropriate to extend the territorial reach of a statute when service is not effected pursuant to the authorizing statute. Id. at 1340-41. Thus, the Court declined to consider defendant's nationwide contacts. Id.

I decline to follow General Cigar. In the first instance, our Court of Appeals has never endorsed the approach of General Cigar. In Clayton Act cases, our Court of Appeals has used language suggesting that the pertinent inquiry involves the nature of the plaintiff's claim and the breadth of service authorized by statute, rather than the mechanism of service actually used to serve a particular defendant. For example, the Court of Appeals has approved reliance on

---

[3] Plaintiffs attempted to serve all of the moving Defendants pursuant to Fed. R. Civ. P. 4(f)(3), and Defendants opposed that request. The foreign Defendants refused to waive service. (ECF No. 156).

[4] Koken v. Pension Benefit Guar. Corp., 430 F. Supp. 2d 493, 499 (E.D. Pa. 2006), to which Defendants cite, does not support their position. In that case, defendant was served pursuant to the Hague convention, instead of ERISA; however, the defendant could not have been served pursuant to ERISA, which allowed only nationwide service. In other words, unlike the Clayton Act in this case, the scope of ERISA's service provision did not extend to the Koken defendant.

national contacts "when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." See, e.g., In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d at 298. District courts within this Circuit have used similar language. Cf., e.g., Emerson Elec. Co. v. Le Carbone Lorraine, S.A., No. 05-6042, 2008 U.S. Dist. LEXIS 72705, at *6 (D.N.J. Aug. 27, 2008). Moreover, as recently observed in S&W Forest Prods. v. CedarShake & Shingle Bureau, No. 19-202, 2019 U.S. Dist. LEXIS 132569, at *8-9 (W.D. Wash. Aug. 7, 2019):

> No other jurisdiction besides the 11th has followed the [General Cigar] rule (it has only even been cited once since 2002). Plaintiff's claims against [defendant] are made under the Sherman Act, which authorizes nationwide service of process; the Court fails to see how (in terms of either fundamental fairness or due process) it makes any difference whether the service is actually made "under" the Sherman Act.

For these reasons, and in the absence of guidance or suggestion to the contrary from our Court of Appeals, I will assess personal jurisdiction in light of Defendants' nationwide contacts.

### B. Conspiracy Jurisdiction

To establish jurisdiction under a co-conspirator theory, "the plaintiff must allege that substantial acts in furtherance of the conspiracy occurred within the forum state and that the foreign defendant was, or should have been, aware of them." United Healthcare Servs. v. Cephalon, Inc., No. 17-555, 2018 U.S. Dist. LEXIS 23720, at *10 (E.D. Pa. Feb. 13, 2018); see also Aetna Inc. v. Insys Therapeutics, Inc., 324 F. Supp. 3d 541, 551 (E.D. Pa. 2018).[5] "To impute the contacts of a co-conspirator to a defendant, Plaintiffs must plead with particularity that … substantial acts in furtherance of the conspiracy occurred in [the forum], and the non-forum co-conspirator was aware or should have been aware of those acts." Insys Therapeutics, 324 F. Supp. 3d at 551 (emphasis added); Arrington v. ColorTyme, Inc., 972 F. Supp. 2d 733, 745 (W.D. Pa. 2013). Notably, this theory of jurisdiction must be approached

---

[5] One court has noted that conspiracy jurisdiction, as applied to foreign defendants, "has been widely criticized by courts and scholars." In re Platinum & Palladium Antitrust Litig., No. 14-9391, 2017 U.S. Dist. LEXIS 46624, at *149 (S.D.N.Y. Mar. 28, 2017) (citing Tymoshenko v. Firtash, No. 11--2794, 2013 U.S. Dist. LEXIS 43543, at *2-4 (S.D.N.Y. Mar. 27, 2013)). I do not hold today that a conspiracy theory alone provides viable grounds for the exercise of jurisdiction.

6

with caution, lest we contravene the dictates of due process. See In re Libor-Based Fin. Instruments Antitrust Litig., No. 11 MDL 2262, 2019 U.S. Dist. LEXIS 49700, at *28 (S.D.N.Y. Mar. 25, 2019). Here, Plaintiffs rest on the allegations in the CAC that the moving Defendants maintained domestic subsidiaries that sold MDI and TDI, and that all the entities conspired together.[6] They also assert, without citation to the CAC, that the moving Defendants directed the price fixing. These assertions do not rise to the level of particularity required, under a Rule 12(b)(2) analysis, to allow this Court to conclusively and comfortably exercise jurisdiction over foreign entities at this time.

### C. Effects Test

Under the "effects test" set forth in Calder v. Jones, 465 U.S. 783, 790-91, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), personal jurisdiction exists if the defendant committed an intentional tort, the plaintiff felt the brunt of the tort in the forum, and defendant aimed his tortious conduct at the forum. IMO Indus. v. Kiekert AG, 155 F.3d 254, 266 (3d Cir. 1998). This test confers jurisdiction when a defendant's tortious activity outside the forum produces foreseeable results in the forum. See id. at 265-66.

