IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Cases | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

AMBROSE, United States Senior District Judge

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Compel Plaintiffs to Produce "Downstream Information." (ECF No. 350). The related documents considered in relation to this motion include: Defendants' Memorandum in Support of their Motion to Compel (ECF No. 351); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel (ECF No. 354); Plaintiffs' Memorandum of Law in Opposition to the Production of Downstream Data and Information (ECF No. 349); and, Defendants' Response to Plaintiffs' Memorandum in Opposition to the Production of Downstream Data and Information (ECF No. 355). On July 14, 2020, the court held oral argument on the Motion to Compel. After careful consideration, and for the reasons set forth below, Defendants' Motion (ECF No. 350) is denied.

This multi-district litigation stems from an alleged conspiracy to reduce supply and increase price for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes.[1] Plaintiffs' CAC alleges violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§1, 3, from January 2016 to the present. Now in the discovery stage of litigation as it relates to most parties,[2] Defendants "move to compel Plaintiffs to identify their structured data field and produce data and

---

[1] Unless otherwise noted, the facts are taken from the CAC. (ECF No. 163).

[2] Two Defendants, Convestro A.G. and Wanhua Chemical Group Co. Ltd. are still engaged in jurisdictional discovery. (ECF No. 332, p. 2)

information relating to Plaintiffs' sales, including the costs associated with those sales, of MDI or TDI and the products they make with MDI or TDI." (ECF No. 350, p. 1). In a broad sense, Defendants are seeking Plaintiffs' "information regarding their manufacture, use, sale, distribution and pricing of polyurethane products to their customers." (ECF No. 349, p. 5).

Federal Rule of Civil Procedure 37 governs motions to compel discovery, which directs that the scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides in relevant part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[3] The scope of discovery is broad, but it is not unlimited. *See,* FRCP 26(b)(2).

The burden of establishing the relevance of discovery sought rests with the moving party.

> When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1). If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019) (quoting *Wright v. City of Philadelphia*, 2017 WL 1541516, at *1 (E.D. Pa. Apr. 28, 2017)).

*Plump v. La Salle Univ.*, No. 19-CV-4579, 2020 WL 3250532, at *2 (E.D. Pa. June 15, 2020).

Here, the parties agree that the Sherman Act usually does not permit a "pass-on" or "pass-through" defense. To that end, Defendants assert that they are not seeking downstream data for pass-through purposes. (ECF No. 351, pp. 13-14). Rather, Defendants submit that the sought-after downstream information is relevant in this case as it relates to the following:

---

[3] Rule 26(b) provides as follows:

(b) Discovery Scope and Limits.
   (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

1. Class Certification;

2. Plaintiffs' allegations regarding demand dynamics for MDI and TDI;

3. Plaintiffs' product allegations that there "are not viable substitutes to MDIs and TDIs"; and

4. Plaintiffs' alleged conspiracy inferences that Defendants' actions and explanations to the market were pretextual or suspicious.

(ECF No. 351, p. 6).

With regard to class certification, Defendants specifically suggest that the downstream information is relevant to determine if Plaintiffs are "similarly affected" by Defendants' conduct because bargaining power may be very different among Plaintiffs or their interests may not be common. (ECF No. 355, p. 7-11; No. 351, pp. 7-8). Defendants rely on *In re Urethane Antitrust Lit.,* 237 F.R.D. 454 (D. Kan. 2006) ("*Urethane I*") and *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181 (11th Cir. 2003) in support of their position. Having reviewed the arguments and caselaw cited by both the parties, I decline to follow *Urethane I* and *Valley Drug.* I am not persuaded that such downstream information is relevant or necessary to determine the same as Defendants have failed to provide information to expose a probable conflict.[4]  *See In re Glumetza Antitrust Lit.,* No. 19-cv-05822, WL 2020 3498067 (N.D. CA June 29, 2020); *In re Photochromic Lens Antitrust Lit.,* 279 F.R.D. 620, 624 (M.D. Fla. Feb. 7, 2012); *In re Air Cargo Shipping Servs Antitrust Lit.,* No. 06-MD-1775, 2010 WL 4916723 (E.D. N.Y. Nov. 24, 2010); *In re Pressure Sensitive Labelstock Antitrust Lit.,* 226 F.R.D. 492 (M.D.. Pa 2005). Therefore, the motion is denied in this regard.

Next, Defendants assert that downstream information is relevant to Plaintiffs' allegations regarding market demand dynamics for MDI and TDI, for both liability and damage purposes. To that end, Defendants suggest "supply and demand in the markets for Plaintiffs' products can influence prices for MDI and TDI" thereby supporting non-conspiratorial explanations for MDI and

---

[4] Moreover, I note that Plaintiffs have agreed to produce their purchasing records, which could reveal an atypical bargaining power. (ECF No. 354, pp. 7-8).

3

TDI price increases.  Additionally, Defendants indicate that their experts will need such downstream information for their regression models to properly assess damages.[5]  Again, I am not persuaded that Defendants need Plaintiffs' particularized downstream data in this *per se* price-fixing Sherman Antitrust Act case to evaluate the overall market demand.  *See, In re Air Cargo Shipping Servs Antitrust Lit.,* No. 06-MD-1775, 2010 WL 4916723 (E.D. N.Y. Nov. 24, 2010).  Therefore, the motion is denied in this regard as well.

Defendants also assert that downstream information is relevant to test Plaintiffs' allegations that there "are no viable substitutes to MDIs and TDIs."  I am not convinced by Defendants' supposition that Plaintiffs' downstream data is relevant to test such allegation.  The availability of viable substitutes will be determined by the viable substitutes for MDIs and TDIs in the market, not Plaintiff's particularized downstream use of the MDIs and TDIs.  Thus, I do not find the downstream information is relevant and the motion is denied in this regard.

Finally, Defendants assert downstream information is relevant to Plaintiffs' alleged conspiracy inferences that Defendants' actions and explanations to the market were pretextual or suspicious. Defendants have failed to persuade me that Plaintiff's downstream data is relevant to proving or disproving the price-fixing conspiracy alleged by Plaintiffs.  As Plaintiffs point out, there are no counterclaims that Plaintiffs were engaged in anticompetitive conduct.  Consequently, I find Plaintiffs' downstream information is irrelevant to contest Plaintiffs' theory that Defendants' actions and explanations to the market were pretextual or suspicious.

---

[5] To be clear, Plaintiffs are not seeking lost-profits.  (ECF No. 354, p. 9).  "The measure of damages for the claims Plaintiffs assert is the amount they were overcharged by Defendants, not a lost-profit analysis." *Id.*

THEREFORE, this 20th day of July, 2020, upon consideration of Defendants' Motion to Compel Plaintiffs to Produce Downstream Information, it is ordered that the said Motion (ECF No. 350) is denied.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
Senior Judge, U.S. District Court