# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to All Actions | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL FOREIGN DEFENDANTS TO PRODUCE DOCUMENTS AND INFORMATION RESPONSIVE TO PLAINTIFFS' JURISDICTIONAL DISCOVERY REQUESTS

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ......................................................................................................... 1

II.  BACKGROUND .......................................................................................................... 1

III. ARGUMENT................................................................................................................. 3

   A.   The Time Period for Jurisdictional Discovery Should Match That for Unstructured Domestic Discovery. ............................................................................................ 4

   B.   Defendants Should be Compelled to Search for and Produce Documents Related to MDI or TDI Systems................................................................................................................... 6

   C.   Wanhua China Should Be Required to Search for TDI-Related Documents. ..................... 8

   D.   Wanhua China Should Provide Information and Documents Related to United States Entities Other than WCA. ............................................................................................. 9

   E.   Wanhua China Should Respond to Requests for Production Nos. 17 and 18. ................. 10

   F.   Wanhua China Should Disclose Whether It Maintains an Agent for Service of Process in the United States................................................................................................................. 11

   G.   Wanhua China Should Identify Any Business-Related Visits Made by Its Personnel to the United States. ............................................................................................................... 13

   H.   Wanhua China May Not Respond to Requests for Production Solely by Reference to Interrogatories. ....................................................................................................... 14

   I.   The Proportionality Factors Favor Plaintiffs. .................................................................. 15

IV.  CONCLUSION ......................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc*., 817 F.3d 755 (Fed. Cir. 2016) ........................ 12

*American Health Systems, Inc. v. Liberty Health System,*
1991 WL 30726 (E.D. Pa. Mar. 5, 1991) ................................................................ 7

*Armco Steel Corp. v. Adams Cty, North Dakota*, 376 F.2d 212 (8th Cir. 1967) .......................... 6

*Boyington v. Percheron Field Servs., LLC*,
No. 3:14-CV-90, 2016 WL 6068813 (W.D. Pa. Oct. 14, 2016) ........................................ 15

*B-S Steel of Kansas, Inc. v. Texas Indus., Inc*.,
No. 01-2410-JAR, 2003 WL 21939019 (D. Kan. Jul. 22, 2003) ........................................ 6

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................ 11

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
No. 3:17-CV-101, 2018 WL 2088760 (M.D. Pa. May 4, 2018) ......................................... 16

*Continental Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ................................. 5

*Day v. Boston Edison Co*., 150 F.R.D. 16 (D. Mass. 1993) ............................................... 14

*Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415 (D.C. Cir. 1991) ................. 4

*Educational Testing Service v. Katzman*, 631 F. Supp. 550 (D.N.J. 1986) ............................... 4

*Folding Carton Antitrust Litig.,* 83 F.R.D. 251 (N.D. Ill. 1978) ...................................... 6

*Forest Labs., Inc. v. Amneal Pharm. LLC*,
No. CV 14-508-LPS, 2015 WL 880599 (D. Del. Feb. 26, 2015) ....................................... 12

*Grant St. Grp., Inc. v. D & T Ventures, LLC*,
No. CIV.A. 10-1095, 2012 WL 13689 (W.D. Pa. Jan. 4, 2012) ........................................ 16

*Hansen v. Neumueller GmbH*, 163 F.R.D. 471 (D. Del. 1995) ........................................ 3

*Helsinn Healthcare S.A. v. Hospira, Inc*.,
No. CV 15-2077 (MLC), 2016 WL 1338601 (D.N.J. Apr. 5, 2016) ................................... 12

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. MDL 1426, 2004 WL 7200711 (E.D. Pa. Oct. 29, 2004) ...................................... 7, 16

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,*
906 F.2d 432 (9th Cir. 1990) .......................................................................... 6

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
No. 3:03-MDL-1566, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) ................................... 5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
No. 07-489, 2009 WL 3443563 (D.D.C. Oct. 23, 2009) ................................................ 8

*In re Urethane Antitrust Litig*., 251 F.R.D. 629 (D. Kan. 2008) ...................................... 7

*In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145 (D. Kan. 2012)............................................ 7

*Kleen Prods. v. Packaging Corp. of America*,
    No. 10-cv-5711, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013) .................................. 17

*Kraus v. Alcatel-Lucent*, 441 F. Supp. 3d 68 (E.D. Pa. 2020) ....................................... 12

*Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49 (7th Cir. 1996) ........................................ 4

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988) ................................. 16

*Mcdevitt v. Verizon Servs. Corp.*, No. 14-4125, 2016 WL 1072903 (E.D. Pa. Feb. 22, 2016) .... 17

