IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Actions | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

**DECLARATION OF SARAH R. LAFRENIERE IN SUPPORT OF PLAINTIFFS' COMBINED MOTION TO COMPEL DEFENDANTS TO USE CERTAIN SEARCH TERMS AND TAR METHODOLOGIES**

I, Sarah R. LaFreniere, declare as follows:

1. I am over 18 years old and have personal knowledge regarding the facts contained in this declaration.

1. I am an associate attorney at the law firm Hausfeld LLP, Interim Co-Lead Counsel for Plaintiffs in the above-captioned action. I make this Declaration in support of Plaintiffs' Motion to Compel Defendants to Use Certain Search Terms and TAR Methodologies.

**Requests for Production**

2. On or about January 31, 2020 Plaintiffs caused to be served on Defendants, Plaintiffs' First Set of Requests for Production of Documents ("RFPs"), attached hereto as Exhibit A. Domestic Defendants provided responses and objections to Plaintiffs' RFPs in April, 2020. The Parties met and conferred at length on the scope of Plaintiffs' RFPs, and the Court resolved a dispute regarding scope on December 18, 2020, ECF No. 430.

1

A.   **SEARCH TERMS**

**Search Term Negotiations Begin By October 2020**

3.   Between September 18 and October 22, 2020, counsel for Plaintiffs sent each of the Domestic Defendants, (BASF Corporation, Covestro LLC, the Dow Chemical Company, Huntsman International LLC, Huntsman Corporation, MCNS Polyurethanes USA Inc., Mitsui Chemicals America, Inc., and Wanhua Chemical (America) Co., Ltd. ("Domestic Defendants")) an initial list of preliminary search terms. The initial search terms contained approximately 150 search strings, depending on the Defendant. Also included with the initial search strings were search term groups, such as lists of MDI or TDI products. For simplicity the search term groups were separated from the search strings.

4.   Plaintiffs created the search terms based on several things, including: (1) our own investigation and review of the documents; (2) experience in antitrust cases; and (3) in consultation with a search term consultant.

5.   Defendants agreed to search terms with the U.S. Department of Justice, but have declined to produce those same terms to Plaintiffs.  If Defendants disclosed them to the DOJ, a third party, then their claim of work product has no basis.

6.   Defendants, to date, have also not provided any search terms based on their interviews with their clients.

**Defendants Ask For *More* Search Strings**

7.   On November 12, 2020, Counsel for Defendants responded to Plaintiffs' proposals, identifying technical problems with Plaintiffs' proposed terms, such as strings that exceeded 450 characters, or contained too may modifiers (*e.g.* AND, OR, NOT, W/). The solution was to take Plaintiffs' original set of search terms and break them down into small searches. On December 1,

2021, Plaintiffs broke up our terms as requested, and sent a revised version of the search terms, correcting the technical problems. Due to technical limitations with Defendants' e-discovery vendors, many terms which were initially a single string were broken into multiple strings, resulting in the initial approximately 140 strings expanding to nearly 700 search strings in total. Subsequently, Plaintiffs removed approximately 200 search strings that related to MDI and TDI Systems and Polyols, in compliance with the Court's Order of December 18, 2020, ECF No. 430.

8. On December 16, 2021, Defendants responded to Plaintiffs' search terms and proposed to either strike or modify each term. Defendants did not agree to run any of Plaintiffs' initial search terms, nor provide hit reports on the proposed terms.

### The Parties Negotiate Search Terms Without Hit Reports

9. The parties met and conferred on January 6, 11, 15, 25, and 28, 2021 regarding which search terms Defendants would agree to run hit reports on.

10. On January 14, 19, and 24, 2021 Plaintiffs provided additional revisions to the initial search terms. During the meet and confer process Plaintiffs explained which RFP each term was responsive to and explained why each search string was likely to uncover responsive documents.

### The Parties Agree to Hit Reports

11. Hit reports are a metric that shows how many times a specific search term occurs within a set of documents, as well as other details.

12. On January 29, 2021, Defendants agreed to run hit reports on Plaintiffs' proposed search terms, which, after further technical modifications, consisted of 513 search term strings.

13. Defendants did not agree at that time to use any of the search terms to start producing documents, even those not in dispute (*i.e.* use the search terms to collect responsive documents).

