# EXHIBIT D



SARAH R. LAFRENIERE
Associate

888 16th Street, N.W.
Suite 300
Washington, DC 20006

(202) 540-7159 Direct
202-540-7200 Main
202-540-7201 Fax

slafreniere@hausfeld.com

January 24, 2021

**All DOMESTIC DEFENDANTS' COUNSEL**

*VIA EMAIL*

RE: Responses and Objections to Plaintiffs' First Set of Requests for Production - *In re Diisocyanates Antitrust Litigation*, MDL No. 2862

Dear Counsel:

I write to follow up on our meet and confer from Friday, January 15, 2021 and in response to Zachary Warren's January 19, 2021 letter.

## I. Search Terms

Thank you providing a set of revisions to Plaintiffs' proposed search terms. Defendants' current position is set forth below. Provided with this letter are further revisions to the search terms, in which Plaintiffs have agreed to eliminate an additional 15 terms, and accepted your proposed revisions to an additional 77 strings in full and 47 terms in part:

| Plaintiffs' January 14 Search Terms | Defendants' Position | Plaintiffs' January 24, 2021 Position |
|---|---|---|
| 154 Search Terms | Run hit reports | Agreed |
| 65 Search Terms | Strike | Agree to eliminate 15 terms |
| 181 Search Terms | Defendants propose modifications | Agree to accept 77 of your proposed modifications in full<br><br>Agree to accept 47 of your proposed modifications in part |

With those modifications there remain 154 disputed terms that Defendants are unwilling to run hit reports on which we look forward to discussing during our scheduled meet and confer on Monday January 25, 2021. We reiterate our prior requests that Defendants run hit reports for





*all* of Plaintiffs' proposed terms (using the current set of revisions).

**II. Specific Issues Related to Search Terms**

During the January 15, 2021, meet and confer you identified some exemplary terms that you requested Plaintiffs eliminate including, for example "business w/2 managers AND meeting" and "AM w/2 dir*." As we explained, and can now confirm, these were subcommittees of trade associations that Defendants participated in related to MDI and TDI. Specifically, "business w/2 managers AND meeting" refers to the Business Managers' Meeting of the diisocyanates panel, and "AM w/2 dir*" refers to the III American Directors Management Meeting. We initially proposed those terms be run in proximity to a longer string of terms, but due to the technical issues you identified, we simplified the search. As indicated in the attached, we have proposed modifications to these terms.

During our meet and confer on January 15, 2021 and in response to those examples, we explained it would be helpful to review all the terms, on a term-by-term basis, that Defendants are presently unwilling to run hit reports on. We also asked for you to identify those terms Defendants are willing to run hit reports on, and those they are not. At the time, you refused without an up-front commitment from Plaintiffs to eliminate some of those terms. At the time, the only feedback we received on Plaintiffs' proposed search terms (which were provided in September and October 2020), was to identify global technical deficiencies, and a proposal to either strike or modify every term Plaintiffs suggested. Indeed, your December 16, 2020 response to Plaintiffs' proposed search terms proposed to strike 299 of Plaintiffs' 421 terms (excluding those dealing with systems and polyols), and modify *all* the others. We appreciate the moderation in your position by providing the revised terms, and take it as a positive indication of the parties' willingness to cooperate. We are confident that we can continue to have productive conversations. During the January 15, 2021 meet and confer, we agreed to consider any terms Defendants considered objectionable, which we have now done, and look forward to discussing further.[1]

**III. Request for Search Term Hit Reports for Disputed Terms**

Nevertheless, as we previously discussed, meaningful conversations about search terms are difficult without transparency, both in terms of hit reports and search methodology.

[1] Lest our silence be taken as acquiescence, we contest the accuracy of the statement in Mr. Warren's January 19, 2021 letter that Plaintiffs have "consistently refused to negotiate any search terms until after the Domestic Defendants have produced hit reports." As we stated during the meet and confers of January 6, 11 and 15, 2021, and in our letter of January 14, 2021, and as further demonstrated by the four revised iterations of Plaintiffs' initial search terms, Plaintiffs have always been willing to discuss the search terms on a term-by-term basis (and in fact, did just that in providing justifications for each of the 421 terms during the January 11, 2021 meet and confer along with specific references to RFPs as Defendants requested), even without hit reports.

HAUSFELD



Regarding hit reports, where a disputed search term results in a small number of hits (say, 50), the conversation is very different than if the same term resulted in a much higher number of hits. Presently, Plaintiffs are negotiating in a vacuum without this information. Have any Defendants run hit reports to date? Further, please let us know how you anticipate the parties will address those search terms that Plaintiffs ask Defendants to run hit reports on but Defendants presently refuse to. Possible courses of action may be that Plaintiffs seek relief from the Court immediately, by asking the Court to order Defendants to run hit reports on the disputed terms; or alternatively, Plaintiffs may simply move to compel Defendants to use the disputed terms in their search for and production of documents without information on burden.

