# EXHIBIT E

**HAUSFELD**

Halli Spraggins
Associate

888 16th Street, N.W.
Suite 300
Washington, DC 20006

202-540-7377 Direct
202-540-7200 Main
202-540-7201 Fax

hspraggins@hausfeld.com

February 19, 2021

ALL DEFENDANTS' COUNSEL

*VIA EMAIL*

    RE:  *In re: Diisocyanates Antitrust Litigation MDL No. 2862 – Technology-Assisted Review of Plaintiffs' Documents*

Dear Counsel:

In an effort to foster cooperation in the discovery process, Plaintiffs provide the below TAR Disclosures. Plaintiffs anticipate that Defendants will provide and adopt similarly robust and transparent procedures regarding their own use of TAR, and Plaintiffs reserve their right to amend these TAR Disclosures to the extent Defendants do not agree to similar procedures.

Plaintiffs do not waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, or any other privileges, protections, or objections to discovery that the Plaintiffs may have (individually, "Privilege"; collectively, "Privileges"). Plaintiffs preserve all such Privileges. Plaintiffs reserve the right to redact and/or to withhold from any production any document that contains information subject to any appropriate objection, including, without limitation, any Privilege or Privileges, subject to the Order Governing the Protection and Exchange of Confidential Materials, ECF No. 239.

## I. DEFINITIONS

These TAR Disclosures use the following definitions:

1. "Entire Document Set" means all documents collected from the agreed-upon custodians.

2. "TAR Review Set" means the set of documents that hit on the search terms Defendants proposed on August 14, 2020.

3. "Delta Set" means the set of documents that were not included in the TAR Review Set.

4. "TAR Null Set" means the set of documents in the TAR Review Set that were not identified as responsive by TAR, and were therefore not reviewed by a human reviewer, based on their low classification scores.

## II. COOPERATION AND TRANSPARENCY

For the purposes of avoiding protracted discovery disputes in this proceeding, but without requiring the disclosure of any Privileges, Plaintiffs have agreed to provide the Defendants with certain non-privileged documents and information set forth below that they would not ordinarily disclose in the course of discovery. Such documents and information shall be subject to the Order Governing the Protection and Exchange of Confidential Materials, ECF No. 239.

Plaintiffs agree to meet and confer in good faith to resolve any disputes that may arise in the course of the TAR review process or the TAR Disclosures set forth in this letter, and if Parties are unable to reach agreement, they will promptly raise such matters with the Court for resolution.

## III. BEGINNING OF TECHNOLOGY-ASSISTED REVIEW

Plaintiffs intend to use a TAR 2.0 system which employs continuous active learning ("CAL") to identify relevant documents in the review population.[1] The predictive models used to generate classification scores are derived based on the coding of human-reviewed documents. To start the TAR review process, a set of documents (the "initial set") that are conceptually diverse and representative of the entire dataset are selected for human review. Once the first iteration of classification scores is generated, human reviewers review documents that are deemed the next most likely to be responsive based on their classification scores. This review process includes quality control ("QC") efforts and is followed by a validation process to verify that a reasonable number of relevant and responsive documents have been identified.

## IV. TAR REVIEW POPULATION

The review population from which the initial set will be created, and to which TAR shall be applied (the "TAR Review Set") shall consist of the documents that hit on the search terms supplied to Plaintiffs' on August 14, 2020 (and any additional search terms proposed by Plaintiffs as reasonably necessary to locate responsive documents in accordance with Fed. R. Civ. P. 26 and Section 5(a) of the Stipulated Order Re: Discovery of Electronically Stored Information, ECF No. 313, as applied to the custodians agreed to by the parties (and any others to be added at any point in time), and any non-custodian data sources, such as shared drives.

Plaintiffs represent that the TAR Review Set is reasonably believed to contain information that is (1) relevant to the claims and defenses in this action, and/or (2) responsive to Defendants' requests for production.

---

[1] In the context of this TAR Disclosure, the terms "relevant" and "responsive" are used interchangeably. Relevance is defined by (1) the claims and defenses in this action, and/or (2) responsiveness to Defendants' First Request for Production served on Plaintiffs on March 16, 2020. In addition, by committing to adhere to the guidelines set forth in this letter, Plaintiffs anticipate Defendants will propose and adhere to similar guidelines and are not waiving any arguments or objections as to the admissibility of any responsive documents.

Plaintiffs recognize that certain types or categories of documents may not be appropriate for TAR. These include, but are not limited to: photographs or images, chromatograms, mass spectrometry, schematics or drawings, some spreadsheets and presentations, audio or video files, documents with handwritten notations, documents with too little text or Optical Character Recognition ("OCR") of such poor quality such as to render the use of TAR ineffective, hard-copy documents, contacts, and calendar entries.

