# EXHIBIT F

**HAUSFELD**

Halli Spraggins
Associate

888 16th Street, N.W.
Suite 300
Washington, DC 20006

202-540-7377 Direct
202-540-7200 Main
202-540-7201 Fax

hspraggins@hausfeld.com

February 26, 2021

ALL DEFENDANTS' COUNSEL

*VIA EMAIL*

      RE:    *In re: Diisocyanates Antitrust Litigation MDL No. 2862 – Technology-Assisted Review ("TAR") Disclosures*

Dear Counsel:

Plaintiffs write regarding certain Defendants'[1] February 19, 2021 letters disclosing intended TAR methodologies, and certain other topics regarding Defendants' search for and production of documents.

## I. Global Deficiencies in Defendants' TAR Disclosures

TAR Defendants have provided general validation procedures which are deficient in both their lack of transparency and their lack of an adequate validation procedures. In particular, none of Defendants' protocols include a sampling protocol similar to that set forth in Section VII of Plaintiffs' February 19, 2021 TAR Disclosure. Below we have identified certain procedures and disclosures missing from all TAR Defendants' TAR disclosures.

### A. Review Population

Plaintiffs have (reluctantly) agreed to allow the Parties to pre-cull the document population using search terms. As previously indicated, pre-culling the document review population using search terms necessarily eliminates a typically substantial number of responsive documents and is accordingly frowned upon by experts and Courts alike. Further, such pre-culling of the TAR review population is both unnecessary and inefficient; indeed, the attorney time needed to meaningfully negotiate search terms likely will exceed the cost of applying TAR to a larger population or review, especially since TAR itself obviates the need for the review of the vast majority of non-responsive documents.

If Defendants insist that the parties continue negotiating and narrowing search terms, Plaintiffs ask that Defendants (a) provide a counter-proposal of search terms, i.e., specifically identify the modifications necessary to the present list of search terms and why they are needed; (b) provide hit counts for the proposed revised search-term list; (c) test a sample of the

---

[1] BASF Corp., Covestro LLC, the Dow Chemical Company, Huntsman Corporation, and Wanhua Chemical (America) Co, collectively ("TAR Defendants").

documents Defendants propose to eliminate through the use of narrower search terms (i.e. the population of documents that hit on Plaintiffs' preliminary list of proposed terms but not Defendants' revised terms) and provide Plaintiffs with the recall rate for this sample, as well as copies of responsive documents that were missed by the use of the narrower set of search terms.

Plaintiffs also reiterate our prior requests that Defendants comply with their Fed. R. Civ. P. 26(g) obligations by, among other things: (a) identifying additional search terms that would not be captured by Plaintiffs' preliminary proposal; and (b) commit to "go get" certain categories of documents responsive to Plaintiffs' RFPs and not conducive to search terms or TAR.

### B. Review of certain categories of documents not suited to review by TAR

Plaintiffs' disclosures proposed to separately review certain types of documents not appropriately suited to review by TAR, such as photographs, drawings, certain spreadsheets, audio files, and the like. Please confirm that TAR defendants will create an independent, manual review process for documents not suited to TAR.

### C. Removal of "junk" and non-responsive documents

Plaintiffs' disclosures proposed to identify to Defendants certain obvious "junk" files that would be removed from the TAR set. Please confirm that TAR Defendants will do the same.

### D. Training Samples

Plaintiffs' disclosures provided Defendants with the opportunity to provide Plaintiffs with documents for consideration as training examples. Please let us know if Defendants are amenable to Plaintiffs providing training samples for Defendants to use in their TAR training process.

