**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
<u>FOR A PROTECTIVE ORDER REGARDING DEFENDANTS' SEARCH TERMS</u>**

# **TABLE OF CONTENTS**

Introduction .................................................................................................................... 1

Argument ....................................................................................................................... 4

    A.    Legal Standard ............................................................................................... 4

    B.    The Search Term Dispute Has Been Extensively Litigated and Decided ............. 6

        1.    Origins of the Search Term Dispute ........................................................ 6

        2.    Consideration of Search Terms by the Special Master ............................. 7

        3.    Plaintiffs' Objections to the R&R Were Overruled by this Court ............. 9

    C.    This Contrived Search Term Dispute Is Nothing More than a Procedurally Flawed Attempt to Reconsider the Court's Order ................................................ 10

        1.    There Is No Basis for the Court to Reconsider its Well-Reasoned Order or the R&R of Judge Francis ......................................................... 10

        2.    Plaintiffs' Reliance on the ESI Protocol Is Wrong ................................. 11

    D.    Plaintiffs' Demand Would Disrupt the TAR Procedure that the Court Instructed Defendants to Follow .......................................................................... 13

    E.    This Motion for a Protective Order Should Be Referred to the Special Master ............................................................................................................... 14

    F.    Defendants Should Be Awarded Their Costs Associated with Plaintiffs' Demands that Defendants Use their Search Terms............................................... 14

Conclusion .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Boeynaems v. LA Fitness Int'l, LLC,*
  285 F.R.D. 331 (E.D. Pa. 2012) .......................................................................... 14

*Cabotage v. Ohio Hosp. for Psychiatry, LLC,*
  No. 11-cv-50, 2012 WL 3064116 (S.D. Ohio July 27, 2012) ................................ 11

*EEOC v. George Washington Univ.,*
  No. 17-cv-1978, 2020 WL 3489478 (D.D.C. June 26, 2020) ................................... 5

*Goodman v. Praxair Services, Inc.,*
  632 F. Supp. 2d 494 (D. Md. 2009) ...................................................................... 11

*In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.,*
  No. 12-MD-2391, 2013 WL 1729682 (N.D. Ind. Apr. 18, 2013) ............................ 7

*In re Shell Oil Refinery,*
  143 F.R.D. 105 (E.D. La. 1992) ............................................................................ 11

*In re Wilson,*
  No. 12-cv-02078, 2017 WL 2536913 (D.S.C. June 12, 2017) ............................... 11

*Joos v. Astrue,*
  No. 09-1693, 2010 WL 4625577 (W.D. Pa. Nov. 4, 2010) .................................... 10

*Livingston v. City of Chicago,*
  No. 16-CV-10156, 2020 WL 5253848 (N.D. Ill. Sept. 3, 2020) .............................. 5

*Max's Seafood Cafe v. Quinteros,*
  176 F.3d 669 (3d Cir. 1999) .................................................................................. 11

*Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.,*
  953 F. Supp. 400 (D.D.C. 1996) ........................................................................... 11

*Shingara v. Skiles,*
  420 F.3d 301 (3d Cir. 2005) .................................................................................... 4

*Sill v. State Farm Lloyds,*
  No. SA-12-CA-544-DE, 2013 WL 12393983 (W.D. Tex. Mar. 27, 2013) ............... 4

*United Med. Supply Co. v. United States,*
  77 Fed. Cl. 257 (2007) .......................................................................................... 11

*United States ex rel. Rector v. Bon Secours Richmond Health Corp.,*
  No. 11-cv-38, 2014 WL 66714 (E.D. Va. Jan. 6, 2014) ........................................ 11

*United States v. Grasha,*
  No. 18-cr-325, 2020 WL 5424002 (W.D. Pa. Sept. 10, 2020) .............................. 10

**Rules**

Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment ................................. 5

Fed. R. Civ. P. 26(b)(2)(C)(ii) ................................................................................ 4

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................... 4

Fed. R. Civ. P. 26(c)(1) ........................................................................................ 4

Fed. R. Civ. P. 26(c)(3) ...................................................................................... 14

Fed. R. Civ. P. 37(a)(5) ...................................................................................... 14

**Other Authorities**

Hon. James C. Francis IV, *Judicial Modesty: The Case for Jurist Restraint in the New Electronic Age,* L. Tech. News, Feb. 2013, *reprinted in Electronic Discovery 2013* (PLI Litig. & Admin. Prac., Course Handbook Ser. No. H-924, 2013) ................................ 15

