Exhibit D

```
 1              IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3   IN RE:

 4   DIISOCYANATES ANTITRUST LITIGATION,
     ------------------------------------
 5   RHINO LININGS CORPORATION, et al.,

 6          Plaintiffs,
                                          Civil Action
 7          vs.
                                          No. 18-1001
 8   BASF SE, et al.,

 9          Defendants.
     -------------------------------
10

11

12        Transcript of STATUS CONFERENCE Proceedings on
     November 15, 2021, United States District Court, Pittsburgh,
13   Pennsylvania, before The Hon. Donetta W. Ambrose, United
     States District Judge.
14

15

16   APPEARANCES:

17   Counsel of record for this hearing can be found as an
     attachment at Docket No. 578
18

19
     Court Reporter:          Amanda M. Williamson, RMR, CRR
20                            6260 Joseph F. Weis Jr. US Courthouse
                              Pittsburgh, PA  15219
21                            (412) 600-6607

22

23   Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription
24

25
```

```
1                    P R O C E E D I N G S
2        (Proceedings held via telephone; November 15, 2021.)
3              THE COURT:  Hello, everyone.  This is Judge
4    Ambrose.  I guess we're ready to begin.  Well, I've looked
5    at all your position letters, and thank you for those.
6    They're always very informative.  And I think there are
7    probably a number of things that several of you want to
8    discuss today, so maybe we'll start with the plaintiffs.
9              Please, just identify yourself, because we have a
10   court reporter; and it will be easier for her if she knows
11   who is speaking.  So I'll start with the plaintiff.
12             MS. JONES:  Your Honor, it's good to talk to you.
13   Megan Jones for Hausfeld.  I'm happy to start this morning
14   with a discovery update.  As you know, the court adopted
15   Judge Francis' report and recommendation.  That has advanced
16   the ball.  It gave valuable guidance about search terms, and
17   that's kind of where we are this morning.
18             Plaintiff has reached out to defendants about what
19   search terms they're going to use in the TAR tool.  And, you
20   know, just to orient the court, the search terms chooses
21   what kind of documents go into the TAR tool.  So it's
22   foundational.  It's a funnel.  It either goes into the TAR
23   tool to be reviewed, or it's left on the side.
24             And so where we are in that process is that
25   defendants have given plaintiffs search terms that started
```

1   around October 27.  We are heartened that defendants added

2   terms in accordance with Judge Francis' guidance.  Dow and

3   Huntsman, for example, added defendants' name.  So now Dow

4   is going to search for BASF in its documents, and we think

5   that's a valuable piece of progress.

6        We are evaluating those terms now, and we're trying

7   to pull out the ones that actually will matter in terms of

8   selecting documents that we think are foundational to the

9   case.

10       What we're looking to do is find out from the court

11  the timing upon which to raise those issues.  We think now

12  is more efficient because, again, it's going to choose what

13  goes in and trains the tool.

14       And so, you know, just as a for instance, some of

15  the search terms that defendants are still declining are,

16  you know, "price within 10 of agreed," "meet within ten of

17  market division," "conspire," "conspiracy."  We're still

18  tussling over those conspiratorial terms.  And we would

19  prefer to resolve those now.  Doing it later is going to be,

20  we think, less efficient.

21       Testing the null set, which is just another fancy

22  word for the documents that don't have any search terms that

23  hit on them, you know, we think that choosing 1,200

24  documents out of those 4 million is not going to be

25  sufficient to address the profound issues that Judge Francis

1  identified in his report.

2        And so we would like to tee those up now.  We do

3  not think it's going to be as many as when we started this

4  summer.  So we think that the process that the court

5  outlined worked.  We think it's going to be, you know, under

6  50, probably less than 20 terms that we're fighting over.

7  We're still evaluating that.

8        But we would like to do it now.  We would like to

9  either -- we think that this court has a sufficient

10 understanding of the substance of this case to have this

11 court decide whether "price within 10 of agreed" should be a

12 search term; or if it's the court's preference, to give it

13 to Judge Francis and have him decide those disputes.  But we

14 would like to do that now versus later, because we think

15 that it will affect the documents that the TAR tool

16 identifies as relevant.

17        And so that's kind of where we are in terms of the

18 TAR process that this court has ordered.  You know, again,

19 we just got the search terms from defendant three weeks ago.

20 We're evaluating them right now, but we can already see some

21 flags that will need to get resolved; and we would like some

22 guidance from this court about who and when, if that makes

23 sense.

24        THE COURT:  Sure.  You know, maybe it might be

25 more efficient if we -- that is a discreet issue from other

1  issues that you wanted to present.  Maybe it might make more

2  sense to have Mr. Marovitz address that at this point.  And

3  you can always talk about other things after he does.

