# Exhibit E

# Vinson&Elkins

Lincoln Wesley  lwesley@velaw.com
**Tel +**1.202.639.6505  **Fax +**1.202.879.8804

November 10, 2021

**Via Email**

David A. Langer
Berger Montague
1818 Market St., Suite 3600
Philadelphia, PA 19103
dlanger@bm.net

Re:   **Wanhua Chemical (America) Co., Ltd.'s Responses to Plaintiffs' Interrogatories;** *In Re Diisocyanates Antitrust Litig.*, **MDL No. 2862**

Dear Counsel:

We write in response to Plaintiffs' October 21, 2021 letter regarding Wanhua Chemical (America) Co., Ltd.'s ("WCA's") Responses and Objections to Plaintiffs' First Set of Interrogatories. In our letter dated October 27, 2021, we addressed Plaintiffs' statements that they would not abide by two discovery agreements that we reached with Plaintiffs after extensive negotiation. In this letter, we address the remaining issues.

**Plaintiffs' Requests for the Identification of Documents Related to Their Interrogatory Requests**

As WCA has repeatedly explained in our correspondence and during meet and confers, Plaintiffs' interrogatories, as written, are overbroad and unduly burdensome to the extent that they ask WCA to identify and describe all instances of certain events, or ask WCA to identify all documents on a particular topic by Bates number. For example, they would require WCA to identify every communication between defendants, every swap transaction that took place, and every trade association meeting that a WCA employee attended. WCA does not track or compile this kind of information in the regular course of its business, and we have previously explained why identifying all such information would be extraordinarily burdensome. As an example, MCNS is a customer of WCA's, not a competitor, and it is routine and entirely appropriate for WCA to have numerous contacts with a customer. As another example, WCA purchases and sells products to other Defendants in swap transactions, and there are routine and appropriate communications to arrange logistics, billing and payment. Determining the answer to these types of interrogatories, as written, would require an in depth analysis of all of WCA's emails, correspondence, telephone records, expense reports, participation in industry events, and other voluminous records, as well as interviewing employees about uneventful communications made years ago in the course of ordinary transactions. WCA is currently in the process of reviewing and producing documents pursuant to Plaintiffs' requests for the production of documents, which will contain the

**Vinson & Elkins LLP  Attorneys at Law**
Austin  Dallas  Dubai  Houston  London  Los Angeles  New York
Richmond  Riyadh  San Francisco  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
**Tel** +1.202.639.6500  **Fax** +1.202.639.6604  velaw.com

**V&E**

information that Plaintiffs' seek in their interrogatories. If Plaintiffs claim they cannot locate documents reflecting those communications in WCA's document production, that is due to overbreadth of Plaintiffs' document requests. Plaintiffs must live with the breadth of their document requests, and we will not do your work to try to locate the most relevant documents. Further, Rule 34(b)(2)(E) permits a producing party to produce electronic information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," and does not require the producing party to "organize and label [the documents] to correspond to the categories in the request." Through these interrogatories, Plaintiffs are trying to impose a burden that Rule 34 expressly does not require.

As explained in our October 4 letter, as a compromise, WCA is willing to provide Bates numbers of exemplar documents, or documents that WCA relied on for its interrogatory responses. In addition, to the extent that a custodian can reasonably recall communications not reflected in the documents WCA produced, WCA will identify that information in response to the relevant interrogatory. Thus, WCA will provide Plaintiffs with (1) narrative responses to Plaintiffs' interrogatories, (2) exemplar documents and documents relied on for its interrogatory responses to assist Plaintiffs find other communications with co-Defendants (which should not be difficult even without exemplars), (3) all other documents responsive to Plaintiffs' document requests found in agreed custodians' files (which are duplicative of the documents Plaintiffs seek in their interrogatories), and (4) additional responsive information recalled by WCA custodians not reflected in documents. WCA expects that Plaintiffs will similarly commit to identifying documents and information in their interrogatory responses. If Plaintiffs insist that WCA's efforts to reasonably respond to Plaintiffs interrogatories, as described above, are insufficient, then we are at impasse.

**Timing for Supplemental Responses**

Plaintiffs suggest that WCA must supplement its interrogatory responses continuously as it "searches for, identifies, and produces documents." To the contrary, WCA has no obligation to bear the burden of constantly and repeatedly supplementing its interrogatory responses as discovery continues. Rather, Rule 26(e) requires supplementation "in a timely manner," or "as ordered by the court." In its September 4, 2020 Order (ECF No. 371), granting and denying in part Defendants' Motion to Compel Plaintiffs to Answer Defendants' First Set of Interrogatories, the Court stated that it "question[ed] the value/usefulness of the responses to questions that require disclosure of a narrative of 'all facts' at this stage of the litigation when significant and continued supplementation would be required rendering them materially incomplete." It then ordered that Plaintiffs answer certain of Defendants' interrogatories, and to "supplement these responses 90 days after the foreign Defendants substantially complete their document productions and, then again, 90 days before the close of fact discovery." WCA is willing to discuss supplementing its interrogatory responses under a comparable schedule.

**V&E**

**Interrogatory Nos. 1 & 2**

As stated in WCA's response to Interrogatory No. 1, Jacob Sturgeon was the only WCA employee who had managerial responsibility for MDI and TDI pricing. Your letter asks WCA to confirm that WCA understands the phrase "managerial responsibility" to refer to persons with decision-making authority. We are using a common-sense definition of that phrase. In his position as General Manager, Jacob Sturgeon was the senior most employee of WCA during the relevant period. In that role, he was ultimately responsible for reviewing, setting, approving, and deciding prices for MDI and TDI at WCA. Other WCA employees negotiated MDI/TDI prices with customers, but those negotiations, and the final price, were subject to Mr. Sturgeon's approval. No other WCA employee had such decision-making authority.

