IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE DIISOCYANATES ANTITRUST LITIGATION**<br><br>*This document relates to: All Actions* | Master Docket<br>Misc. No. 18-1001<br><br>MDL No. 2862 |

Hon. James C. Francis IV (Ret.)
E-Discovery Special Master

## Report and Recommendation

As discussed in my previous Report and Recommendation dated August 23, 2021 (the "8/23/21 R&R") (ECF 529), this multidistrict litigation involves allegations that the defendants conspired to reduce supply and increase prices for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), chemicals used in the manufacture of polyurethane foam and thermoplastic polyurethanes. Defendants BASF Corporation, Covestro LLC, the Dow Chemical Company, Huntsman Corporation, and Wanhua Chemical (America) Co., Ltd. (collectively, the "defendants") now move pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order permitting them to proceed with production using search terms that they have disclosed to the plaintiffs. (ECF 582). As part of their motion, the defendants also seek an award of attorneys' fees and costs in connection with tasks undertaken in response to the plaintiffs' demands regarding search terms, including the costs of the current motion practice.

The plaintiffs oppose the defendants' motion and have cross-moved under Rules 26 and 37 to compel the defendants to include additional search terms in their keyword search prior to subjecting the resulting review set to TAR. (ECF 592); *see* Declaration of Sarah R. LaFreniere dated December 15, 2021 (ECF 591) at Exh. A (ECF 591-1) (list of proposed additional search

1

terms); Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendants Pre-TAR Application of Disputed Search Terms ("Pl. Motion Memo.") (ECF 593). In the alternative, the plaintiffs seek an order (1) directing the defendants to meet and confer in an effort to reach agreement on search terms, (2) granting me, as E-Discovery Special Master, the authority to adjudicate any search term disputes that are not resolved by the parties, and (3) requiring the defendants to provide me with any metrics necessary to resolve such disputes. (Pl. Motion Memo. at 3-4). For the reasons that follow, I recommend that the plaintiffs' motion be denied, the defendants' motion be denied as moot, and the defendants' application for an award of expenses be denied.

Background

The parties previously raised issues concerning the technology-assisted review ("TAR") methodologies and search terms utilized by the defendants. At that time, the plaintiffs moved to compel the defendants to (1) use the plaintiffs' proposed search terms in order to identify the universe of electronically stored information ("ESI") to which the defendants would apply TAR, and (2) use the plaintiffs' proposed methodologies for determining when to conclude the TAR process and to validate the search. (ECF 455). The defendants cross-moved for a protective order that would allow them to rely on their own list of search terms and their own TAR methodologies. (ECF 470). I was appointed E-Discovery Special Master with the task of adjudicating the motions. (ECF 504).

While the motions were pending, I attempted to assist the parties in reaching agreement with respect to the outstanding disputes. These efforts were unsuccessful, and in the 8/23/21 R&R, I recommended that both motions be denied. (8/23/21 R&R at 27). Turning first to the defendants' motion, I found that their proposed TAR methodology was unreasonable, first

because the validation procedure tested recall only for the search conducted by TAR, ignoring the documents eliminated by search terms, and, second because it failed to take advantage of the capability of the defendants' continuous active learning ("CAL") tools to analyze the marginal value of conducting additional search iterations beyond a chosen stopping point. (8/23/21 R&R at 15-19). Next, I declined to endorse the defendants' search terms. I concluded that their exclusive focus on hit rates was inappropriate and that they had failed to conduct systematic testing of their proposed terms. (8/23/21 R&R at 19-22). Furthermore, I concluded that the defendants had not sufficiently documented their assertion that use of the plaintiffs' proposed search terms would impose a disproportionate burden. (8/23/21 R&R at 22-23). I therefore recommended that the defendants' motion be denied. (8/23/21 R&R at 23-24).

As to the plaintiffs' motion, I found that their proposed validation criteria exceeded what the law requires by, among other things, incorporating an analysis of human review error. Since other reasonable methodologies remained available to the defendants, I declined to recommend mandating use of the plaintiffs' protocol. (8/23/21 R&R at 24-25). Similarly, I determined that the defendants should be permitted to identify reasonable search terms and not be required to adopt the plaintiffs'. (8/23/21 Order at 26). I noted that the ESI Order agreed to by the parties and entered by the Court provided a mechanism for the parties to seek adjudication of disputed search terms. (8/23/21 Order at 26 n.5). Accordingly, I recommended that the plaintiffs' motion to compel be denied. (8/23/21 R&R at 27).