Under this test, a plaintiff must point to "acts undertaken by the defendant which demonstrate that he 'expressly aimed' his tortious conduct at the United States, and [show that] defendant knew that plaintiff would suffer the brunt of the harm in the United States. In so doing, the plaintiffs may not rely on the bare pleadings alone, but must cite evidence to support their claim." In re Bulk [Extruded] Graphite Prods. Antitrust Litig., No. 02-6030, 2006 U.S. Dist. LEXIS 45762, at *23 (D.N.J. Apr. 24, 2006). In this Circuit, "the defendant must manifest behavior intentionally targeted at and focused on the forum for Calder to be satisfied." Eagle

---

[6] The selling of a price-fixed product may qualify as an overt act in furtherance of a conspiracy. In re Magnesium Oxide Antitrust Litig., No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011).

Comput. Assocs. v. Chesapeake Software Servs., No. 99-2583, 1999 U.S. Dist. LEXIS 17509, at *10-11 (E.D. Pa. Nov. 9, 1999) (quoting IMO, 155 F. 3d at 265).[7]

One court within this Circuit has found that evidence of a defendant's worldwide price-fixing conduct, "read liberally," suggests a conspiracy to fix prices in the United States as well; thus, such evidence supports a conclusion that a defendant directed acts in furtherance of the conspiracy to the United States. In re Bulk [Extruded] Graphite Prods. Antitrust Litig., No. 02-6030, 2007 U.S. Dist. LEXIS 54906, at **25-26 (D.N.J. July 30, 2007) (citations omitted). In so finding, the Court noted the rather unique context of the "effects test" in an antitrust case:

> The special character of an antitrust claim leads the Court to interpret more liberally the phrase "expressly aim[. . .] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." To be sure, plaintiffs' evidence is thin, but at this stage of the proceedings it is sufficient to defeat a Rule 12(b)(2) motion. Second, the jurisdictional inquiry here strongly implicates the merits of the case, and ultimately any final determination as to the question of personal jurisdiction is best deferred until after the parties have presented the full array of evidence.

Id. at *26.

In this case, Plaintiffs rest on their allegations that Defendants knowingly price-fixed a global commodity, which was then sold by them or their subsidiaries in the United States, causing harm to consumers. The liberal approach taken in In re Bulk [Extruded] Graphite Prods. stemmed, in part, from the existence of evidence that a witness suggested to the foreign Defendant that he "establish contacts…to facilitate extracting a higher level of profitability from the…market in the United States," and a cooperation policy relating to pricing in the United States. Id. at **21-23. No evidence of this type exists here. At this time, Plaintiffs' generalized reliance on the allegations of the CAC does not allow this Court to conclude that Defendants manifested behavior intentionally focused on the United States, or that jurisdiction lies under Calder.

---

[7] The effects test is closely related to the traditional jurisdictional concepts of purposeful availment. See, e.g., Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., No. 16-665, 2017 U.S. Dist. LEXIS 114733, at *24 (E.D. Pa. July 24, 2017).

8

### D. Alter Ego

"The alter-ego test looks to whether ''the degree of control exercised by the parent is greater than normally associated with common ownership and directorship' and whether ''the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.''" Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig. v. Enterprise Rent-A-Car Co., 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010). "No one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional interrelationship." Chocolate Confectionary, 674 F. Supp. 2d at 598; see also Enterprise Rent-A-Car, 735 F. Supp. at 318-19 (discussing ten-factor alter ego test).

> My colleague in this District has described the pertinent inquiry as follows:
>
> Plaintiff must show that the parent controls day-to-day operations of the subsidiary to the extent that the subsidiary appears to be a "mere department" of the parent. Other ways to frame the inquiry are: whether the parent exercised its ability to control the subsidiary; whether the structure of the corporate family operated vertically as strategic business units; whether the parent in essence conscripted employees of the subsidiaries to discharge group-wide management functions across corporate boundaries; and whether the parent failed to adhere to corporate boundaries by exercising managerial power over the operations and functions of subsidiaries through employees of separate but affiliated corporations.

Hooper v. Safety-Kleen Sys., No. 16--123, 2016 U.S. Dist. LEXIS 171712, at *16 (W.D. Pa. Dec. 13, 2016).