*McMullen v. European Adoption Consultants, Inc.*, 109 F. Supp. 2d 417 (W.D. Pa. 2000) .......... 4

*Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ............................................. 4

*Morgan Smith Automotive Products, Inc. v. General Motors Corp.*,
    54 F.R.D. 19 (E.D. Pa. 1971) ....................................................................................... 8

*Ohio Valley Elec. Corp. v. General Elec. Co.*, 244 F. Supp. 914 (S.D.N.Y. 1965) ..................... 6

*Palakovic v. Wetzel*, No. 3:14-145, 2019 WL 6896659 (W.D. Pa. Dec. 18, 2019)..................... 15

*Pieczenik v. Dyax Corp.*, 265 F.3d 1329 (Fed. Cir. 2001)............................................................. 16

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983) ........................... 5

*Renner v. Lanard Toys Ltd.*, 33 F.3d 277 (3d Cir. 1994)............................................................... 4

*Replica Auto Body Panels & Auto Sales Inc. v. inTech Trailers Inc.*,
    No. 4:19-CV-02018, 2020 WL 1891890 (M.D. Pa. Apr. 16, 2020) ................................... 12

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) .................................................. 15

*Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*,
    360 F. Supp. 2d 665 (E.D. Pa. 2005)................................................................................. 13

*Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204 (3d Cir. 2008) ............... 6

*Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982)............................................................................. 4

**Rules**

Fed. R. Civ. P. 23(b)(2)(B) ......................................................................................... 17

Fed. R. Civ. P. 26(b)(1).......................................................................................... 3, 15

Fed. R. Civ. P. 33(d) ................................................................................................. 14

Fed. R. Civ. P. 34 ...................................................................................................... 14

## I.      INTRODUCTION

Defendants Covestro AG and Wanhua Chemical Group Co., Ltd. ("Wanhua China")[1] are the only two foreign defendants contesting personal jurisdiction in this matter. They now seek to evade a fair analysis of this Court's potential jurisdiction over them by restricting the information and documents that they will provide in jurisdictional discovery.

Plaintiffs have made, and are willing to make, compromises with the Foreign Defendants to ensure that jurisdictional discovery is reasonable, but several issues have come to an impasse. Notably, the same global issues are in dispute as with the domestic Defendants' discovery responses: the time period and relevant products that Defendants should include in their search for and production of documents. Foreign Defendant Wanhua China also wishes to impose restrictions on specific discovery requests. In light of the relevance and importance of this discovery to a jurisdictional analysis, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel.

## II.     BACKGROUND

Covestro AG and Wanhua China, along with other foreign Defendants, brought a motion to dismiss asserting that this Court lacks personal jurisdiction over them. ECF No. 229. The Court denied that motion without prejudice, finding that while Plaintiffs had not yet "demonstrated the existence of minimum contacts through a conspiracy, alter-ego, or agency theory, or via the effects test," a period of jurisdictional discovery was appropriate. ECF No. 291. The Court did not limit discovery to any one of those theories, stating that "[a]lthough the Court harbors doubts about whether Plaintiffs have demonstrated the possible existence of sufficient

---

[1] Covestro AG and Wanhua China are collectively referred to herein as the "Foreign Defendants."

contacts under all of their proffered theories, it would be both inefficient and burdensome to attempt to delimit the scope of discovery accordingly." *Id.*

Pursuant to the Court's Order, Plaintiffs served interrogatories and requests for production of documents tailored to the jurisdictional issues. *See* Jurisdictional Discovery Requests, attached to Declaration of Jason M. Lindner in Support of Motion to Compel ("Lindner Decl.") as Exhibits A and B. The Foreign Defendants first responded to these requests on June 1, 2020. *See* Foreign Defendants' jurisdictional discovery responses, attached to Lindner Decl. as Exhibits C-F. Since that time, Plaintiffs have engaged in extensive negotiations with the Foreign Defendants and have reached impasse on the issues described below.[2]

Globally, the Foreign Defendants want to limit jurisdictional discovery in two key ways: (1) by limiting the relevant time period to January 1, 2015 to June 28, 2018; and (2) by limiting the relevant products to standalone MDI and TDI, to the exclusion of both MDI and TDI polyurethane systems. This mirrors the domestic defendants' attempt to limit general discovery, and Plaintiffs have concurrently filed a motion to compel the domestic defendants' responses regarding these two issues (the "Domestic Motion to Compel").