14. On February 19, 2021 Defendants provided initial hit reports to Plaintiffs. The results of Defendants' initial hit reports using Plaintiffs' proposed terms are reported in the table below:

| Defendant | Number of Documents | Number of Documents Including Families |
|---|---|---|
| BASF | 1,514,641 | 2,046,807 |
| Covestro | 559,893 | 858,160 |
| Dow | 1,214,495 | 1,275,479 |
| Huntsman | 553,667 | 696,176 |
| Wanhua | 1,243,506 | 1,431,819 |

### Some Defendants Produced Hit Reports That Were Run on Documents *Already Produced to Plaintiffs*

15. Some Defendants' initial hit reports contained duplication, for example, by including documents already produced to Plaintiffs (e.g., those produced to the Department of Justice). It was only after Plaintiffs inquired that some Defendants admitted that previously produced DOJ documents were included. Thus, the first set of Hit Reports were skewed to include higher numbers than normal.

### Defendants' Counterproposal

16. On March 4, 2021, Defendants provided a proposed search-term counter proposal. For the first time, Defendants agreed to some of Plaintiffs' proposed terms. Specifically, Defendants agreed to 155 of Plaintiffs' proposed search term strings, proposed to delete (not run) 130 of Plaintiffs' proposed strings, and proposed to modify 226 of Plaintiffs' proposed terms. The results of Defendants' hit reports for their initial proposal are reported in the table below:

| Defendant | Number of Documents | Number of Documents Including Families |
|---|---|---|
| BASF | 376,269 | 831,079 |
| Dow | 273,844 | 339,430 |
| Huntsman | 134,734 | 287,554 |
| Wanhua | 255,670 | 398,467 |

17.     On March 11, 18, and 22, 2021 Plaintiffs proposed additional modifications to the search terms. Defendants provided hit reports for Plaintiffs' March 11, 2021 proposal, which also removed from the report the documents Plaintiffs already have. These results are reflected in the table below.

| Defendant | Number of Documents | Number of Documents Including Families |
|---|---|---|
| BASF | 1,443,082 | 1,978,755 |
| Dow | 1,119,387 | 1,154,636 |
| Huntsman | 554,369 | 712,836 |
| Wanhua | 1,113,576 | 1,306,335 |

18.     Plaintiffs have not received updated hit reports for their March 18 and 22, revisions, which largely aimed at eliminating searches with unreasonably high hit counts (such as a search which would have pulled back any document with the words "call" and "notes" and another for "meet" and "met").

19.     On March 18, 2021, Defendants provided a further proposed revision to the search terms, which agreed to 256 of Plaintiffs' proposed terms, proposed to delete (not run) 65 of Plaintiffs' proposed terms, and proposed to modify 180 of Plaintiffs' proposed terms. The results of Defendants' hit reports are reported in the table below:

| Defendant | Number of Documents | Number of Documents Including Families |
|---|---|---|
| BASF | 572,128 | 1,072,864 |
| Dow | 493,678 | 570,070 |

20.     Exhibit A to Plaintiffs' accompanying Memorandum of Law includes the search terms Plaintiffs' provided to Defendants on March 11, 2021, along with the modifications Plaintiffs proposed on March 22. It also includes Defendants' March 18, 2021 search term proposal. Exhibit C to Plaintiffs accompanying Memorandum of Law includes demonstrative documents from the DOJ productions that are responsive to Plaintiffs' proposed terms.

### Issues Remaining

21.     The Parties have discussed some terms with apparently high hit counts (exceeding 100,000 for example) to determine mechanisms for eliminating false positives, documents that hit on the search terms for reasons other than relevance to the case. For example, terms like "please delete" may appear in e-mail footers, which most search tools can eliminate (i.e., just search the body of emails, not the footers). Or, terms like "iso" and "III" can refer to the international standards organization, or the roman numeral, respectively, but also to "isocyanate" and the "International Isocyanate Institute." Where Defendants have identified such problems, Plaintiffs have expressed willingness to find work-arounds, for example, targeting searches toward the body of an email rather than a footer, or using the "NOT" modifier to eliminate hits that pull in the "international standards organization."

### Before Search Terms Are Further Narrowed, Defendants Need To Provide Additional Information

22.     Plaintiffs have asked Defendants if they will provide two critical metrics about their search terms: (1) the number of documents Defendants will need to review after TAR is applied to Plaintiffs' proposed search terms; and (2) an estimated number of responsive documents in Defendants' null set—the set of documents culled by search terms and not run through TAR.

23.     Defendants have not agreed to provide these metrics.

### B.     Technology Assisted Review

### ESI Protocol Requires TAR Disclosure

24.     The Stipulated Order on Electronic Discovery states: "If a party decides to use a computer/technology-assisted review ("TAR") for identifying potentially responsive documents, it **shall** inform the other parties and, if requested, **shall discuss** methods and procedures for implementing it."  (ECF No. 313, § 5(a)(i)) (emphasis added).