**IV. To Date, Defendants Have Not Supplied Any Search Terms Based on Their Own Investigation**

We also reiterate our request that Defendants propose additional search terms, to the extent appropriate, to comply with their independent obligation to search for and produce responsive documents to Plaintiffs' Requests, in accordance with Fed. R. Civ. P. 26, and Section 5(a) of the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI") (ECF No. 313), and as Plaintiffs requested in September and October 2020 when initially providing the proposed list of search terms to each Defendant. We anticipate that each Defendant may have unique language or terms that Plaintiffs have not captured, and we ask that each Defendant endeavor to include such terms to comply with this independent obligation and make such a proposal by January 29, 2020.

**V. Disclosure of Technology Assisted Review ("TAR") Tools**

Relatedly, we ask Defendants to cooperate and provide transparency regarding their search methodology. We have provided you with case law supporting our position that pre-culling of documents via search terms is improper. Nevertheless, in the interest of compromise, we would agree that any Defendants using TAR may use Plaintiffs' initial set of search terms (for clarity, the January 14, 2021 version) to pre-cull documents. Plaintiffs do not agree, and will ask the Court for relief, to the extent Defendants use search terms narrower than the January 14, 2021 version to cull the corpus of documents Defendants intend to apply TAR to. The present negotiations to narrow search terms are unnecessary, inefficient, and prejudicial to the extent Defendants intend to apply TAR to the narrower set of documents. There are several examples of how TAR would address the issues implicitly raised in your latest redline of proposed search terms, further illustrating the importance of knowing TAR's intended application as soon as possible.

**VI. Plaintiffs' Proposed Discovery Milestones**

We disagree with many of the points Mr. Warren raised regarding the schedule in his

HAUSFELD



January 19, 2021, but hope to move forward cooperatively regarding the schedule regardless. To respond briefly to the points raised in the letter, in sequence:

1. Plaintiffs reiterate that we are willing to negotiate, on a term-by-term basis, the relevance of Plaintiffs' proposed search terms, *even in the absence of hit reports*. We have been conscientious in our selection of terms and have already explained how each of them relates to the Requests for Production. Nevertheless, we are amenable to continuing those discussions on January 25, 2021 and explaining the relevance of the remaining terms in dispute.

2. The ESI protocol fails to address the situation that we find ourselves in, namely, how to address those search terms that Defendants refuse to run hit reports on.

    a. Your reference to the ESI protocol's requirement to agree on search terms before running hit reports applies only if the party is using search terms and not TAR. Are all Defendants committing to using search terms instead of TAR for their productions?

    b. The Protocol never contemplated giving any party a virtual veto on search terms, without any quantitative indicator as to burden. As requested above, please let us know how you propose we address those disputed terms.

3. Plaintiffs reiterate our request that Defendants run hit reports by custodian, doing so will provide greater insight into the potential burden of particular terms and is supported by the case law. *E.g. Jose Luis Pelaez, Inc. v. Scholastic*, No. 16-cv-02791, 2018 WL 1891116 (S.D.N.Y. Apr. 3, 2018) (ordering Defendants to provide hit reports by custodian for certain search strings). We agree with your statement that the parties "cannot meaningfully discuss hit reports with more than 10,000 data points," as may occur when negotiating hit reports of six defendants at once. This is why we initially requested that the parties negotiate search terms on a Defendant-by-Defendant basis, rather than collectively. Nevertheless, in the spirit of cooperation, we agreed to participate in collective negotiations at your specific request. If you are concerned about the feasibility of collective negotiations, we are amenable to returning to individualized discussions.

4. Your concern about the amount of time needed to negotiate search terms after Defendants provide hit reports could easily be remedied if Defendants simply provided hit reports now, and agreed to discuss both relevance and burden at the same time. You have had our proposed search terms for several months now. Combining the proposed three weeks to negotiate relevant terms with the two weeks to discuss search terms after Defendants run hit reports (five in total) should be sufficient,





particularly since generating hit reports will not take long.

5. We are disappointed that Defendants are requesting over eight months to begin rolling productions from the date Plaintiffs' first proposed search terms. Although many terms need to be negotiated, surely Defendants already collected and begun searching documents before all the negotiations were concluded (as Plaintiffs have). Nevertheless, we hope to reach agreement on a reasonable date to begin rolling productions.

6. Given your statement that the proposed schedule is "unworkable" we propose the following modified schedule:

    1. Finalize custodians by January ~~15~~, 22 2021;
    2. Parties disclose use of search terms and/or TAR by January ~~22~~, 29, 2021;
    3. Agree on preliminary list of search terms and/or disclose TAR methodology by Jan. 29, 2021;
    4. Provide hit reports of requested terms by February ~~12~~, 19, 2021 (assuming vendors have finished collecting/processing data);
    5. Meet and confer regarding overbroad/burdensome terms between February 5 and March ~~1~~ 8, 2021;
    6. 5-page simultaneous briefs regarding search term disputes filed on March ~~12~~, 18 2021; and
    7. Begin rolling production of documents on ~~March 29~~, April 14, 2021.

We reiterate our request that Defendants engage in an iterative and transparent process regarding the negotiation of search terms provide Plaintiffs with: (1) hit reports (by custodian); and (2) a disclosure of whether each Defendant plans to use technology assisted review.

Very truly yours,

/s/ Sarah R. LaFreniere
Sarah R. LaFreniere

cc: Megan E. Jones
Jason S. Hartley
Jason Lindner
William Pietragallo, II