Plaintiffs may also remove obvious "junk" or non-responsive materials from the TAR Review Set based on sender domain name(s) or address(es), URLs, file types, and similar characteristics. Plaintiffs will disclose the criteria used to identify such obvious "junk" or non-responsive materials to be removed from the TAR Review Set.

### V. TAR TRAINING PROCESS AND REVIEW QUALITY CONTROL ("QC")

Within ten (10) business days of receipt of these TAR Disclosures, Defendants may, but are not required to, provide Plaintiffs with up to one hundred (100) documents for consideration as training examples for TAR. Thereafter, Defendants may provide further sets of proposed training examples for TAR, for up to thirty (30) days after receipt of these TAR Disclosures. Should Plaintiffs have an objection to any of the proposed training documents, the Parties shall meet and confer, and if they are unable to resolve their disagreement within ten (10) business days, they shall promptly raise the issue with the Court for resolution.

To ensure that the human coding decisions are as accurate and consistent as possible, both the Plaintiffs' vendor and its counsel shall regularly perform QC of the human review process, including but not limited to, review of: (i) documents receiving a high classification score that are coded non-responsive by a human reviewer, (ii) documents receiving a low classification score that are coded responsive by a human reviewer; (iii) documents that are or appear to be inconsistently coded by human reviewers; and/or (iv) random samples of documents coded by human reviewers. Any document that was coded incorrectly, shall be fed back into the TAR system with the proper coding.

With each rolling production, Plaintiffs will provide: 1) the number of reviewed documents found to be non-responsive; and 2) the number of documents in the TAR Review Set that have and have not yet been reviewed.

### VI. TAR REVIEW STOPPING CRITERIA

The TAR review process for each rolling production will continue until Plaintiffs can reasonably conclude that further review is unlikely to yield additional responsive documents with sufficient quantity or materiality to justify continuing. This will not occur before the last batch of documents identified by TAR and reviewed by humans contains no more than five to ten percent

(5%-10%) responsive documents, and none of the responsive documents is novel and/or more than marginally relevant.

At that point, Plaintiffs will conduct an elusion test to estimate the number of responsive documents that have been missed by TAR in that production set. The number of documents used in the elusion test shall be four hundred (400) documents[2] drawn at random from the "TAR Null Set," which is comprised of the documents for which the TAR classification scores did not suggest the need for human review (*i.e.*, they received low classification scores and were therefore deemed to be non-responsive). This sample size will provide an estimate of the number of documents missed at the 95% confidence level, with a margin of error of plus or minus five percent (5%). If the elusion test suggests that there is reason to believe that a substantial number of novel or more than marginally relevant documents have been missed, the review process shall resume for that particular rolling production.

For each rolling production, Defendants will promptly be provided with the results of the elusion test, including copies of any responsive documents identified as a result of the elusion test. Should the Parties disagree that, for any rolling production, Plaintiffs have chosen a reasonable stopping point, or that the results of the elusion sample suggest the TAR process is complete, the Parties shall meet and confer in good faith and if they are unable to resolve their disagreement within ten (10) business days, they shall promptly raise the issue with the Court for resolution.

The same Review Stopping Criteria and elusion-test process shall be applied for each rolling production. In connection with each rolling production, Plaintiffs will report the number of non-responsive documents that have been withheld, including those withheld for privilege.

## VII.   VALIDATION PROTOCOL

Once Plaintiffs reasonably believe that they have produced or identified for production substantially all responsive non-privileged documents, they shall conduct validation according to the sampling protocol described below and in Appendix A.

   A. The TAR Review Set shall be partitioned into the following four (4) Subcollections:

   1. Documents identified by the review as responsive, including any privileged documents, but not including family members of responsive documents, unless those family members are deemed to be responsive in their own right ("Subcollection 1"). The sample of documents in Subcollection 1 shall consist of 500 documents selected at random;

   2. Documents coded as non-responsive by a human reviewer, regardless of how the documents were selected for review (*e.g.*, by TAR, manual review, or otherwise) ("Subcollection 2"). The sample of documents in Subcollection 2 shall consist of 1,500 documents selected at random;

---

[2] The number of documents for the elusion test is contingent on the parties' agreement to validation procedures similar to those outlined in Section VII.