### E. Stopping Criterion and Elusion Test

Plaintiffs' disclosures proposed to continue the TAR review process until no more than five to ten percent of documents being reviewed are responsive. TAR Defendants' disclosures do not define a stopping criterion, and unilaterally vest Defendants with the ability to determine (without disclosing) when the TAR review process is complete. For example, WCA's disclosure states that review will conclude when "the minimum recall[2] [of the validation set] is equal to or higher than the defined Stopping Criteria" but does not define what the stopping criteria is. Huntsman's disclosures likewise state that TAR will conclude on the basis of a "holistic judgment" and a "sufficient recall rate." The parties undoubtedly agree that TAR should conclude when it would be disproportionate to continue and when the number of responsive documents that have been missed is low, provided that the missed documents are neither novel nor important. However, Plaintiffs are entitled to know *when* and under *what criteria* Defendants believe further review would be inefficient and possibly burdensome. We have identified a precision (or prevalence in the review set) of 5-10% as likely to be an appropriate stopping point.

---

[2] "The percentage of all responsive documents expected in the TAR corpus that have been identified in the production set."

AMSTERDAM  BERLIN  BOSTON  BRUSSELS  DÜSSELDORF  LONDON  NEW YORK
PARIS  PHILADELPHIA  SAN FRANCISCO  STOCKHOLM  WASHINGTON, DC

www.hausfeld.com

**HAUSFELD**

Please provide more details on the criteria TAR Defendants will use to stop the review, or let us know if you agree with Plaintiffs' criterion.

Like Plaintiffs, some TAR Defendants have proposed to use an elusion test to identify the number of low-ranked documents that are relevant documents that should have been produced. Plaintiffs do not believe that an elusion test, alone, is adequate. Moreover, Defendants have not: (a) defined which documents will be used in the null set for the elusion test; (b) specified the size of the sample for the elusion test; (c) indicated whether they will disclose the results of the elusion test (*i.e.* the number of responsive documents found in elusion sample and the estimated total number of responsive documents that have been missed by TAR); or (d) agreed to meet and confer to determine whether the number and nature or quality of the documents that have been missed indicate that an adequate production has been achieved. Plaintiffs disclosed, as to each of these categories, that: (a) a preliminary elusion test should be run on the TAR null set (those documents that were not identified by TAR as likely to be responsive) for each rolling production, (b) the elusion test would be run on a random sample of 400 Documents, which will provide an estimate of the number of documents missed at the 95% confidence level, with a margin of error of plus or minus five percent (5%); (c) the results will be disclosed; and (d) Plaintiffs will meet and confer in good faith regarding any disagreements about the stopping criteria or the number and nature of the documents that were missed. However, this proposal is contingent on the final validation protocol discussed below and in section VII of Plaintiffs' disclosures.

### F. DOJ Search Terms

Plaintiffs requested during our meet and confer on February 9, 2021 and in an email of February 15, 2021 that Defendants identify the search terms they used for the Department of Justice productions. We have not received a response. Please provide us with the DOJ search terms.

### G. Final Validation Protocol and Sampling

Plaintiffs proposed a robust final validation protocol which included a sampling procedure for four categories of documents: (a) responsive; (b) non-responsive due to human review; (c) non-responsive due to TAR; and (d) not included for review because of search terms. Sampling protocols similar to those identified in Plaintiffs' disclosures are commonly employed as a best practice throughout the industry to provide both parties with the reassurance that any validation measures have sufficiently identified and eliminated deficiencies impacting all aspects of the document review process. Importantly, Plaintiffs' proposal includes the identification and production of non-responsive documents so that the Parties' may independently validate the

efficacy of TAR. Please let us know if Defendants agree to employ a similarly robust final validation procedure.

### H.  Disclosure of Recall

Plaintiffs' disclosures provided for the disclosure of recall at the end of the final validation procedure (Section VII). Recall reflects the approximate proportion of responsive documents that have been captured by the use of TAR, and disclosure of recall allows the parties to assess the completeness or efficacy of the TAR review process. While Plaintiffs' did not define a minimum recall, 70-80% recall is often considered reasonable by courts. Using the final validation process described by Plaintiffs can yield a lower recall estimate. Plaintiffs request that Defendants commit to providing recall estimates based on the criteria identified in Appendix A to Plaintiffs' disclosures.

Very truly yours,

/s/ *Halli E. Spraggins*
Halli E. Spraggins

cc: Megan E. Jones
Jason S. Hartley
Jason Lindner
William Pietragallo, II
Sarah R. LaFreniere