Paul Weiner & Denise Backhouse, *"Transparency," "Discovery-on-Discovery" Type Disclosures, and Party-Opponent Validation in eDiscovery,* Labor Law J. 212 (Fall 2019) ................................................................................................................ 5, 12

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018) ......................... 5

## Introduction

After the parties negotiated and litigated the search terms that Plaintiffs demanded that Defendants[1] use for more than a year, the Court resolved the dispute.  Unsatisfied with the Court's decision, Plaintiffs have asked the Special Master to convene a new hearing where they hope to obtain a more favorable decision for a subset of those very same search terms.  Their motion to compel Defendants to use those search terms was denied, and their renewed request should be denied again.  Their request to resurrect those search terms is emblematic of a game plan that Plaintiffs have followed since their motion to compel was denied—to manufacture an endless series of disputes, often of matters that were resolved long ago.  Their strategy seems designed to maximize the discovery burdens on Defendants and frustrate the orderly completion of discovery.  The Court should issue a protective order to bring this to an end.

In October 2020, Plaintiffs sent the search terms they wanted Defendants to use, and the search terms were staggering—after fixing technical errors, Plaintiffs demanded hundreds of search strings with tens of thousands of individual search terms.  They hit on virtually every document that Defendants had collected, thus defeating the purpose of search terms to narrow and focus discovery.  Through months of negotiations, Plaintiffs would not budge.  They fixed some (but not all) obvious errors, offered a few cosmetic changes, but otherwise continued to demand that Defendants use their overbroad search terms.

Eight months ago in March 2021, Plaintiffs moved "to compel Defendants to use certain search terms" and their Technology-Assisted Review ("TAR") procedures.  (ECF No. 455).  After

---

[1] "Defendants" here refers only to those that have elected to use TAR in their document reviews and who have negotiated and litigated search terms in that context: BASF Corporation, Covestro LLC, The Dow Chemical Company, Huntsman International LLC, and Wanhua Chemical (America) Co., Ltd.

extensive briefing, lengthy expert reports, numerous declarations, a hearing to consider the experts' opinions, and another hearing for legal argument, the Special Master (Magistrate Judge James C. Francis IV (ret.)) recommended that "insofar as it relates to search terms, the plaintiffs' motion to compel should be denied." (Report and Recommendation (the "R&R"), ECF No. 529 at 26). He concluded that "plaintiffs have failed to demonstrate that their proposed search terms are the only reasonable option." (*Id.*). During the proceedings, Judge Francis proposed an elegant solution to resolve the search term dispute: if the parties *agreed* on search terms, then Defendants' validation test after completing the TAR review would be limited to the set of documents collected from agreed custodians during the relevant date range *after applying search terms*; if, on the other hand, the parties *did not agree* on search terms, then Defendants' validation test would expand to encompass the *"null set" of all documents removed by search terms*. More than three months ago on August 25, 2021, Defendants informed Plaintiffs that they would adopt and follow Judge Francis's proposal. (ECF No. 532-1 ¶ 23).

Unsatisfied, Plaintiffs objected to the R&R. (ECF No. 535). They asked the Court to "order Defendants to run Plaintiffs' proposed search terms," or alternatively for the Court "itself [to] adjudicate each of the 245 search terms currently in dispute," or as a third alternative "to simply order Defendants to produce all non-privileged documents in their collections that hit on Plaintiffs' terms." (*Id.* at 3). The Court denied Plaintiffs' objection, adopted the R&R, and resolved the search term dispute. (ECF No. 549). The Court ruled that "Defendants are not compelled to adopt the Plaintiffs' search terms," and it commended the R&R for providing "a roadmap highlighting the potholes in Defendants' prior positions and how to proceed to achieve reasonable and proportionate search terms and TAR methodologies." (*Id.* at 2). It instructed Defendants "to proceed as they have outlined in their submissions forthwith." (*Id.*). In short, the

Court's ruling resolved the search term dispute by requiring the efficacy of Defendants' search terms to be tested as part of the post-TAR validation procedures, but without having to litigate each search term individually.

Defendants promptly began implementing those procedures, consistent with the Court's articulation of the "need to move the case." Atkins Decl. ¶ 10. They invited Plaintiffs to propose search terms Defendants would consider, encouraging Plaintiffs to be more reasonable and focused. Plaintiffs again proposed voluminous search terms. Nevertheless, Defendants were mindful that the procedures proposed by Judge Francis and endorsed by the Court gave them a strong incentive to adopt search terms that would capture as many responsive documents as reasonably possible. Otherwise, Defendants' validation tests might require them to resume their TAR review. Thus, Defendants accepted some of Plaintiffs' proposed search terms, adopted others in modified form, adopted additional search terms of their own, and disclosed the search terms to Plaintiffs the last week of October. Defendants assembled their review teams, began their reviews by that week or the first week of November, and have already begun producing documents.