4          I have to say, you know, I think that given

5  Judge Francis' guidance on search terms in his report, it

6  would probably be my preference to have this go back to him

7  at the first instance.  I think that makes more sense.

8          But, you know, I'll listen to whatever you have to

9  say about that or Mr. Marovitz.  But if you're finished on

10  that issue, is it all right to turn to Mr. Marovitz to

11  respond to that now?

12          MS. JONES:  I think that makes sense, Your Honor,

13  and then we can proceed issue by issue, if that makes sense.

14          THE COURT:  Sure.  Mr. Marovitz.

15          MR. MAROVITZ:  Judge, thanks very much,

16  Andy Marovitz.  And thanks, Megan, for that.  I do want to

17  say, I feel a little ambushed by this, and I think probably

18  the other defense counsel do, as well.

19          I sent a note, as I often do before these

20  conferences, to plaintiffs' lawyers, you know, last Thursday

21  saying, "Hey, what are you going to raise during the status

22  conference, so that we can have a decent productive

23  discussion in front of the court?"  And I said, "For the

24  defendants, we just intend to raise issues about the

25  document production efforts following the report and

1  recommendation."  And I didn't receive any response at all.

2  So this is really the first time we're hearing that the

3  plaintiffs are interested in raising any kind of a position

4  like this in front of the court at this time.

5        We would be happy to address it.  I just think

6  that -- I think it's good practice for counsel to actually

7  talk to each other before these calls so that we can each

8  address it, you know, with the items in mind and so we can

9  have a robust discussion about it.

10        I do think that -- and I will turn this over to

11  counsel that handled most of the search term and TAR issues

12  to respond directly to this.  But I do think what the

13  plaintiffs are asking for is not consistent with the special

14  master's report and recommendation, and as well as with this

15  court's order that sets forth the schedule for these things

16  to be decided.

17        And, again, it seems to me it's a request by the

18  plaintiffs seeking to impose the way that they think our

19  process should be run upon the defendants, which was

20  rejected.  But let me ask, I guess, the lawyers that really

21  handled this issue before the special master to address it,

22  if you don't mind, Judge.

23        THE COURT:  Sure.  I mean, I'm not listening to

24  substantive arguments at this point.  I hope you all

25  understand that.  What we're talking about is whether or not

1   the plaintiffs are saying that there is still these -- there

2   are still these unresolved search term issues and that they

3   want to have it resolved immediately and they think I could

4   do it, but they're happy to do it before Judge Francis.  And

5   I just really want to address that rather than the substance

6   of whether or not the plaintiffs' position has merit.

7           MR. ATKINS:  Your Honor, this is Alden Atkins for

8   the Wanhua defendants, and I'm the one who led the work on

9   behalf of defendants about these TAR issues.

10          Your Honor, we're surprised to learn that the

11  plaintiffs think that there are unresolved issues, because

12  we've litigated it.  Judge Francis decided, you decided, and

13  so we've already litigated this.  We spent a year

14  negotiating search terms with plaintiffs.  They wouldn't

15  budge.  They asked Judge Francis and then you to adopt all

16  of their search terms, and you denied their motion.

17          What you said was that we, the defendants, would

18  decide search terms and then we would include some testing

19  at the end of our efforts to our search and our document

20  productions to determine whether there was an unreasonable

21  amount of documents left behind.  So we're quite startled,

22  frankly, to hear them try yet again to impose search terms

23  on us.  It's been decided.

24          THE COURT:  Well, why don't we do this, I mean,

25  because I do think it's a good idea, as Mr. Marovitz

1  suggested, that you talk about this.  Why don't we, like,

2  give it a couple weeks for you to -- for the plaintiffs and

3  the defendants to speak about this.

4        And, I mean, I'm not going to preclude the

5  defendants from filing any motions.  If they want to file

6  them, certainly I think they should be entitled to do that.

7  But, again, my feeling is that this, in the first instance,

8  should go to the special master.  So let me get back to

9  Ms. Jones and see how she responds to that.

10        MS. JONES:  Sure.  Thank you, Your Honor.  And

11 Mr. Marovitz is absolutely correct, and he sent an e-mail

12 saying that we were going to discuss document production

13 efforts.  We thought this was part and parcel of that.  So

14 no one is trying to hide the ball here.

15        We are happy to keep talking about search terms,

16 and we have done so.  We've reached out.  We had to ask them

17 for native formats.  They sent it to us in PDF, and we

18 couldn't search them.  So it should come as no surprise to

19 all of them, we asked him for a copy of a native production

20 of the search terms, that there's still some issues here.