Interrogatory No. 2 requests the identification of WCA employees who had "any authority" to make decisions relating to production, capacity, or inventory levels related to MDI/TDI. WCA identified the employees, specifically members of its Sales & Operations team, who had authority to manage WCA's MDI and TDI inventory in the U.S., subject to Mr. Sturgeon's supervision. As we have told you repeatedly, WCA did not produce MDI or TDI and thus did not have production capacity.

**Interrogatory No. 4**

Plaintiffs suggest that WCA must supplement its response to Interrogatory No. 4 as it "searches for, identifies, and produces documents reflecting price increase communications." As discussed above, WCA is under no obligation to supplement its interrogatory responses continuously, but is willing to discuss supplementing its interrogatory responses under a similar reasonable schedule as Plaintiffs.

**Interrogatory No. 5**

We have repeatedly explained why it is unreasonable to respond to this interrogatory as written. WCA has already described the types of communications and meetings it has with Defendants and other competitors. In addition, WCA has committed to producing responsive documents reflecting meetings or communications with other named Defendants, as well as responsive documents discussing MDI or TDI related trade association meetings attended by WCA employees. As stated in our previous correspondence, WCA is willing to also identify the Bates numbers of documents relied upon in its response to this interrogatory, as well as examples of documents regarding such meetings and communications. WCA is also willing to identify meetings or communications that are not identified in documents that WCA custodians can reasonably recall. WCA expects that Plaintiffs will similarly commit to identifying documents that they relied on for their interrogatory responses. If Plaintiffs believe that the information WCA is offering to provide in response to this interrogatory is insufficient, and instead insist



that WCA must identify and describe every single meeting and communication that WCA employees had with other Defendants or competitors regarding MDI and/or TDI, then we are at impasse.

**Interrogatory Nos. 8 & 12**

WCA has responded to these interrogatories by identifying and describing the business relationships that it had with other Defendants or competitors, as well as identifying the swap agreements that it was a party to and the individuals knowledgeable of them. In addition, as stated in in our October 4, 2021 letter, WCA is willing to identify the Bates numbers of exemplar documents regarding the relationships described in its interrogatory responses. If Plaintiffs insist that WCA must identify, by Bates number, all documents containing information responsive to these two interrogatories, then we are at impasse.

**Interrogatory No. 13**

WCA provided general information to entities as described in its response to Interrogatory No. 13. In addition, WCA provided the Polyisocyanurate Insulation Manufacturers Association ("PIMA") with information about sales volume to certain customers relevant to the PIMA industry on a quarterly basis during the relevant period. WCA did not disclose customer names or pricing information to PIMA. WCA understands that PIMA uses a third party firm to collect and aggregate that type of data to generate a report. WCA also submits sales data to Vault Consulting, which is an independent third party engaged by the American Chemistry Council ("ACC") to confidentially collect, aggregate, and report the production and sales data for MDI in the U.S. WCA also submits, on a confidential basis, its prior year's sales data to the ACC, and its subgroup, the Center for the Polyurethanes Industry ("CPI"), in order to calculate member dues which are based on the sales value of relevant chemicals in the U.S. WCA understands that the ACC and CPI keep each member's sales data highly confidential, and members have no way of knowing what other members submitted. To the extent that our investigation reveals that WCA provided data or statistical information to other MDI/TDI industry organizations, WCA will supplement its interrogatory responses with that information at the appropriate time.

**Interrogatory No. 14**

As we have repeatedly explained, WCA met all of its contractual obligations to supply MDI/TDI during the relevant period, aside from occasional logistics delays. WCA does not currently possess information indicating that it ever was unable to meet its contractual obligations to supply MDI/TDI during the relevant period. If, in the course of its investigation, WCA becomes aware of instances where it was unable to meet its contractual obligations to supply MDI/TDI to its customers during the relevant



period, WCA is willing to provide Bates numbers for documents exemplifying such instances. Thus, we do not believe we are at impasse on this issue.

**Interrogatory No. 15**

In response to this interrogatory, WCA has identified the MDI and/or TDI related trade associations for which WCA employees attended meetings and events during the relevant period, as well as the WCA employees who held offices, chairs, or committee positions in MDI and/or TDI related trade associations. As stated in our October 4, 2021 letter, WCA is willing to identify employees, including non-custodian employees, who attended MDI/TDI related trade association meetings. However, the parties negotiated extensively over the list of WCA custodians, and WCA will not agree to search for and review expense reports beyond those custodians.

**Interrogatory No. 16**

Interrogatory No. 16 seeks certain contact information for WCA employees identified in response to Interrogatory Nos. 1, 2, 5, 8, 10, 11, 12, and 15. With the additional information provided in our October 4, 2021 letter, WCA's response includes all of the listed individuals' means of communications that we are aware of that were used to conduct MDI/TDI related business. As we have previously stated, we have made appropriate inquiries regarding the sources of potentially responsive materials, including by inquiring what devices and email accounts custodians used for business. We are aware that certain WCA employees occasionally used personal email addresses to conduct MDI/TDI related business. We confirm that WCA has collected and is searching those email accounts for responsive documents. However, none of those custodians were identified in response to Interrogatory Nos. 1, 2, 5, 8, 10, 11, 12, and 15, and therefore are not responsive to Interrogatory No. 16.

        Sincerely,

        */s/ C. Lincoln Wesley*
        C. Lincoln Wesley

Cc:    Jason Hartley (via email)
        Megan E. Jones (via email)
        Jason Lindner (via email)
        Sarah LaFreniere (via email)