The Court then gave the parties until September 3, 2021, to object to the Report and Recommendation. The defendants responded first, but they did not object. Instead, they announced their intention to modify their TAR protocols to address the flaws I had identified in the 8/23/21 R&R. Specifically, the defendants used as a template a mediator's recommendation

3

that I had offered to the parties in an effort to achieve a negotiated resolution. (Defendants' Response to the Special Master's Report and Recommendation ("Def. Resp. to R&R") (ECF 532) at 7-11). Accordingly, they represented that in the event the parties did not agree on search terms, the defendants would apply their chosen terms but would perform a validation analysis that incorporated the search term phase as well as the TAR phase of the process. (Def. Resp. to R&R at 9-11). The defendants further committed to a process by which they would share with the plaintiffs the number and content of responsive documents identified in the last two batches of documents processed by TAR at the point where the defendants proposed to conclude their search. At that point, the plaintiffs would be able to seek Court review if they disagreed with the defendants' assessment that the search was reasonably complete. (Def. Resp. to R&R at 11-12).

The plaintiffs objected to the Report and Recommendation. They argued that the Court should adopt its reasoning, but not the final outcome, and instead implement one of three alternative solutions: (1) grant the plaintiffs' motion, requiring the defendants to implement the plaintiffs' TAR procedures and run the plaintiffs' proposed search terms (or forgo search terms altogether and utilize TAR exclusively); (2) adjudicate the search terms then in dispute and remand the parties back to me to fashion a TAR methodology; or (3) simply order the defendants to produce all non-privileged documents in their collections that hit on the plaintiffs' search terms. (Memorandum of Law in Support of Plaintiffs' Objections to the Special Master's Report and Recommendation of August 23, 2021) ("Pl. Obj. to R&R") at 2-3). The plaintiffs argued that "[t]he Court can, and should, overrule the Special Master's choice to defer to Defendants' ability to choose new, reasonable search methodologies, and instead enter an Order prescribing Plaintiffs' search terms and TAR protocols now. It is well within the Court's authority to control discovery and manage this case." (Pl. Obj. to R&R at 6).

4

The Court overruled the plaintiffs' objections, holding that "Defendants are not compelled to adopt the Plaintiffs' search terms or TAR methodologies." (Opinion and Order of Court ("Opinion") (ECF 549) at 2). The Court further ordered:

> Defendants are to proceed, forthwith, as they have outlined in their submissions. Importantly, once Defendants reach a point where they believe their search is complete, they shall provide to Plaintiffs the following: (a) the Bates number of all relevant documents obtained from the last two batches searched, identify which of the batches these documents were found in, and identify the number of relevant but privileged documents withheld with respect to each of the two batches; and (b) the recall rate and all calculations used to derive that rate. If Plaintiffs agree, then Defendants may conclude their search. If Plaintiffs do not agree, the parties shall, after meeting and conferring, present their dispute to the Court for resolution by the Special Master.

(Opinion at 3). Thereafter, the parties filed the instant motions.

Discussion

A. Plaintiffs' Motion to Compel

As noted above, the plaintiffs seek an order requiring the defendants to utilize their proposed search terms or, alternatively, establishing a process by which disputed search terms may be adjudicated. That ship has sailed. To be sure, the 8/23/21 R&R left open the prospect of further litigation of search terms since, on the one hand, it declined to bless the defendants' terms as insufficiently tested, and, on the other hand, refused to endorse the plaintiffs' terms as the only reasonable alternative. (8/23/21 R&R at 20-22, 26). And it specifically referenced the term in the ESI Order providing for resolution of search term disputes. (8/23/21 R&R at 26 n.5). But any window of opportunity for further adjudication of search terms prior to the application of TAR closed when the Court directed the defendants to "proceed, forthwith, as they have outlined in their submissions." (Opinion at 3). That procedure specifically allows the defendants to rely on search terms of their choosing subject to "end-to-end" validation – a process that assesses the quality of review over both the search term and TAR review stages.

At oral argument on this motion, the plaintiffs suggested two justifications for revisiting the search term dispute now. First, they contend that by adopting my mediation proposal in their discovery protocol, the defendants incorporated my caveat that "[t]he proposal is necessarily general," in part because it was designed to "leave the parties flexibility to negotiate the details." (Letter of James C. Francis IV dated July 12, 2021 ("Proposal"), attached as Exh. D to Alden L. Atkins dated September 3, 2021 ("Atkins Decl.") (ECF 532-1). From this, the plaintiffs infer that the modified search protocol that the defendants proffered to the Court anticipated further litigation concerning search terms at this time. Not so. In presenting their amended methodology to the Court, the defendants made clear at least twice that while they were amenable to discussing revised search terms with the plaintiffs, their proposal contemplated no further adjudication until the defendants deemed their search complete. In their brief, they said:

> In short, Judge Francis's Proposal provides an elegant solution to the search term dispute. Rather than requiring the Court or Special Master to undertake a tedious term-by-term analysis of individual search terms, Judge Francis's proposal allows the producing party to select the search terms that it will use, consistent with that party's obligations under Rule 26, while also shifting onto the producing party all risk associated with using unduly narrow search terms.