At this juncture, it is plain that Plaintiffs have not adduced sufficient information to meet their burden of establishing alter-ego jurisdiction. Plaintiffs seek to establish "vicarious presence" in the United States with evidence including the following: wholly-owned subsidiary status; shared executives or employees; use of common e-mail domains; websites' descriptions of global groups; common marketing images, trademarks, and the like; shared marketing; and communications between employees regarding issues such as pricing, marketing, and supply proposals and agreements. With some exceptions, Plaintiff describes similar facts relating to all Defendants. None of these facts, for any of the Defendants,

indicates a greater than normal degree of control, the failure to adhere to corporate boundaries, or disregard for separate corporate existence. Indeed, while each case is unique, alter-ego jurisdiction has been rejected under similar circumstances. Cf., e.g., Enterprise Rent-A-Car, 735 F. Supp. 2d at 323. At this time, Plaintiffs have not adequately established facts demonstrating that the exercise of alter-ego jurisdiction is appropriate.

### E. Agency Jurisdiction

Finally, agency jurisdiction rests on the concept that a principal is responsible for the conduct of its agent. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 108 (3d Cir. 2009). "[A]s all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred." Id. It appears that the mere fact of agency is insufficient, as "courts in this district appear to focus on the degree of control exercised by a foreign entity when determining whether an agency theory establishes personal jurisdiction." E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV, 335 F. Supp. 3d 657, 670 (D. Del. 2018).

Plaintiffs' agency-based argument is relatively insubstantial. They contend that Defendants' domestic subsidiaries "clearly" perform sales and marketing functions that the parents, which are entities with a global sales presence, would otherwise have conducted themselves.[8] For reasons similar to those stated in the alter-ego context, supra, I find that Plaintiffs have not established a degree of control that warrants the exercise of personal jurisdiction based on an agency relationship alone. I echo the statement of my sister Court, as I have "real concerns that if [I] were to adopt Plaintiff's theory, it would always result in the

---

[8] The Supreme Court has warned that an inquiry into the importance of an agent's services "stacks the deck, for it will always yield a pro-jurisdiction answer: 'Anything a corporation does through an independent contractor, subsidiary, or distributor is presumably something that the corporation would do "by other means" if the independent contractor, subsidiary, or distributor did not exist.'" Daimler AG v. Bauman, 571 U.S. 117, 136, 134 S. Ct. 746, 759 (2014) (quoting Bauman v. DaimlerChrysler Corp., 676 F.3d 774 (9th Cir. 2011) (O'Scannalin, J., dissenting)).

finding of specific personal jurisdiction between a parent and subsidiary, or between affiliates, on an agency theory." High 5 Games, LLC v. Marks, No. 13-7161, 2019 U.S. Dist. LEXIS 134359, at *19 (D.N.J. Aug. 9, 2019).

**F. Discovery**

> A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction… 'Parties are entitled to a fair opportunity to engage in jurisdictional discovery to obtain facts necessary for thorough consideration of the [jurisdictional] issue.'… if a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," the plaintiff's right to conduct jurisdictional discovery should be sustained.

Streamlight, Inc. v. ADT Tools, Inc., No. 03-1481, 2003 U.S. Dist. LEXIS 19843, at *14 (E.D. Pa. Oct. 9, 2003).

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, … courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)) (citations omitted).

As Defendants point out, Plaintiffs seek primarily to establish jurisdiction under theories that would impute to Defendants the conduct of other entities. I agree with Defendants that at this juncture, Plaintiffs have not demonstrated the existence of minimum contacts through a conspiracy, alter-ego, or agency theory, or via the effects test.

Plaintiffs, however, request the opportunity to conduct jurisdictional discovery. With respect to at least some of the theories propounded, Plaintiffs have adequately demonstrated the possible existence of the requisite contacts.[9] Accordingly, the moving Defendants and

---

[9] Although the Court harbors doubts about whether Plaintiffs have demonstrated the possible existence of sufficient contacts under all of their proffered theories, it would be both inefficient and burdensome to attempt to delimit the scope of discovery accordingly. The Court notes that Plaintiffs' assertion that they have established the "possible existence" of the requisite contacts appears to focus solely on their theory of jurisdiction under Calder's effects test. Specifically, Plaintiffs' brief reads as follows: "Plaintiffs' allegations of a price-fixing conspiracy by the Foreign Defendants, causing harm through sales in the

11

Plaintiffs shall engage in a period of limited discovery. During the pendency of this limited discovery and the Court's final ruling on personal jurisdiction, the foreign Defendants are exempt from general discovery.

## CONCLUSION

In conclusion, the Defendants' Motion will be denied without prejudice. A limited period of jurisdictional discovery is warranted, consistent with the foregoing Opinion. An appropriate Order follows.

---

United States, sufficiently suggests, at the very least, the possible existence of requisite contacts." (ECF No. 249, p. 25).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

## ORDER OF COURT

AND NOW, this 9th day of March, 2020, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion (ECF No. 229) is DENIED, without prejudice to Defendants to renew the Motion after jurisdictional discovery.

By March 19, 2020, the foreign Defendants and Plaintiffs shall file a joint proposed case management order regarding the form of and schedule for jurisdictional discovery.

BY THE COURT:

_/s/ Donetta F. Ambrose_
_____
Donetta W. Ambrose
Senior Judge, U.S. District Court