---

[2] *See* Plaintiffs' June 24, 2020 letter to Covestro AG, attached to Lindner Decl. as Exhibit G; Plaintiffs' June 24, 2020 letter to Wanhua China, attached to Lindner Decl. as Exhibit H; Plaintiffs' July 17, 2020 letter to Wanhua China, attached to Lindner Decl. as Exhibit I; Plaintiffs' July 31, 2020 letter to Covestro AG, attached to Lindner Decl. as Exhibit J; Plaintiffs' August 12, 2020 letter to Wanhua China, attached to Lindner Decl. as Exhibit K;  Covestro AG's August 14, 2020 letter, attached to Lindner Decl. as Exhibit L; Wanhua China's August 14, 2020 letter, attached to Lindner Decl. as Exhibit M; Wanhua China's August 28, 2020 letter, attached to Lindner Decl. as Exhibit N; Plaintiffs' September 9, 2020 letter to Covestro AG, attached to Lindner Decl. as Exhibit O; Plaintiffs' September 9, 2020 letter to Wanhua China, attached to Lindner Decl. as Exhibit P; Wanhua China's September 21, 2020 letter, attached to Lindner Decl. as Exhibit Q; Covestro AG's September 22, 2020 letter, attached to Lindner Decl. as Exhibit R; Plaintiffs' October 9, 2020 letter to Covestro AG, attached to Lindner Decl. as Exhibit S; Plaintiffs' October 9, 2020 letter to Wanhua China, attached to Lindner Decl. as Exhibit T; Wanhua China's October 14, 2020 letter, attached to Lindner Decl. as Exhibit U; Plaintiffs' October 22, 2020 email to Covestro AG, attached to Lindner Decl. as Exhibit V.

As set forth more fully in the Domestic Motion to Compel and described below, Plaintiffs believe a time period of January 1, 2014 to December 31, 2019 is relevant and proportional for discovery in this case. This time period should also apply to jurisdictional discovery. Further, Plaintiffs allege a conspiracy to fix prices of "MDI and TDI products," Second Amended Complaint ("SAC") at ¶ 3, which necessarily includes MDI and TDI systems. These products should be included in jurisdictional discovery as well.

Aside from the above global issues, a handful of specific disputes remain as to Wanhua China:

- Wanhua China will not search for documents related to TDI, based on its assertion that it did not sell TDI until December of 2018.

- Wanhua China will not respond to jurisdictional Request for Production Nos. 17 and 18 regarding agreements and meetings with other Defendants.

- Wanhua China has limited its responses regarding its United States-related entities to Wanhua Chemical (America) Co. ("WCA"), despite identifying other subsidiaries or affiliates in the United States.

- Wanhua China will only state that it does not maintain an agent for service of process related to MDI or TDI, but will not state whether it maintains any other agent for service of process in the United States.

- Wanhua China will not provide information about visits to the United States by its personnel other than those made specifically for the sale of MDI or TDI.

- Wanhua China responded to certain Requests for Production only through reference to their Interrogatory Responses.

Plaintiffs bring this Motion to seek full responses on the above topics.

## III.   ARGUMENT

"Fed. R. Civ. P. 26 permits liberal discovery of any facts which are relevant and not privileged. *See* Fed. R. Civ. P. 26(b)(1) and advisory committee note. This rule also applies where the plaintiff seeks discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 473-74 (D. Del. 1995) (citing *Renner v. Lanard Toys Ltd*., 33 F.3d 277,

283 (3d Cir. 1994); *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction."); *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)). As described more fully below, the information and documents Plaintiffs seek are relevant to the issue of personal jurisdiction, and the Foreign Defendants have provided no good reason to limit these discovery requests.

### A. The Time Period for Jurisdictional Discovery Should Match That for Unstructured Domestic Discovery.

The period proposed for jurisdictional discovery by the Foreign Defendants mirrors the period to which the domestic Defendants seek to limit unstructured discovery. As set forth more fully in Plaintiffs' Domestic Motion to Compel,[3] a broader time period for discovery, including jurisdictional discovery, is appropriate. Notably, courts in this Circuit have found that jurisdictional discovery, like other discovery, is not strictly limited to the time period alleged for unlawful conduct:

> The Court of Appeals for the Third Circuit has found that the minimum contacts inquiry **may include events occurring before, during and after the event giving rise to the cause of action.** *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992). *See also Logan Productions, Inc. v. Optibase, Inc*., 103 F.3d 49, 53 (7th Cir. 1996) (finding post-contract conduct between defendant and the forum relevant to determination of whether defendant intended to serve the Wisconsin market); *Educational Testing Service v. Katzman*, 631 F. Supp. 550, 555–56 (D.N.J. 1986) (**rejecting defendant's argument that the timeframe for jurisdictional discovery should end with the filing of the lawsuit, and broadening discovery to include post-complaint contacts between defendant individual and the forum**).