### First, Plaintiffs Tried to Determine if Defendants Planned to Use TAR
### So That Search Term Negotiations Be Avoided

25.     By at least December 1, 2020, Plaintiffs asked Defendants if they would be conducting a review of their document collections using search terms, or if they would be applying technology assisted review ("TAR"). Plaintiffs explained that "[i]f Defendants choose to use TAR it may eliminate the need to pre-cull documents using search terms entirely, and negotiations to narrow any overbreadth concerns regarding search terms will be unnecessary." See Ex. B, Letter from S. LaFreniere to Counsel for Domestic Defendants (Dec. 1, 2020).

26.     On December 15, 2020 Plaintiffs disclosed to Defendants that they intended to use TAR for their own search for and production of documents, and agreed to use all the search terms Defendants proposed to Plaintiffs.

27.     In letters to Domestic Defendants' Counsel of December 1, 2020, January 14 and 24, 2021 Plaintiffs argued that pre-culling of search terms was improper when TAR is employed "because the use of algorithmic review will eliminate the need for Defendants to review a certain proportion of likely-unresponsive documents regardless of the terms used." See Ex. C, Letter from S. LaFreniere to Counsel for Domestic Defendants (January 14, 2021).

28.     Nevertheless, on January 24, Plaintiffs offered, as a compromise, to allow Defendants to pre-cull their document collections using a broad group of search terms, such as

those Plaintiffs provided on January 14, 2021. See Ex. D, Letter from S. LaFreniere to Counsel for Domestic Defendants (January 24, 2021). Plaintiffs have further narrowed those search terms to those included in Exhibit A to Plaintiffs' Memorandum of Law.

29. On or about January 28, 2021 Defendants agreed to disclose, by February 5, 2021, whether they would be using TAR. On February 5, 2021, all Domestic Defendants except MCNS Polyurethanes USA and Mitsui Chemicals America, Inc., disclosed that they would be using TAR.

30. On February 19, the TAR Defendants[1] provided their TAR methodologies, which are attached as Exhibits C through G to the accompanying declaration of Maura R. Grossman.

31. On February 19, 2021, Plaintiffs provided their proposed TAR methodologies (attached hereto as Exhibit E). Plaintiffs have asked that Defendants specifically adopt sections VI (stopping criteria) and VII (validation protocol) of Plaintiffs' proposal for their own TAR methodologies, which are attached hereto as Exhibit E. The parties met and conferred on March 2, 12, 19, and 23, 2021 regarding TAR methodologies, and have exchanged seven letters and emails regarding the methodologies.

32. As a compromise, Plaintiffs also proposed to eliminate the elusion test component of their stopping criteria, to narrow the number of document samples the Parties would need to review to 200. That compromise proposal is reflected in Plaintiffs' Proposed TAR Validation and Stopping Methodology to Defendants (*see* Exhibit B to Plaintiffs' Memorandum of Law).

33. Attached hereto as Exhibit F is a true and correct copy of a Letter from Plaintiffs' Counsel Halli Spraggins to Counsel for Domestic Defendants dated February 26, 2021.

---

[1] BASF Corporation, Covestro LLC, the Dow Chemical Company, Huntsman Corporation, and Wanhua Chemical (America) Co.

34. Attached hereto as Exhibit G is a true and correct copy of a Letter from S. LaFreniere to Counsel for Domestic Defendants dated March 4, 2021.

35. Attached hereto as Exhibit H is a true and correct copy of a Letter from A. Atkins to S. LaFreniere dated March 16, 2021.

36. Attached hereto as Exhibit I is a true and correct copy of a Letter from S. LaFreniere to Counsel for Domestic Defendants dated March 18, 2021.

37. Attached hereto as Exhibit J is a true and correct copy of a Letter from A. Atkins to S. LaFreniere dated March 22, 2021.

38. Attached hereto as Exhibit K is a true and correct copy of an Email from S. LaFreniere to Counsel for Domestic Defendants dated March 22, 2021.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of March, 2021 at British Columbia, Canada.

                      *s/ Sarah R. LaFreniere*
                      Sarah R. LaFreniere
                      HAUSFELD LLP
                      888 16th Street NW, Suite 300
                      Washington, DC 20006
                      Tel.: (202) 540-7200
                      Fax: (202) 540-7200
                      *slafreniere@hausfeld.com*