    3.     Documents excluded from review as the result of TAR, *i.e.,* documents given a low classification score and therefore not reviewed by a human reviewer ("Subcollection 3"). The sample of documents in Subcollection 3 shall consist of 1,500 documents selected at random; and

    4.     Documents from the Delta Set ("Subcollection 4"). The sample of documents in Subcollection 4 shall consist of 1,500 documents selected at random.

B.   The total sample of 5,000 documents comprised of the documents from Subsamples (1), (2), (3), and (4), shall be combined into a single Validation Sample, with no indication of the Subcollection from which the documents were derived, how they were previously coded, or their classification score (if any). The Validation Sample shall be reviewed and coded by a subject matter expert ("SME") who is knowledgeable about the subject matter of the litigation. This should be an attorney who is familiar with the RFPs and the issues in the case. During the course of the review of the Validation Sample, the SME shall not be provided with any information concerning the Subcollection or Subsample from which any document was derived, the prior coding of any document, or its classification score. The intent of this requirement is to ensure that the review of the Validation Sample is blind; it does not preclude a Party from selecting as SME(s) one or more attorneys who may have had prior involvement in the original review process.

C.   Once the coding has been completed, Plaintiffs shall prepare a table listing each of the 5,000 documents in the Validation Sample. For each document, the table shall include:

    1.     the Bates number of the document (for documents produced), or a control/identification number (for non-produced documents);

    2.     the Subsample from which the document came (*i.e.*, (1), (2), (3), or (4));

    3.     the SME's responsiveness coding for the document (*i.e.*, responsive or non-responsive); and

    4.     the SME's privilege coding for the document (*i.e.*, privileged or not privileged). If the document is coded as non-responsive, a privilege determination need not be made. All documents in the Validation Sample coded as privileged shall be included on Plaintiffs' Privilege Log, as per the requirements set forth in ¶ 10 of Stipulated Order Re: Discovery of Electronically Stored Information ("ESI"), ECF No. 313.

**HAUSFELD**

    D.  The following items shall be provided to Defendants:

        1.    a copy of all, non-privileged documents in the Validation Sample that were not previously produced or identified for production to Defendants; and

        2.    the statistics and recall estimate detailed in this TAR Disclosure and in Appendix A.

Once the Defendants have received and have had an opportunity to review the items described in Paragraph VII.C and Appendix A, the Parties shall meet and confer to determine whether or not the Parties agree that the recall estimate, and the quantity and nature of the responsive documents identified through the Validation Process, indicate that the review is substantially complete. If the recall estimate and the samples indicate that Subcollections (2), (3), and/or (4) still contain a substantial number of novel, non-marginal, or non-duplicative responsive documents as compared to Subcollection (1), the review and QC process shall resume, and the Validation Process shall be repeated, as warranted.

If the parties are unable to agree on whether the review is substantially complete, or whether the Validation Process must be repeated, the Parties' shall promptly petition the Court for assistance in resolving the dispute.

                                    Very truly yours,

                                    /s/ Halli E. Spraggins

cc:    Megan E. Jones
         Jason S. Hartley
         Jason Lindner
         William Pietragallo, II

AMSTERDAM  BERLIN  BOSTON  BRUSSELS  DÜSSELDORF  LONDON  NEW YORK
PARIS  PHILADELPHIA  SAN FRANCISCO  STOCKHOLM  WASHINGTON, DC

www.hausfeld.com

**Appendix A**
Recall Estimation Process

An estimate of recall shall be computed to inform the decision-making process described in Section VII above; however, the absolute number in its own right shall not be dispositive of whether or not a review is substantially complete. Also of concern is the novelty and materiality (or conversely, the duplicative or marginal nature) of any responsive documents identified in Subsamples (2), (3), and/or (4). Plaintiffs shall provide to Defendants all of the information (including the calculations) set forth below.

**Recall Estimation Method:**

The number of responsive documents found ≈ the size of Subcollection 1 × the number of responsive docs in the sample from Subcollection 1 ÷ 500.

The number of responsive documents coded incorrectly ≈ the size of Subcollection 2 × the number of responsive documents in the sample from Subcollection 2 ÷ 1,500.

The number of responsive documents excluded by TAR and not reviewed ≈ size of Subcollection 3 × the number of responsive documents in the sample from Subcollection 3 ÷ 1,500.

The number of responsive documents in the Delta Set and not reviewed ≈ size of Subcollection 4 × the number of responsive documents from the sample of Subcollection 4 ÷ 1,500.

Estimated recall ≈ the number of responsive documents found ÷ (the number of responsive documents found + the number of responsive documents coded incorrectly + the number of responsive documents excluded by TAR and not reviewed + the number of responsive documents in the Delta Set and not reviewed).