After nearly three weeks of silence, Plaintiffs disclosed that they still demand that Defendants use their search terms. They raised it for the first time at the status conference with the Court on November 15, 2021, without informing (much less meeting and conferring with) Defendants in advance.[2] More than a week later, and on the eve of the Thanksgiving holiday, Plaintiffs disclosed the search terms they are demanding Defendants use, which Plaintiffs

_____

[2] Worse, Plaintiffs waited to raise this demand for more than a month after Defendants—relying upon the Court-ordered process—notified Plaintiffs of their intention to substantially complete their document production by March 21, 2022. That notification "assume[d] the absence of unforeseen circumstances or further challenges from Plaintiffs that would impact these dates." Atkins Decl. ¶ 12 (citation omitted). Plaintiffs' gambit here is exactly the kind of further challenge that would impact the proposed substantial completion date.

acknowledge were all part of the prior motion to compel (with some minor modifications).  Unlike the first time the parties litigated search terms, Plaintiffs did not file a motion to compel, obviously trying to avoid the fact that the issue has been litigated and decided.

The parties met and conferred on December 6, 2021, at which time Plaintiffs insisted that the parties negotiate and litigate their resurrected search terms without first resolving the crucial threshold question—whether Plaintiffs have met the heavy burden for reconsideration that would justify putting Defendants to the substantial effort, cost and distraction of re-negotiating and re-litigating issues that were resolved when the Court denied Plaintiffs' motion to compel.  For that reason, Defendants bring this motion for a protective order.

## Argument

### A.    Legal Standard

With good cause shown, a protective order may issue under Federal Rule of Civil Procedure 26(c), "forbidding" or narrowing the scope of discovery to relieve the responding party of "undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *Shingara v. Skiles*, 420 F.3d 301, 305-06 (3d Cir. 2005); *cf. Sill v. State Farm Lloyds,* No. SA-12-CA-544-DE, 2013 WL 12393983, at *4 (W.D. Tex. Mar. 27, 2013) ("The Court, even on its own motion, also may limit the frequency or extent of discovery if, for example, the movant has had ample opportunity to obtain the information or if the burden or expense of the proposed discovery outweighs its likely benefit.") (citing Fed. R. Civ. P. 26(b)(2)(C)(ii) and (iii))).

In the era of e-discovery, Rule 1 should not be forgotten, but rather emphasized to promote the "just, speedy, and inexpensive determination of every action."  Commentary on Federal Rule of Civil Procedure 26 states, in part:

> Given our adversary tradition and the current discovery rules, it is not surprising that there are many opportunities, if not incentives, for attorneys to engage in discovery that, although authorized by the broad, permissive terms of the rules, nevertheless results in delay. *See*

4

> Wayne D. Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change*, 31 VAND. L. REV. 1259 (1978). As a result, it has been said that the rules have "not infrequently [been] exploited to the disadvantage of justice." *Herbert v. Lando*, 441 U.S. 153, 179 (1979) (Powell, J., concurring). These practices impose costs on an already overburdened system and impede the fundamental goal of the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment.  This commentary is more relevant than ever.

Here, Plaintiffs continue their dogged efforts to upend the foundational principle, articulated in Sedona Principle 6 and adopted repeatedly by courts, that the "responding party . . . is best situated to decide how to search for and produce emails responsive to Plaintiffs' discovery requests."  *Livingston v. City of Chicago*, No. 16-CV-10156, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020); *see The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 118 (2018) [hereinafter The Sedona Principles].  Judge Francis rightly rejected Plaintiffs' inappropriate demands to impose their own search terms on Defendants, reaffirming "that the producing party is the master of its methodology," and this principle "is a deterrent to imposing a requesting party's proposed procedures unless it is evident that the producing party is unable to come up with a reasonable alternative."  (ECF No. 529 at 24; *see also id.* at 11-12).  "No Federal Rule 'has given judges the authority … to dictate' to parties how to search their documents."  *EEOC v. George Washington Univ.*, No. 17-cv-1978, 2020 WL 3489478, at *11 (D.D.C. June 26, 2020) (quoting The Sedona Principles at 118 n.92).  Plaintiffs' insistence on certain search terms is nothing more than a glaring example of how "eDiscovery can be improperly weaponized."  Paul Weiner & Denise Backhouse, *"Transparency," "Discovery-on-Discovery" Type Disclosures, and Party-Opponent Validation in eDiscovery,* LABOR LAW J. 212, 218 (Fall 2019).