21        I am happy to keep talking.  I'm happy to do that

22 with the help of Judge Francis.  I think it might help speed

23 up things.  I am worried about the timing, Your Honor.  If

24 you say go back and talk for a couple weeks, I'm afraid that

25 the defendants may start or are starting their TAR process

1  and leaving these terms out.  And so the only thing that I

2  would ask is for guidance on the timing and that we're not

3  waiving our rights to add terms later.

4          THE COURT:  Yeah.  I agree that counsel are

5  starting that search, absolutely.  I think they've

6  probably -- they probably agree that within the next week,

7  they're about to start that.  Is that correct, Mr. Marovitz?

8          MR. MAROVITZ:  Yeah.  I mean, that ship has sailed

9  for us.  We've already started.  I mean, that's -- because

10 we have told the court, I mean, just -- pardon me.  We've

11 told the plaintiffs that we had intended to, for the

12 domestic defendants, try to be substantially complete with

13 our productions by March 21.  And so I know that the

14 domestic defendants have been working hard.  And we do not

15 intend to wait until the last minute to start and to move

16 along.

17          As the court knows, we've been producing a lot of

18 documents.  And I think as of this point, the domestic

19 defendants have produced something on the order of 645,000

20 documents of unstructured data; and the only way we can do

21 that is if we have started.  And at least for BASF

22 corporation and for some of the other domestic defendants,

23 that process has started.

24          THE COURT:  Well, I mean, it started; and

25 production, I guess, will begin in the coming weeks.  I

```
 1   don't know what to say, except that maybe you don't need a
 2   couple weeks to talk about this.  But even if you took a
 3   couple days to talk about it, it still seems as if it's too
 4   late.  But, I mean, I suppose that can always be remedied at
 5   some point.
 6             MS. JONES:  Your Honor, the helpful point of fact
 7   is defendants added search terms six months after they sent
 8   us our initial -- their initial search terms.  And so as
 9   long as the parties agree that search terms may be added
10   at -- upon resolution, I think that there is some precedent
11   in the case for search terms being added after TAR has
12   begun.  We certainly did it when they reached out to us and
13   said, "Please add these terms."  We took 100 percent of
14   their terms.
15             And I am sorry that we have to keep coming back to
16   you to get terms added, but that's where we are, especially
17   when it's, you know, "price within 10 of agreed."  But we
18   will, as plaintiffs, reach out to Judge Francis after this
19   hearing to see how quickly he can become involved, because
20   we think it makes sense, you know, we hope that documents
21   are produced and substantially produced by March; and we
22   don't want to start over then.  So we'll work with
23   defendants on trying to get resolution of these additional
24   terms.
25             THE COURT:  Well, is there any possibility that
```

```
 1   you can do that rather quickly, reach out and talk to the
 2   defendants and see if you can get some resolution?  I mean,
 3   I know you're all very busy people.  But do you think that
 4   can be done?  You know, I know we're getting into holiday
 5   season, and that makes everything difficult, besides all the
 6   other difficulties that exist in this case.
 7          But if you can talk as soon as possible, reach out
 8   to Judge Francis if there's no agreement, and see if he can
 9   react quickly, maybe, you know.  His familiarity with the
10   case is certainly going to help him in terms of timing.  So
11   I don't know.  What do you think about that?
12          MS. JONES:  On behalf of plaintiffs, we will
13   absolutely do that, Your Honor; and we will put personnel on
14   this issue so that we'll get it resolved as quickly as
15   possible.
16          THE COURT:  Okay.  Mr. Marovitz?
17          MR. MAROVITZ:  We're always willing and happy to
18   talk to the plaintiffs about discovery issues, Judge.
19          THE COURT:  Okay.  Do you want to move on then to
20   another issue, plaintiffs?
21          MR. HARTLEY:  Yes, Your Honor.  Thank you.  This
22   is Jason Hartley speaking also for plaintiffs.  There were a
23   couple other discovery issues regarding the production of
24   calendars, go get documents, and custodians.
25          Unlike the search terms, our position is that we
```

1   should wait to raise these issues until after we review the

2   documents that defendants produce when there's a more

3   fully-developed record, and we might be better able to

4   identify for the deficiencies.  We think this is kind of not

5   a threshold issue like search terms going into the TAR tool,

6   but more of a review issue.  Some of the defendants,

7   however, asked us to raise those issues now.  So, again,

8   we're asking the court for some guidance on the timing of

9   that.

10          THE COURT:  Well, look, the defendants may have

11  asked you to raise the issues now, but I don't think they

12  control exactly what's going on here in terms of timing.