(Def. Resp. to R&R at 11). And, in a supporting declaration, defendants' counsel argued that "[a] benefit of Judge Francis's proposal is that it would avoid the need for the Court and/or the Special Master to determine which search terms should be used by Defendants." (Atkins Decl, ¶ 19). These were the provisions that were "outlined in [the defendants'] submissions," and under which the Court authorized the defendants to proceed.

The plaintiffs also contend that by referring their current motion to me for a report and recommendation, the Court was intimating that I should adjudicate the merits of the search term disputes that they raised. No such inference is warranted. The reference of a

6

motion, without more, does not suggest that a full merits review is expected. Rather, a referred motion may just as easily be subject to determination on procedural grounds, such as timeliness, or, like here, on the basis of a prior decision.

While the Court's Opinion forecloses the plaintiff's current motion, it does not immunize the defendants' production from challenge at the end of the day. Indeed, the Opinion provides a method for resolving any dispute over the reasonableness of the defendants' search, and that includes any deficiencies that might result from inadequate search terms, a faulty TAR process, or any other source. (Opinion at 3). As the defendants note, this creates a powerful incentive for them not to use unduly narrow search terms. (Def. Resp. to R&R at 11). Thus, if at the point where the defendants seek to halt their search, the plaintiffs identify search term inadequacies that rendered the search unreasonable, remedies will be available. But the Court was clear: production needed to proceed immediately on the basis of the protocol outlined by the defendants in response to the 8/23/21 R&R.

The plaintiffs' motion to compel should therefore be denied.

B. <u>Defendants' Motion for a Protective Order</u>

The defendants move for a protective order "to permit Defendants to use the search terms they have disclosed to Plaintiffs for reviewing and producing electronically stored information, and to deny Plaintiffs' implicit request for reconsideration of their Motion to Compel Defendants to use certain search terms (ECF No. 455), which the Court denied (ECF No. 549)." (Defendants' Motion for a Protective Order Regarding Defendants' Search Terms) (ECF 582). In opposing the motion, the plaintiffs contend that the defendants have failed to demonstrate "with specificity" that they will suffer a "clearly defined and serious injury" if the requested order is not granted. (Memorandum of Law in Opposition to Defendants' Second Motion for a Protective

7

Order (ECF 589) at 7) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994)). But, as discussed above, the relief sought by the plaintiffs is precluded by the prior order of the Court. Under these circumstances, the defendants have an interest in enforcement of that order and need not show harm beyond the prejudice that is inherent when the finality of a court order is undermined. *See Tyler v. City of San Diego*, No. 14-cv-01179-GPC-JLB, 2015 WL 1956434, at *2 (granting protective order against discovery denied in prior order without discussing any additional harm). In any event, the defendants' motion for a protective order is functionally the mirror image of the plaintiffs' motion to compel. For that reason, the defendants' motion should be denied as moot insofar as it seeks the same relief that necessarily flows from denial of the plaintiffs' motion. *See, e.g., Bachman v. Bachman*, No. 8:19CV276, 2021 WL 1060543, at *10 n.6 (D. Neb. March 19, 2021) (denying motion to compel and then denying mirror image motion for protective order as moot); *State Farm Mutual Automobile Insurance Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 233 n.4 (E.D. Pa. 2008) (granting motion for protective order and then denying counterpart motion to compel as moot).

The defendants also seek an award of attorneys' fees and costs. Pursuant to Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure, a court must award expenses, including attorneys' fees, to a party that prevails on a motion to compel or a motion for a protective order unless the losing party's position was substantially justified, or other circumstances would make the award unjust. Here, the plaintiffs' position was substantially justified even though they did not prevail. The 8/23/21 R&R did not preclude further litigation over search terms, since all it did was deny both parties' original motions. What the plaintiffs failed to appreciate was that the Court's Opinion did more than simply adopt that Report and Recommendation; it gave the defendants leave to proceed with their chosen search terms. But given the fact that the

defendants' modified protocol was adopted in the midst of the appeal from the 8/23/21 R&R and was not the subject of full, separate briefing, the plaintiffs' misapprehension is understandable and does not warrant an award of expenses. Moreover, in response to the plaintiffs' motion practice, the defendants engaged in more robust testing of search terms and more fulsome analysis of their discovery costs than they had previously. The information thus obtained will likely prove valuable in future discussions between the parties and in any further adjudication of the adequacy of the defendants' search.

Conclusion

For the reasons discussed above, I recommend that the plaintiffs' motion to compel (ECF 592) be denied, the defendants' motion for a protective order (ECF 582) be denied as moot, and the defendants' application for an award of expenses, including attorneys' fees, be denied.

Respectfully Submitted,

_____
James C. Francis IV
E-Discovery Special Master

1/7/22
Date