*McMullen v. European Adoption Consultants, Inc*., 109 F. Supp. 2d 417, 420 (W.D. Pa. 2000) (parentheticals in original, emphasis added).

---

[3] Given the Court's prohibition against incorporating previously filed motions or briefs at Section II.C.2. of its Chambers' Rules, Plaintiffs have included these arguments in both their Domestic Motion to Compel and in this instant Motion.

As with the domestic Defendants, the Foreign Defendants propose a very short time period for document discovery – only three and a half years. Their proposal would limit discovery to one year, or possibly less, before the conspiracy's alleged initiation, and allow none after. This is too short. Discovery from an earlier period is relevant to understanding the Foreign Defendants' control over their domestic subsidiaries and whether they aimed the effects of their conduct toward the United States during the inception of the conspiracy.[4] And even though Plaintiffs allege an ongoing conspiracy, the Foreign Defendants proposal excludes nearly all documents following the announcement of the Department of Justice's investigation in 2018.[5]

Plaintiffs' proposal for the relevant time period matches that for domestic discovery, from 2014 through 2019. As more fully discussed in Plaintiffs' Domestic Motion to Compel, requiring production of documents from this period is modest and well within the bounds of discovery that courts routinely order defendants to produce in complex antitrust cases like this one. Pre- or post-conspiracy documents are routinely produced in these cases because they often reveal the motivations underlying strategic moves made by the defendants. *See, e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1566, 2007 WL 4150666, at *20 (M.D. Pa. Nov. 19, 2007). Accordingly, courts routinely admit pre-conspiracy evidence to "cast light on the character of an existing conspiracy,"[6] uncover defendants' intent and purpose in

---

[4] Covestro AG asserts that it did not come into existence until August 20, 2015. Plaintiffs agree that the issue of discovery from Covestro AG from before that date may be moot, assuming that Covestro AG will attest that a reasonable search and inquiry has determined that it has no relevant documents or information from before that time in its custody and control. *See* Exhibit S (Plaintiffs' October 9, 2020 letter to Covestro AG).

[5] The Department of Justice announced its investigation into the diisocyanates market on June 11, 2018, two weeks prior to Defendants' proposed discovery cut-off.

[6] *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1305 (9th Cir. 1983); *accord Continental Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (finding the exclusion at trial of evidence of the pre-limitations origins of a continuing

communicating during a conspiracy,[7] or establish a course of conduct prior to a conspiracy.[8] And while Plaintiffs do not seek "post-conspiracy" documents (because they allege ongoing conduct), production of post-conspiracy documents is also routinely compelled.[9] Documents showing whether the Foreign Defendants exercised alter-ego or agency control over their subsidiaries, engaged in unlawful conduct with co-conspirators, or aimed the effects of their conduct at the United States during these critical periods is relevant and probative to the issue of jurisdiction over those entities. In short, the time period for jurisdictional discovery should align with the appropriate time period for domestic discovery proposed by Plaintiffs.

## B. Defendants Should be Compelled to Search for and Produce Documents Related to MDI or TDI Systems.

Again, as more fully set forth in Plaintiffs' Domestic Motion to Compel, this case involves not just standalone MDI and TDI, but also MDI and TDI systems. These systems are MDI or TDI products which contain an isocyanate (MDI or TDI) and a polyol (and potentially other compounds), which are reacted together to create polyurethanes. *See* SAC ¶¶ 54-55. Plaintiffs allege a conspiracy to fix prices of "MDI and TDI products" – which includes these systems – and therefore discovery about systems is directly relevant. SAC ¶ 3. Defendants sell and market their systems as single products which allow purchasers, such as Plaintiffs, to

---

conspiracy was reversible error).

[7] *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* 906 F.2d 432, 453 (9th Cir. 1990).

[8] *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 217-18 (3d Cir. 2008).

[9] *See, e.g., Folding Carton Antitrust Litig.,* 83 F.R.D. 251, 256 (N.D. Ill. 1978) (compelling interrogatory responses related to ongoing or post-conspiracy economic conditions); *Armco Steel Corp. v. Adams Cty, North Dakota,* 376 F.2d 212, 214 (8th Cir. 1967) (recognizing relevance of post-conspiracy prices and conditions to damages); *Ohio Valley Elec. Corp. v. General Elec. Co.,* 244 F. Supp. 914, 940-41 (S.D.N.Y. 1965) (same); *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, No. 01-2410-JAR, 2003 WL 21939019, at *4 (D. Kan. Jul. 22, 2003) (collecting cases and compelling discovery and recognizing temporal scope of discovery in an antitrust case is not confined to the limitations or damages period).

eliminate the need to buy individual products and create the systems themselves. If the Defendants, including the Foreign Defendants, price-fixed the components and then sold systems with correspondingly higher prices, those systems fall within the supracompetitive price inflation caused by their conduct.