**B.      The Search Term Dispute Has Been Extensively Litigated and Decided**

The Court resolved the hard-fought search term dispute after almost a year of motion practice.  Relying on the Court's Order, the Defendants' TAR review and document production is well underway at great cost to the Defendants.  To date, Defendants have reviewed more than 500,000 documents in their respective TAR reviews.  Atkins Decl. ¶ 17. It is not time to relitigate a closed issue.  It is time to get the Defendants' documents produced and to move on to other issues in this case.

1.  <u>Origins of the Search Term Dispute</u>

Plaintiffs have dragged out the search term saga for over a year.  In October 2020, Plaintiffs proposed search terms for the Defendants to use.  (S*ee, e.g.*, ECF Nos. 471 at 2 & 472 ¶¶ 4-7).  Those proposed terms were eye-popping—among other problems, they included approximately 150 search strings that were so long that Defendants' e-discovery vendors could not process them with their state-of-the art computer systems. When Plaintiffs fixed those flaws, there were approximately 700 search strings, most of which contained numerous individual search terms.[3]  Altogether, there were tens of thousands of individual search terms.  (*See* ECF No. 471-2 ¶¶ 84-85).  Even after the Court excluded polyols and systems from the case (ECF No. 430), approximately 420 search strings remained, and they hit on nearly every one of Defendants' documents.  The hit rates ranged from 74% to 88%, showing that the proposed search terms would do virtually nothing to narrow and focus discovery on

---

[3] Search strings include multiple individual searches based on permutations of search terms that are complex (e.g., "polyurethane w/4 (spray AND foam)"), compound (e.g., "crime* OR criminal* OR illegal* OR illicit* OR jail"), and group (e.g., "[MDI or TDI 1] means: (diisocyanate* OR isocyanate* OR MDI OR PMDI OR CDMDI OR MMDI OR TDI OR Mondur OR Desmodur OR Papi OR OP50 OR isonate OR Isobind OR Voracor OR 'Delta-Therm' OR 'Delta Therm' OR Durelast OR hyperlast)"). (ECF No. 471-2 ¶ 84).  A "wildcard" is a term that retrieves every word that hits on the defined root of a search term—for instance, "avail*" captures 14 words in the English language—available, availability, etc.—thus multiplying every search string to accommodate each wildcard increases the breadth of the search exponentially.  (*See id.* ¶¶ 85-86, 88).

an appropriate universe of relevant documents. By comparison, when reviewing their own documents, Plaintiffs used search terms that hit on only 10% to 20% of their documents.

Testing performed by Defendants illustrated the irrelevance and overbreadth of many of Plaintiffs' overbroad terms. (*See, e.g.*, ECF Nos. 497 ¶¶ 13-22 & 545 ¶¶ 6-10). Defendants attempted to negotiate with Plaintiffs in the ensuing months, but Plaintiffs resisted making any meaningful concessions. The crux of Plaintiffs' position was that narrowing search terms was "unnecessary," "prejudicial," and "improper" (ECF No. 472-9 at 2-3), because Defendants intended to use TAR in connection with the review of documents. Though Plaintiffs nominally concede that they have "agreed to reduce the document collection to be reviewed by Defendants using appropriate search terms" (ECF No. 460 at 2 (footnote omitted)), insisting on terms that bring in nearly the entirety of Defendants' document collections defies that agreement, and is inefficient and burdensome. Atkins Decl. ¶¶ 25-26. *See In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, No. 12-MD-2391, 2013 WL 1729682, at *2-3 (N.D. Ind. Apr. 18, 2013) (approving search terms to reduce the TAR set from 19.5 million to 3.9 million documents, emphasizing the proportionality standard under Rule 26(b)).

2.  Consideration of Search Terms by the Special Master

In March 2021, Plaintiffs moved to compel Defendants "to use certain search terms and computer/technology-assisted review ('TAR') methodologies requested by Plaintiffs." (ECF No. 455). The Court referred the dispute to Judge Francis as Special Master, (ECF No. 504), who, after reviewing hundreds of pages of briefs, expert reports, e-discovery articles, declarations of e-discovery vendors, and declarations of counsel, holding a lengthy hearing with the parties' discovery experts, and hearing five additional hours of legal argument, issued his R&R on August 23, 2021, stated that "***insofar as it relates to search terms, the plaintiffs' motion to compel should be denied***." (R&R at 26 (emphasis added)).