13  So, I mean, if you think you need to wait until there's

14  substantial production completion, you may not need to take

15  further steps.

16          And if you do, then you will.  I mean, I don't -- I

17  don't want to do something that might not be necessary.  So

18  I don't have a problem with that.  I mean, I don't know who

19  wants to respond to that.  I'm glad to hear you.

20          MR. ATKINS:  Your Honor, this is Alden Atkins,

21  again, for the Wanhua defendants.  I suspect that

22  Mr. Hartley is referring to me as someone who told them to

23  raise it promptly.

24          There are two issues upon which we've reached

25  agreement during our discovery negotiations.  One of them

relates to calendars.  The other one relates to, without

getting into details, additional search terms applied to a

subset of our custodians.  We reached an agreement with the

plaintiffs.  It's documented.  We have acted in reliance

upon that, and we are moving forward.

    And what we understand now is that they want to

renege on the agreements we've reached.  And, Your Honor,

I'll just say that if we can't rely on the agreements we

reached with the plaintiffs as we go along through the

discovery process, this is going to be a very painful

process that's going to require the court's intervention

quite regularly.  We need to be able to rely upon the

agreements we reach.

    THE COURT:  Mr. Hartley, anything you want to say

in response to that?  I mean, I understand you're saying to

me that you're not sure yet whether you're going to need to

take further steps and that's why you don't want to raise

the issue.

    MR. HARTLEY:  I think that's ultimately, I think,

fair representation.  What's not fair is Mr. Alden's --

Mr. Atkins' representation that we don't honor agreements.

When we made the agreements, it was before defendants,

including Wanhua, advised they would be using TAR or a

severely narrow set of search terms; and we specifically

reserved our rights.

1          Since then, we've found and identified other

2    communications between some of these folks that show they

3    had specific responsibilities for MDI pricing and supply.

4    So I just don't think that's a fair characterization about

5    plaintiffs' position honoring agreements.

6          But the point ultimately is, Your Honor, it's

7    correct we hope maybe we don't need to raise these issues

8    later, but we will know better after we review the

9    production; and that's what we'll do.

10         THE COURT:  And I think that's what you should do.

11   So I'm fine with that.  I'm going to continue with the

12   plaintiffs.

13         MR. HARTLEY:  Your Honor, we don't have anything

14   else to raise for the court now.  If you wanted an update on

15   anything else beyond what was in our letter, we're happy to

16   address that or address any other questions the court has.

17         THE COURT:  Okay.  Let's move to Mr. Marovitz now.

18   There might be some things that you wanted to raise.

19         MR. MAROVITZ:  Thank you, Your Honor.  Again,

20   Andy Marovitz.  And I mentioned a few of them.  But a few, I

21   didn't quite get to.  So I did mention that as of I think

22   November 10, the defendants in the case had already produced

23   something around 645,000 unstructured data documents.  And

24   last week, domestic defendants, MCNS and BASF Corporation

25   produced another 3,000 and 16,000 documents respectively.

1  So what I want to -- and in addition to that, I should say,

2  the other domestic defendants intend to make rolling

3  productions in early December.

4      I guess the point that I wanted to really reinforce

5  with the court is that we've been pretty clear that we see

6  the substantial completion date as just that, but that we

7  intend to roll productions between, you know, earlier than

8  last week, and then including last week, and then in

9  December, throughout that time, up through March, so we're

10 not hanging onto everything until the end.  We're trying to

11 really move this case forward.  And I think the production

12 of documents that I just mentioned is really pretty good

13 evidence of that.

14     The other thing that I'll say is that -- and it's

15 just -- I know the court knows this, and I know the

16 plaintiffs know it, and we know it, too.  The TAR debates

17 that we had and the document production debates that we had

18 in front of the special master and then Your Honor, you

19 know, were in many respects painful for the lawyers

20 involved, certainly were costly for the clients; and they

21 consumed a lot of time.

22     And our hope is that those are largely behind us

23 now and that we don't have to continue to relitigate those

24 issues over and over and over again.  And I am concerned

25 that, you know, the substantial completion date may be

 1   effected if we keep moving back to Square 1 on some of these

 2   issues.

 3            Again, I'm not trying to argue specifics.  I'm just

 4   being -- trying to be straightforward about, you know, our

 5   anticipated date.  It sort of assumes that we can continue

 6   to work forward productively on actually producing documents

 7   and not relitigating what we think has already been decided.

 8            So those are the only points that I would raise on

 9   behalf of the domestic defendants at this time, Judge.  But

10   some of the lawyers for other domestics may have thoughts,

11   as well.