This theory of liability was approved by the court in the previous Urethanes action. *See In re Urethane Antitrust Litig*., 913 F. Supp. 2d 1145, 1158 (D. Kan. 2012) (noting, along with evidence of parallel price increases on systems, that Plaintiff's theory "is that prices for systems would have been improperly affected by the alleged conspiracy to fix prices for the constituent elements of MDI and TDI, and the Court has already rejected a challenge by Dow and the other defendants to that approach in this case."); *In re Urethane Antitrust Litig*., 251 F.R.D. 629, 638-39 (D. Kan. 2008), *aff'd*, 768 F.3d 1245 (10th Cir. 2014) (noting "ample" evidence that "systems prices are, at least to some extent, based on the costs of the basic chemicals that make up the systems" and "defendants viewed their price increase for basic chemicals to be successful in helping them increase systems prices.")

Even if this Court were to find that systems are not expressly included in the Complaint, Defendants' limitation of relevant products defies authority holding that discovery beyond the exact products alleged to have been price-fixed is relevant. Courts within this circuit have routinely held that "discovery is not limited to the precise issues set out in the pleadings." *American Health Systems, Inc. v. Liberty Health System,* 1991 WL 30726, at *3 (E.D. Pa. Mar. 5, 1991). Instead, discovery beyond the products directly at issue is regularly permitted.[10] *See*, *e.g.*,

---

[10] *See also*, *e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2004 WL 7200711, at *5 (E.D. Pa. Oct. 29, 2004) ("[T]he scope of Plaintiffs' discovery request here is consistent with other antitrust litigation involving potential conspiracies of nationwide or global reach."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489, 2009 WL 3443563, at

*Morgan Smith Automotive Products, Inc. v. General Motors Corp.*, 54 F.R.D. 19, 19 (E.D. Pa. 1971) (permitting discovery about all vehicle product lines when allegations concerned only Chevrolet automobiles).

Plaintiffs' request for systems information is modest in light of this significant authority permitting expansive discovery in antitrust conspiracy cases. This information is relevant to determine to what degree the Foreign Defendants controlled their subsidiaries' involvement with these products and to what degree the Foreign Defendants may have aimed the effects of a conspiracy regarding these products toward the United States.

**C.  Wanhua China Should Be Required to Search for TDI-Related Documents.**

Wanhua China states for all jurisdictional discovery topics that it "did not begin manufacturing TDI until late 2018, so discovery from it about TDI is not appropriate." *See* Wanhua China August 14, 2020 letter, attached to Lindner Decl. as Exhibit M, at p. 2. This objection lacks merit for two independent reasons. First, as argued above, the discovery period should extend well beyond late 2018. Second, even if the relevant period is limited as the Foreign Defendants propose, any TDI-related documents in Wanhua China's possession would be relevant regardless of whether it sold TDI. If, for example, Wanhua China made decisions to stay out of the TDI market or postpone its entry into that market to keep supply low, or advised its subsidiaries to make decisions or communications related to the TDI market, such documents would be relevant to the issue of personal jurisdiction regardless of whether Wanhua China was actively selling TDI at the time. Conversely, if Wanhua China was in fact entirely uninvolved in the TDI market during the discovery period, it will not create any significant burden for Wanhua

---

*4 (D.D.C. Oct. 23, 2009) (compelling production of transaction data to evaluate product market boundaries).

China to confirm that it has no relevant documents or information related to TDI in response to the jurisdictional discovery requests.

### D. Wanhua China Should Provide Information and Documents Related to United States Entities Other than WCA.

Plaintiffs' Interrogatory No. 1 requests that Wanhua China identify all of its related entities located in and/or having conducted, advertised, promoted, or solicited any business in the United States. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████ *See* Wanhua China's Responses and Objections to Plaintiffs' First Set of Jurisdictional Discovery Interrogatories, attached to Lindner Decl. as Exhibit E.  Despite identifying these other entities, Wanhua China will not provide information or documents about any of them other than WCA because they "did not sell or manufacture MDI or TDI in the U.S." Wanhua China August 14, 2020 letter, attached to Lindner Decl. as Exhibit M, at p. 3.