7

Though Judge Francis rejected Plaintiffs' demands to impose their search terms on Defendants, he recommended that Defendants' search term procedure account for responsive documents that may have been removed by search terms. During the proceedings, Judge Francis tried to mediate a resolution, and—foreshadowing his concern—he proposed a compromise to resolve it. Defendants revised their validation testing procedures to match his proposal, which was, in relevant part:

> 1. If the parties agree on search terms, the defendants need calculate the recall rate only for the segment of the search conducted through TAR.
>
> 2. If, on the other hand, the parties fail to agree on search terms, the defendants shall calculate the recall rate that incorporates both the search term and TAR segments.

(ECF No. 532-1, Ex. D at 2). His proposal was an elegant resolution of the search term dispute. If the parties were unable to agree on search terms, Defendants could select their search terms but their validation tests at the end of the TAR review must include the "null set" (the documents removed by search terms). Thus, Defendants' search terms would be tested as part of the TAR validation procedures. This put the risk of search terms missing too many responsive documents squarely on Defendants, and gave them a strong incentive to use well-crafted search terms that captured as many responsive documents as reasonably possible. If Defendants' search terms were not well-crafted, the validation test would show too many responsive documents remain, and Defendants would have to resume their TAR review until a sufficient number of additional responsive documents were identified. This solution also avoided protracted consideration by Judge Francis and the Court of the thousands of search terms Plaintiffs demanded, and the delays that would have ensued. Defendants advised Plaintiffs that they were modifying their TAR procedures to incorporate Judge Francis's proposal, and did so promptly. Atkins Decl. ¶ 12.

3.  Plaintiffs' Objections to the R&R Were Overruled by this Court

Unsatisfied, Plaintiffs objected to the R&R and Defendants' adoption of Judge Francis's proposal.  They squarely presented to the Court this search terms dispute and proposed three so-called "options."  They asked the Court to  (1) "order Defendants to run Plaintiffs' proposed search terms (or none at all, a standard TAR process)"; or (2) "adjudicate each of the 245 search terms currently in dispute and send the parties back to Judge Francis to fashion a TAR methodology"; or (3) "simply order Defendants to produce all non-privileged documents in their collections that hit on Plaintiffs' terms."  (ECF No. 535 at 2-3).  Defendants opposed all of these options and asked to be permitted to implement Judge Francis's proposal for resolving the search term dispute.  (ECF No. 544).  The Court agreed with Defendants, stating in its September 21, 2021 Order:

> After careful consideration and for the reasons set forth in the R&R, I am persuaded by the Special Master's R&R. It is well-reasoned and provides Defendants with a roadmap highlighting the potholes in Defendants' prior positions and how to proceed to achieve reasonable and proportionate search terms and TAR methodologies. Defendants are not compelled to adopt the Plaintiffs' search terms or TAR methodologies and Plaintiffs' objections are overruled.

(ECF No. 549 at 2).  In short, after full consideration of the extensive record on search terms, the Court rejected Plaintiffs' alternative options to impose their search terms and instead resolved the issue by ordering Defendants to proceed with Judge Francis's proposal—to resolve the dispute through broader validation testing upon completion of the TAR review.

Relying on this Order, the Defendants disclosed their search terms to Plaintiffs and have proceeded with their TAR review.  Indeed, Defendants had all disclosed their search terms by the final week of October.  Atkins Decl. ¶ 16.  Three weeks later, with Defendants' TAR reviews already well underway, Defendants first learned of Plaintiffs' intention to relitigate these search terms during the November 15, 2021 status conference with the Court.  *Id.* ¶ 18.  Plaintiffs did not inform Defendants in advance of the conference, nor did they attempt to meet and confer with

Defendants prior to escalating this dispute.  After the Court advised the parties to discuss the matter before taking next steps with the Special Master, Plaintiffs ignored that instruction and contacted Judge Francis directly.  *See id.* ¶¶ 19-20.  Furthermore, Plaintiffs indicated to Judge Francis that there was "a relatively small number" of search terms that they would demand that Defendants use.  *Id.* ¶ 20.  When Plaintiffs finally disclosed the search terms they were demanding more than a week later (on the eve of the Thanksgiving holiday), in reality there were dozens of search strings with hundreds of individual search terms, contrary to Plaintiffs' representation to this Court that it "it's going to be, you know, under 50, probably less than 20 terms that we're fighting over."  *Id.* ¶¶ 20-21.  Plaintiffs acknowledge that these search strings were the subject of the prior motion to compel, with some minor modifications.  In some cases, they have reverted to *broader* versions of those strings than those that were negotiated and litigated before.  *See id.* ¶ 23.