12            THE COURT:  Sure.  And I would be glad to listen

13   to those.  Anyone want to join in?

14        (No response.)

15            THE COURT:  Appears not.  So I don't know if you

16   want to say anything in response to that, Mr. Hartley or

17   Ms. Jones.  I'm not sure.  If you do, fine; if you don't,

18   fine, as well.

19            MS. JONES:  This is Ms. Jones.  Briefly, we

20   appreciate Mr. Marovitz having a substantial completion

21   deadline in mind.  That is something the plaintiffs are

22   rolling towards, as well.  This case has been going on, as

23   the court knows, for several years; and we have been

24   productive.

25            You know, of that 645,000 documents, a large

1  percentage of them are the DOJ documents, which were ordered

2  years ago.  And believe me, we have been through those.  And

3  we're happy we got Dow's calendars, you know, 150,000 pages

4  of those last week; and we're already pouncing on these.  So

5  we are just assuring the court that the minute that the

6  defendants produce documents, we are putting our teams to

7  work so that we can put this case to bed on the facts.

8           THE COURT:  Okay.  Mr. Terzaken, are you on?  Is

9  there anything that you wanted to add to any of this?

10          MR. ELLIS:  Your Honor, this is Abram Ellis from

11  Simpson Thacher, Mr. Terzaken's partner.  Mr. Terzaken is

12  not able to join.  But we don't have anything to update you

13  on from Covestro AG's perspective.  We defer to Mr. Atkins

14  if there's anything for Wanhua.

15          MR. ATKINS:  Your Honor, this is Mr. Atkins,

16  again, for Wanhua.  We've got some -- a couple of issues

17  remaining on the translations that the plaintiffs provided

18  us, translations of search terms into Chinese.

19          We have, I think, one open item on the

20  meet-and-confer you instructed the parties to do regarding

21  the two nondefendant U.S. entities of the Wanhua

22  organization.  Beyond that, we are in the process of

23  collecting data and organizing our search and production

24  from China.

25          THE COURT:  Do the plaintiffs want to say

1  something with respect to Wanhua?

2  　　　　MR. LINDNER:  This is Jason Lindner, Your Honor,

3  on behalf of plaintiffs.  I believe Mr. Atkins'

4  characterization is generally correct.  The parties took

5  this court's order regarding the holding and operations to

6  heart and have had a good meet-and-confer about it and have

7  come to some compromises.

8  　　　　There were a few translation issues that we've

9  received recently, and our translators are looking at them;

10  but it doesn't appear to be anything major to us and nothing

11  for this court to resolve at this time.

12  　　　　THE COURT:  Okay.  Thank you.  Well, I mean, I

13  understand there are a number of issues that have to be

14  resolved here.  And certainly, I think, as I said, with

15  respect to search terms, I think that Judge Francis in the

16  first instance is the right course to take.  And hopefully,

17  you will talk over the next few days and make those

18  decisions.

19  　　　　But whatever each party has to do, well then you

20  do; and they'll either come before me or Judge Francis, and

21  I'll, of course, review everything Judge Francis does and

22  hopefully get things moving.  I'm also encouraged by

23  domestic defendants' timeline in terms of completion of

24  production before the end of March.  So I feel hopeful about

25  that.

1          Is there anything else you want to talk about

2    today?  I am thinking that our next conference will be

3    Tuesday, January 18.  I hope -- I'm going to say 1:15,

4    because I have a long conference at 12:00 that day; but I

5    don't think it will take more than an hour.

6          So if that's all right with everybody, unless --

7    and, of course, you know how to get to me if you need me

8    before then.  All you have to do is present something, make

9    a call, we can set something up at any time.  It's not that

10   difficult.  So is there anything else that anybody wants to

11   bring up today from any party?

12          MS. JONES:  Not from the plaintiffs, Your Honor.

13   Thank you.

14          MR. MAROVITZ:  And not for the defendants either,

15   Your Honor.  We appreciate it.

16          THE COURT:  Okay then.  Well, as I said, I'll

17   certainly wait to hear from you.  And if I don't, then we'll

18   be talking on January 18 at 1:15.

19          MR. MAROVITZ:  Thank you, Your Honor.

20          MR. HARTLEY:  Thank you, Your Honor.

21          MS. JONES:  Thank you.

22          THE COURT:  That's eastern daylight savings, so

23   you all know.

24          MR. MAROVITZ:  Right.  Thanks so much.

25       (Court was adjourned.)

1            C E R T I F I C A T E

2         I, Amanda M. Williamson, certify that the foregoing

3    is a correct transcript from the record of proceedings in

4    the above-titled matter.

5    S/Amanda M. Williamson   _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25