Each of these entities is potentially relevant to the issue of personal jurisdiction over Wanhua China. ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ .

    As with all of Plaintiffs' jurisdictional discovery requests, Plaintiffs are open to the use of targeted search terms to make the burden of searching records regarding these entities reasonable. However, Wanhua China should not be allowed to unilaterally carve out these entities from jurisdictional discovery merely because they did not actively sell or manufacture MDI or TDI themselves, but instead supported its business in other ways.

### E.  Wanhua China Should Respond to Requests for Production Nos. 17 and 18.

    Plaintiffs' Jurisdictional Request for Production Nos. 17 and 18 read:

    Request No. 17: All Documents relating to any written or unwritten agreements between or among You and any other Defendants regarding the production, manufacturing, marketing, pricing, exchange, swap, sale or resale of any products[11] in the United States.

    Request No. 18: All Documents relating to any Meetings attended by You and any other Defendant at which there was any Communication concerning the production, manufacturing, marketing, pricing, exchange, swap, sale or resale of any products in the United States or that would reach the United States.

    Wanhua China has refused to answer these two Requests on the grounds that "[t]hese requests seek materials related to the merits of Plaintiffs' claims and are neither relevant to

---

[11] Plaintiffs have stated during negotiations that they are willing to limit "products" for these two Requests to MDI, TDI, and related systems.

jurisdiction nor proportional to the limited discovery that the Court said were appropriate to the issue." Wanhua China August 14, 2020 letter, attached to Lindner Decl. as Exhibit M, at p. 7.

To the contrary, documents of this type are directly relevant to jurisdiction over Wanhua China. Documents reflecting that Wanhua China made agreements or had communications with other Defendants regarding products sold in the United States would be relevant to the "effects test" by showing that Wanhua China committed an intentional tort, Plaintiffs felt the brunt of the tort in this forum, and Wanhua China aimed its tortious conduct at this forum. *See Calder v. Jones,* 465 U.S. 783, 790-91 (1984). As this Court noted in deciding that jurisdictional discovery should be conducted to fully analyze the effects test, "[t]he liberal approach taken in *In re Bulk [Extruded] Graphite Prods*. stemmed, in part, from the existence of evidence that a witness suggested to the foreign Defendant that he 'establish contacts…to facilitate extracting a higher level of profitability from the…market in the United States,' and a cooperation policy relating to pricing in the United States." ECF No. 291 at p. 8. Plaintiffs now seek exactly these kinds of communications and agreements. Further, such documents may be relevant to the co-conspirator exception, which this Court noted must be alleged with a level of particularity. *Id.* at p. 7. While Plaintiffs are amenable to negotiating reasonable search terms regarding these Requests, Wanhua China should not be allowed to refuse to answer these Requests in their entirety simply because it claims the Requests are only "related to the merits of Plaintiffs' claims."

### F.   Wanhua China Should Disclose Whether It Maintains an Agent for Service of Process in the United States.

Plaintiffs' Interrogatory No. 8 asks the Foreign Defendants to "[i]dentify any and all agents You have authorized currently or previously to receive service of process or other notice of legal proceedings within the United States or any state or other jurisdiction of the United

States, for any judicial or other legal proceedings, including, but not limited to, any received under 35 U.S.C. § 293." Wanhua China responded only that "it has not authorized any agent for service of process in the United States **relating to the sale of MDI or TDI**" (emphasis added). *See* Wanhua letters dated August 14, 2020 and October 14, 2020, attached to Lindner Decl. as Exhibits M and U. When asked by Plaintiffs, Wanhua China refused to state whether it maintains an agent for service of process in the United States for any purpose. *Id.*

Companies generally do not maintain an agent for service of process strictly related to a particular subject, such as an agent for service of process only related to the sale of MDI or TDI. Wanhua China's limitation of its response in this manner, and its refusal to disclose whether it has any other agent, suggests that it is actively withholding information regarding an agent for service of process.

Courts have regularly found that the registration of a foreign company or its maintenance of an agent for service of process implies consent to jurisdiction, or at the very least is relevant to a consideration of personal jurisdiction. *See, e.g., Replica Auto Body Panels & Auto Sales Inc. v. inTech Trailers Inc.,* No. 4:19-CV-02018, 2020 WL 1891890, at *4 (M.D. Pa. Apr. 16, 2020); *Kraus v. Alcatel-Lucent*, 441 F. Supp. 3d 68, 74 (E.D. Pa. 2020); *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 763 (Fed. Cir. 2016); *Helsinn Healthcare S.A. v. Hospira, Inc.*, No. CV 15-2077 (MLC), 2016 WL 1338601, at *5 (D.N.J. Apr. 5, 2016); *Forest Labs., Inc. v. Amneal Pharm. LLC*, No. CV 14-508-LPS, 2015 WL 880599, at *3 (D. Del. Feb. 26, 2015), *report and recommendation adopted*, No. CV 14-508-LPS, 2015 WL 1467321 (D. Del. Mar. 30, 2015). If Wanhua China has, or previously had, an agent for service of process in the United States, it should be ordered to disclose that information.