**C.      This Contrived Search Term Dispute Is Nothing More than a Procedurally Flawed Attempt to Reconsider the Court's Order**

A protective order is necessary because of Plaintiffs' refusal to accept the Court's Order. The Defendants have spent considerable time and resources relying on that Order, and should not be compelled to relitigate issues thoroughly considered by the Special Master and this Court.

1.   <u>There Is No Basis for the Court to Reconsider its Well-Reasoned Order or the R&R of Judge Francis</u>

Although they studiously avoid saying so, Plaintiffs are unsatisfied by the prior rulings on their search term motion and want reconsideration to obtain a more favorable decision. "Reconsideration of a previous order is an extraordinary remedy," *Joos v. Astrue*, No. 09-1693, 2010 WL 4625577, at *1 (W.D. Pa. Nov. 4, 2010) (Ambrose, J.) (citation omitted), and it should only be granted in limited circumstances, such as where there is an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error of law or fact to prevent manifest injustice, *United States v. Grasha*, No. 18-cr-325, 2020 WL 5424002, at *1

(W.D. Pa. Sept. 10, 2020) (citing *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  There has been no change in the law, no new evidence, and no error in the Court's decision.  Plaintiffs' ongoing dissatisfaction with the findings of the Special Master and the Court simply does not warrant reconsideration.

By continuing to push their search terms on Defendants to manufacture another bite at the apple, the Plaintiffs are abusing the judicial process.  As the court in *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) noted, consistent with Rule 1, the Court has "inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process." (quoting *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 263-64 (2007)).[4]  Again, Plaintiffs would waste the Court's time, as well as that of Judge Francis and the parties, frustrating the very purpose of negotiating and appointing an e-Discovery Special Master.  Plaintiffs have not met the demanding standard for reconsidering a prior order of the Court.

2. <u>Plaintiffs' Reliance on the ESI Protocol Is Wrong</u>

Plaintiffs apparently justify their request to relitigate their search terms based on a strained interpretation of the ESI Protocol.  Specifically, on November 16, 2021, Plaintiffs suggested in correspondence among the parties and Judge Francis that "once the disputed terms are identified, we suggest parties raise any search term issue in simultaneous briefs to you not exceeding 5 pages, in accordance with the process outlined in the parties' Stipulated Order regarding Electronic

---

[4] *See also In re Wilson*, No. 12-cv-02078, 2017 WL 2536913, at *3 (D.S.C. June 12, 2017) (citing *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 11-cv-38, 2014 WL 66714, at *4 (E.D. Va. Jan. 6, 2014); *Cabotage v. Ohio Hosp. for Psychiatry, LLC*, No. 11-cv-50, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108-09 (E.D. La. 1992); *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 953 F. Supp. 400, 404 (D.D.C. 1996)).

Discovery. "  Atkins. Decl. ¶ 20, Ex. G.  Paragraph 5(a)(ii) of the ESI Protocol provides for a process of meeting and conferring regarding disputed search terms, after which, "[i]f the parties are unable to resolve disputes over search terms through the meet and confer process, the parties shall submit the dispute to the Court in the form of concurrent submissions of no more than five (5) double-spaced pages."  (ECF No. 313 ¶ 5(a)(ii)).  The parties previously followed that procedure, leading to Plaintiffs' motion to compel accompanied by 5-page briefs on search terms and TAR.  (ECF Nos. 454 & 455).  Plaintiffs apparently construe this provision to mean that they can invoke this procedure over and over again, even if they have already litigated and lost a motion to compel Defendants to use their search terms.

There are two flaws with Plaintiffs' contention.  First, the ESI Protocol cannot reasonably be interpreted to allow seriatim relitigation of the same search terms.  The ESI Protocol establishes a procedure to resolve disputes about search terms once and for all.  Once resolved, discovery should move forward.  That provision cannot mean that a disappointed party can tweak the same search terms, claim there is a new dispute, and invoke the ESI Protocol in the hope of obtaining a result it likes better the second time.  Plaintiffs' interpretation would mean there is no finality to any discovery dispute. Rather than moving discovery forward, the parties would be mired in endless litigation of the same search terms.  This is the epitome of weaponizing discovery.  *See* Weiner & Backhouse, *supra* at 5-6.