**G. Wanhua China Should Identify Any Business-Related Visits Made by Its Personnel to the United States.**

Plaintiffs' Interrogatory No. 6 asks the Foreign Defendants to "[i]dentify any of Your officers, directors, Employees, representatives, or agents who have visited the United States for the purpose of conducting or soliciting any the dates and length of their visit(s) to the United States; any persons, corporations or other Entities with whom they met during their visit(s); and the purpose of their visit(s)." Wanhua China has limited its response only to "visits by Wanhua China employees to the United States **relating to the sale of MDI or TDI in the United States**" (emphasis added). *See* Wanhua China August 14, 2020 letter, attached to Lindner Decl. as Exhibit M.

Visits by Wanhua China's personnel would not have to be specifically related to the sale of MDI or TDI to be relevant. For example, visits regarding the manufacturing of MDI or TDI would be relevant. As stated in Section III.D, ███████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████

Moreover, visits by Wanhua China personnel for training, human resources, or other managerial functions over the United States Related Entities may show the level of involvement and control it has and are therefore relevant to an alter-ego or agency analysis. *See*, *e.g.*, *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH,* 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (identifying, among other factors, "common use of employees," "interchange of managerial and supervisory personnel," and "receipt by the officers of the subsidiary corporation of instruction from the principal corporation" as relevant to an alter ego determination). Wanhua's letter admits that "Wanhua China employees may have visited the

U.S. for other purposes, such as to perform IT training." *See* Exhibit M. Wanhua China should

be required to disclose any business-related visits by its personnel to the United States.

### H.   Wanhua China May Not Respond to Requests for Production Solely by Reference to Interrogatories.

Wanhua China responded to certain of Plaintiffs' Requests for Production solely by

referencing the information provided in their Interrogatory Responses.[12] While Fed. R. Civ. P.

33(d) allows for interrogatories to be answered by reference to produced business records, there

is no corresponding provision in Fed. R. Civ. P. 34 that allows for a Request for Production to be

answered solely by referencing an interrogatory. Courts have found that such a response is

insufficient. *See, e.g., Day v. Boston Edison Co.*, 150 F.R.D. 16, 18 (D. Mass. 1993) (holding

that answering a Request for Production by referencing an Interrogatory was "totally improper"

and "in essence, no response at all.")

Responsive documents may have additional information beyond that disclosed in an

interrogatory response. This is particularly true for Requests such as No. 9 (regarding travel to

the United States by Foreign Defendant personnel) and No. 23 (requesting production of

documents relating to the shipment, sale, or distribution of products, goods, or services to United

States entities, including Related Entities), where documents could have significantly more

relevant information. Further, to the degree that Wanhua China and its counsel have already

reviewed and summarized documents to consolidate the information contained in their

---

[12] Wanhua has responded to Requests for Production are No. 9 (documents sufficient to show travel to the United States by Foreign Defendant personnel for business activities), No. 10 (documents sufficient to identify Foreign Defendant employees who were also employees of a United States Related Entity), No. 16 (documents sufficient to show annual sales of products billed or shipped to the United States, including to a Related Entity); and No. 23 (documents relating to the shipment, sale, or distribution of products, goods, or services to United States entities, including Related Entities) solely through reference to its Interrogatory Responses. Covestro AG initially responded to Requests No. 9 and 10 in this manner, but has since agreed to produce documents for those Requests. *See* Exhibit V.

Interrogatory Responses, producing those documents should not create any additional significant burden.

## I. The Proportionality Factors Favor Plaintiffs.

In determining whether discovery is "proportional to the needs of the case" under Rule 26(b)(1), courts consider the following six factors: "(1) the importance of the issues in the action; (2) the amount in controversy; (3) the parties' relative access to the information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; (6) and whether the burden and expense of discovery outweigh the likely benefit of compelling discovery." *Palakovic v. Wetzel*, No. 3:14-145, 2019 WL 6896659 (W.D. Pa. Dec. 18, 2019). These same factors apply when considering jurisdictional discovery. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (citing same factors). These factors favor production here.