Second, Plaintiffs did not follow the ESI Protocol's procedures to raise this dispute.  They did not meet and confer with Defendants before raising this dispute with the Court and Judge Francis.  Indeed, they asked Judge Francis to schedule a conference and briefing before they even shared their latest search terms with Defendants.  And, unlike the first time they litigated their search terms, they have yet to file a motion to compel.  Plainly they want to avoid the obvious

12

threshold problem raised by this motion – that they are asking Judge Francis and the Court to reach a different resolution of a motion they litigated and lost, and put Defendants to the burden of litigating these search terms again.

**D.      Plaintiffs' Demand Would Disrupt the TAR Procedure that the Court Instructed Defendants to Follow**

Plaintiffs' demands would not just add the burden of additional search terms but would also upend the TAR reviews that are well under way.  As the Court is well aware, Plaintiffs also tried to impose their TAR procedures on Defendants.  As with the search terms, the Court denied their motion and instructed Defendants to "proceed as they have outlined in their submissions forthwith."  (ECF No. 549 at 2).  Although they do not say so out loud, Plaintiffs' latest demand necessarily seeks to alter the TAR procedures as well.

Proposing additional search terms is far from a zero-cost exercise.  As evidenced by the prior round of motions on these same issues, which cost the Defendants hundreds of thousands of dollars, the continued evaluation, sampling, and litigation of search terms would consume substantial time, effort, and resources.  And, if hundreds of thousands of documents are added to the TAR review, it would significantly increase the number of documents that must be reviewed, thus jeopardizing Defendants' ability to substantially complete their productions by March 2022.

In addition, as discussed, Defendants' teams have been reviewing documents for weeks. At the beginning of each Defendant's review, and per Defendants' amended and disclosed TAR procedures (*see* ECF No. 532 at 7), Defendants conducted a "richness sample" by reviewing a large random sample of documents to estimate the expected number of responsive documents in the TAR review set ("estimated prevalence") with a high degree of statistical confidence.  Defendants will use this estimate, together with other information from their review, to guide them when to pause their review to conduct validation testing.  If Defendants are now forced to add new documents based on

additional search terms, that testing cannot be used without undertaking additional efforts, as the sample would no longer be representative of the modified population. Plaintiffs said before that they "do not believe a richness or estimation sample is necessary, but instead request that Defendants adopt Plaintiffs' proposed validation proposal" (ECF No. 458-10, at 1), and adding more search terms appears designed to silently achieve that goal as well. This request is simply a collateral attack on the so-called "stopping criteria" in Defendants' TAR procedures, which have also been litigated and decided.

Further, Defendants' amended TAR procedures contemplate including the null set in their validation testing precisely because the parties could not agree on search terms. Now, Plaintiffs seem to want the best of both worlds—they want Defendants to add their search terms *and* to do validation tests on the null set. This was part of Plaintiffs' proposed TAR procedures, which the R&R concluded, and the Court affirmed, that Defendants should not be compelled to adopt.

**E.      This Motion for a Protective Order Should Be Referred to the Special Master**

Ultimately, this matter is one for review by Judge Francis as e-Discovery Special Master. The Court expressed its preference for Plaintiffs' search term dispute to be referred to Judge Francis, and consistent with that preference Defendants request that this dispute be referred to Judge Francis as well.   Defendants asked Plaintiffs if they will agree that this motion should be referred to the Special Master, and as of the time of this filing Plaintiffs have not responded.

**F.      Defendants Should Be Awarded Their Costs Associated with Plaintiffs' Demands that Defendants Use their Search Terms**

"Shifting the cost burdens of discovery, both for ESI and paper discovery, is no longer rare," *Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 336 (E.D. Pa. 2012), and Defendants are entitled to recover costs associated with this latest search term dispute. Under Rule 26(c)(3), and pursuant to Rule 37(a)(5), parties may recover "reasonable expenses incurred in making the

motion, including attorney's fees."  Rather than having courts intervene in discovery disputes, "the better approach is to emulate the market economy and shift discovery costs to the requesting party in appropriate circumstances. This has both direct and indirect benefits."  Hon. James C. Francis IV, *Judicial Modesty: The Case for Jurist Restraint in the New Electronic Age,* L. TECH. NEWS, Feb. 2013, at 29, *reprinted in Electronic Discovery 2013*, at 123 (PLI Litig. & Admin. Prac., Course Handbook Ser. No. H-924, 2013).  Where cost-shifting might be imposed, "the requesting party is no longer free to promulgate sweeping demands" but rather would consider the actual benefit of some particular discovery.  *Id.*