Antitrust cases always raise matters of public importance. *See N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958) ("The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade."). This case is no different. Plaintiffs allege anticompetitive conduct nationwide in critical components used in the manufacture of thousands of commercial and consumer goods. Second, as a result of Defendants' misconduct, Plaintiffs allege that purchasers have paid millions in grossly inflated prices rather than benefiting from low, stable prices, traditionally available for the purchase of these key chemicals. Courts in this district have recognized that the second factor weighs in favor of Plaintiffs where, as here, damages are estimated in the millions of dollars. *Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2016 WL 6068813, at *6 (W.D. Pa. Oct. 14, 2016). The inclusion of the Foreign Defendants in order to hold them accountable for their participation in this anticompetitive scheme is crucial to this case.

Third and fourth, the Foreign Defendants are some of the world's largest chemical

companies, who are themselves in the best position to provide the documents Plaintiffs seek. As the Third Circuit has recognized, "the proof is largely in the hands of the alleged conspirators" in an antitrust matter. *In re Auto. Refinishing*, 2004 WL 7200711, at *3 (quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988). This is even more true when considering jurisdictional discovery, as Plaintiffs have no other way to gain insight into the inner workings of these foreign entities to determine whether they are subject to United States jurisdiction. Plaintiffs do not have another avenue for gaining access to these critical documents. Given the Foreign Defendants' greater resources and relative access to information, both the third and fourth factors weigh in favor of Plaintiffs.

As to the fifth factor, the documents and information Plaintiffs seek are crucial to a full consideration of whether jurisdiction over the Foreign Defendants is appropriate. "Normally, in response to a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that the defendants are subject to personal jurisdiction. When the parties have conducted jurisdictional discovery, however, a plaintiff's burden of proof is by the preponderance of the evidence." *Grant St. Grp., Inc. v. D & T Ventures, LLC*, No. CIV.A. 10-1095, 2012 WL 13689, at *2 (W.D. Pa. Jan. 4, 2012) (Ambrose, J.) (citing *Pieczenik v. Dyax Corp.,* 265 F.3d 1329, 1334 (Fed. Cir. 2001)). Given this evidentiary burden for Plaintiffs, the Foreign Defendants should not be allowed to unfairly limit discovery.

Courts have found "extensive discovery … proportional to the needs of the case" in large litigation like this one. *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *2 (M.D. Pa. May 4, 2018). In *Navient,* in noting the hundreds of millions of dollars at stake, the court declined to limit discovery on the basis of a proportionality objection "without a showing that the sought after material is unimportant to the issues in this case and the

16

burden or expense of producing such material is excessive in comparison to the size of this litigation." *Id.* The Requests for Production and Interrogatory Responses that Plaintiffs seek to enforce here do not approach this high bar of irrelevance or disproportionality.

The sixth and final factor strongly weighs in favor of Plaintiffs because Defendants have failed to specifically substantiate their burden, as they must. *See Mcdevitt v. Verizon Servs. Corp.*, No. 14-4125, 2016 WL 1072903, at *2 (E.D. Pa. Feb. 22, 2016); Fed. R. Civ. P. 23(b)(2)(B). Without a description of Defendants' purported burden, it is impossible to weigh it against the likely benefits. No Foreign Defendant has provided detailed information on the burden of producing additional documents or information, such as identifying the specific number of additional documents it would need to produce or estimating the cost of expanding the production. This deficiency alone is sufficient to compel production. See *Kleen Prods. v. Packaging Corp. of America*, No. 10-cv-5711, 2013 WL 120240, at *10 (N.D. Ill. Jan. 9, 2013) (granting motion to compel data five years before the class period and noting "Defendants' lack of demonstration of a burden").

## IV.   CONCLUSION

Defendants should not be allowed to selectively withhold relevant documents and information during this critical jurisdictional discovery phase. For the above reasons, Plaintiffs' Motion should be granted.

Respectfully submitted,

DATED:  October 23, 2020

*s/ William Pietragallo, II*
William Pietragallo, II (PA 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel.: (412) 263-2000
Fax: (412) 263-2001
*wp@pietragallo.com*

*Plaintiffs' Interim Liaison Counsel*

Megan E. Jones (CA 296274)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel.: (415) 633-1908
Fax: (415) 358-4980
*mjones@hausfeld.com*

Jason S. Hartley (CA 192514)
HARTLEY LLP
101 W. Broadway, Suite 820
San Diego, CA 92101
Tel.: (619) 400-5822
Fax: (619) 400-5832
*hartley@hartleyllp.com*

*Plaintiffs' Interim Co-Lead Counsel*