Defendants promptly took action and have been working diligently to implement the procedures consistent with Judge Francis's R&R and the Court's Order.  The Court denied Plaintiffs' motion to compel, yet now they are putting Defendants to substantial cost as they seek a second bite at the apple.  Even worse, their demands come weeks after Defendants disclosed their search terms and while the TAR reviews are mid-stream.  This is part of a disturbing recent trend where Plaintiffs try to resurrect discovery issues that have been resolved, and it must be brought to a halt.   Defendants should be permitted to continue the orderly process of reviewing and producing documents without the burden, cost and diversion of vexatious litigation of issues that have been resolved.  Defendants should be awarded their costs of responding to Plaintiffs' demand, including the costs of attorneys, vendors and experts.

## <u>Conclusion</u>

For the reasons stated herein, the Court should issue a protective order allowing Defendants to proceed pursuant to the Court's Order (ECF No. 549), and to deny Plaintiffs' efforts to impose—again—the search terms they demand that Defendants use.

Dated:  December 7, 2021

/s/ John F. Terzaken
John F. Terzaken [DC 474015]
Abram J. Ellis [NY 4402962]
Avia Gridi [NY 5689732]
SIMPSON THACHER & BARTLETT
900 G Street, N.W.
Washington, DC 20001
Telephone:  (202) 636-5500
Facsimile:   (202) 636-5502
john.terzaken@stblaw.com
AEllis@stblaw.com
avia.gridi@stblaw.com

Attorneys for Covestro LLC

Respectfully Submitted,

/s/ Alden L. Atkins
Alden L. Atkins [DC 393922]
Craig P. Seebald [DC 438968]
Brian D. Schnapp [DC 1009583]
Charles L. Wesley [DC 252709]
Morgan A. Kelley [DC 1617261]
Molly E. McDonald [VA 94885]
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
Telephone:  (202) 639-6500
Facsimile:   (202) 639-6604
aatkins@velaw.com
cseebald@velaw.com
bschnapp@velaw.com
lwesley@velaw.com
mkelley@velaw.com
mmcdonald@velaw.com

Attorneys for Wanhua Chemical
(America) Co., Ltd.

16

/s/ David M. Bernick
David M. Bernick [NY 4443396]
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-3201
Facsimile: (202) 389-5200
david.bernick@kirkland.com

Daniel E. Laytin, P.C. [IL 6257119]
Christa C. Cottrell, P.C. [IL 6284749]
Vanessa Barsanti [IL 6304193]
Jonathan N. Adair [IL 6320193]
300 North Lasalle
Chicago, IL 60654
Telephone: (312) 862-2400
Facsimilie: (312) 862-2200
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
vanessa.barsanti@kirkland.com
jonathan.adair@kirkland.com

Wendy West Feinstein [PA 86698]
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219-6401
Telephone:  (412) 560-7455
Facsimile:  (412) 560-7001
wendy.feinstein@morganlewis.com

*Attorneys for The Dow Chemical
Company*

/s/ Andrew S. Marovitz
Andrew S. Marovitz [IL 6201574]
Britt M. Miller [IL 6256398]
Richard E. Nowak [IL 6302664]
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 782-0600
amarovitz@mayerbrown.com
bmiller@mayerbrown.com
rnowak@mayerbrown.com

/s/ John E. Schmidtlein
John E. Schmidtlein [DC 441261]
Zachary K. Warren [DC 1015292]
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:   (202) 434-5029
jschmidtlein@wc.com
zwarren@wc.com

Michael J. Sweeney [PA 43683]
DICKIE, MCCAMEY & CHILCOTE
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
Telephone:  (412) 281-7272
msweeney@dmclaw.com

*Attorneys for Huntsman International
LLC*

Thomas L. Allen [PA 33243]
Ginevra F. Ventre [PA 316897]
REED SMITH
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

*Attorneys for BASF Corporation*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rule 26.2(D), I hereby certify that on several occasions, including December 6, 2021, counsel for Defendants met and conferred with Plaintiffs' counsel, and attempted to agree on this matter of ESI discovery in a good faith effort to resolve the issues raised by this motion.  The parties were unable to resolve the substantive issues raised, thus Defendants seek the relief stated herein.


  */s/ Alden L. Atkins*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 7, 2021, I caused a copy of the foregoing to be filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's CM/ECF system.

_/s/ Alden L. Atkins_