IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Cases | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

## MEMORANDUM AND ORDER OF COURT

This multi-district litigation stems from an alleged conspiracy to reduce supply and increase price for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes.[1] Plaintiffs have filed a Motion to Compel Defendant, Wanhua Chemical America Co. Ltd. ("WCA"), to Include Additional Document Custodian and to Produce Certain Custodial Documents. (ECF No. 665). Specifically, Plaintiffs seek an order compelling WCA: 1) to add an additional custodian, Megan Dingle, and 2) to expand the search terms applied to certain custodians (Marc Block, Sam Maddox, and Brian Morris – together referred to as the "ADI Custodians").[2] *Id.* Plaintiffs premise their Motion on "fundamental fairness." (ECF No. 666 at 2). WCA filed a Brief in Opposition to Plaintiffs' Motion and Plaintiffs filed a Reply thereto. (ECF Nos. 675, 690, 691). The Motion is now ripe for review.[3]

## I.  BACKGROUND

While WCA does not manufacture MDI or TDI, it does sell MDI through swap agreements with other MDI suppliers. Megan Dingle joined WCA in July of 2017 as a customer service

---

[1]  Unless otherwise noted, the facts are taken from the Consolidated Second Amended Class-Action Complaint ("SAC"). (ECF No. 377).

[2]  ADI refers to aliphatic isocyanates, a product not at issue in this case.

[3]  All documents filed under seal and related hereto have been reviewed.

representative and in June of 2018 she became a Sales and Operational Planning Coordinator ("S&OP coordinator").  S&OP coordinators coordinate tanker shipments, schedule railcars, and assist in the logistical management of inventory levels to keep a level of product supply consistent with the goals and directives of WCA as determined by Jacob Sturgeon, CEO of WCA.  Ms. Dingle did not have responsibility for and was not involved in any sales, negotiations (including any negotiations involving swap agreements), marketing, or pricing involving MDI or TDI.

Ms. Dingle was first identified in discovery on May 26, 2021 as someone with authority to make decisions "relating to production, capacity, or inventory levels related to Your MDI and/or TDI Products,…" and who was "knowledgeable about the swap transactions." (ECF No. 669-3 at 14, 31).  On November 17, 2021, almost six months later, Plaintiffs requested WCA add Ms. Dingle as an additional document custodian.  Within a week, WCA responded that it did not intend to include Ms. Dingle as a custodian in the already ongoing TAR review.  Two months later, in February of 2022, Plaintiffs again objected to the exclusion of Ms. Dingle as an additional custodian. WCA responded on February 10, 2022 explaining its reason for not including Ms. Dingle.  WCA substantially completed its document review on March 21, 2022, producing over 330,000 documents.  Plaintiffs filed the instant Motion to Compel to add Ms. Dingle on June 21, 2022.

As to Marc Block, Sam Maddox, and Brian Morris, they were members of WCA's ADI business unit (a separate unit from the MDI/TDI business unit).  On very limited occasions, ADI customers have a need for and purchase MDI from WCA.  In such cases, either the MDI business unit and/or Jacob Sturgeon participate in those sales.  ADI custodians spend 2-3% of their time on MDI.  During the relevant time period, only four MDI customers purchased MDI through an ADI

custodian. At all relevant times, Jacob Sturgeon had sole pricing authority and responsibility for MDI sales.

During negotiations of document custodians, in February of 2021, Plaintiffs and WCA agreed on 16 custodians, including the ADI Custodians at issue here. As to the ADI Custodians only, the parties agreed to limit the search of ADI Custodians' documents to those discussing MDI or TDI to filter out non-relevant documents about ADI. Plaintiffs now seek an order from this Court compelling WCA to run a new TAR review of ADI Custodians' documents removing the MDI/TDI filter terms and to search the ADI Custodians' files in that same manner as every other custodian.

## II. ANALYSIS

Federal Rule of Civil Procedure 37 governs motions to compel discovery, which directs that the scope and limits of discovery are defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides, in relevant part: "Parties may obtain discovery regarding any nonprivileged **matter that is relevant to any party's claim or defense <u>and</u> proportional to the needs of the case**."[4] (Emphasis added). The scope of discovery is broad, but it is not unlimited. *See* Fed. R. Civ. P. 26(b)(2). The 2015 Amendments to Rule 26(b)(1) were designed to restore proportionality factors into the consideration of defining discovery. *Id.* at 2015 Advisory Committee Notes. "The court may limit discovery to ensure its scope is proportional to the needs

---

[4] Rule 26(b) provides as follows:

(b) Discovery Scope and Limits.
(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

3

of a case…." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019).

The determination of the limits of discovery is within the sound discretion of the court and is a case-specific determination. *Id.* Accordingly, a court may limit relevant discovery if it is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

The burden of establishing the relevance of discovery sought rests with the moving party.

> When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1). If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019) (quoting *Wright v. City of Philadelphia*, 2017 WL 1541516, at *1 (E.D. Pa. Apr. 28, 2017)).

*Plump v. La Salle Univ.*, No. 19-CV-4579, 2020 WL 3250532, at *2 (E.D. Pa. June 15, 2020). "The parties and the court have the collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b)(1), 2015 Advisory Committee Notes.

With these principles in mind, the Court now turns to the discovery requests at issue.

A. **Megan Dingle**

Standing on "fundamental fairness," Plaintiffs come to this Court, over a year after Ms. Dingle was identified, seven months after there was an impasse between the parties regarding her inclusion as a custodian, and three months after WCA substantially completed their document review, seeking to have WCA reopen its TAR review to include Ms. Dingle as an additional document custodian because she was identified in discovery as someone who had authority to make decisions "relating to production, capacity, or inventory levels related to Your MDI and/or TDI Products,…" and who was "knowledgeable about the swap transactions."

4

In response, WCA points out that while Ms. Dingle was part of the S&OP team, which was responsible for managing MDI/TDI inventory, she did not have sales, production or pricing responsibilities for MDI/TDI, nor did she have responsibility for negotiation swap agreements. She may have knowledge about swap transactions, which is why she was identified, but she was not involved in "negotiating" swap agreements.  Additionally, Ms. Dingle worked with more senior employees at WCA, including Heather Lunch, Melissa Gutzler, Jianfei He, and Jacob Sturgeon, all of whom are part of the 16 negotiated custodians of WCA and whose documents have been produced.  To that end, WCA argues that "Ms. Dingle's documents are insignificant and substantively duplicative" when considered in conjunction with "the burden of collecting, reviewing, and producing" the documents such that the proportionality of the need for the same is outweighed, "particularly given the delay in requesting" the same. Thus, WCA argues that Ms. Dingle's role is tangential and she is not an appropriate custodian in the case.

After a careful review of the evidence, the Court agrees with WCA and finds that the documents identified by Plaintiffs do not suggest otherwise.  Balancing the facts, as the Court must, Plaintiffs' request is simply not proportionate and is unduly burdensome given the documents already provided by those more senior custodians, including not just Jacob Sturgeon, but also Heather Lynch, Melissa Gutzler, and Jianfei Hi, along with documents produced by other means (including  Huntsman), and her limited time and role as an S&OP coordinator (with no involvement in any sales, negotiation, marketing, or pricing discussion involving MDI/TDI) during the relevant period. The Court is unpersuaded that any additional documents solely from Ms. Dingle would likely lead to uniquely relevant information to Plaintiffs' claims when balanced with the above facts.  Accordingly, Plaintiffs' Motion to Compel with regard to Ms. Dingle is denied.

B. <u>**ADI Custodians**</u>

The parties agreed that the ADI Custodians would be included as limited document custodians with filtered MDI/TDI search terms. Plaintiffs reserved the right, however, to revisit the issue as to whether the document search should be limited, which they are now exercising. Plaintiffs argue that the documents produced pursuant to the filtered search are "woefully incomplete." To that end, Plaintiffs request this Court enter an order compelling WCA to subject the ADI Custodians to the same search terms and procedures as all other WCA custodians.

In response, WCA provides that on limited occasions the ADI Custodians served as liaisons between WCA's separate MDI/TDI sales team for the small number of ADI customers who wanted to purchase MDI. After negotiations, the parties agreed that WCA could use a set of filter search terms to limit the review to those relevant to MDI/TDI for the ADI Custodians. WCA performed the search and produced the documents accordingly. WCA submits that documents about non-MDI/TDI products are not relevant and the burden of collecting, reviewing, and producing them is disproportional to the needs of the case.

Additionally, WCA points to the untimely nature of Plaintiffs' Motion as another reason to deny the same. In October of 2021, Plaintiffs sought to retract their February 2021 ADI Custodian search agreement but, for unexplained reasons, waited eight months to file this Motion, which is more than three months after it substantially completed its document review. As a result, WCA argues that the Motion to Compel should be denied.

This Court is focused on the claims of this civil case. There is no doubt that this case is about a conspiracy to fix prices of MDI and TDI. ADI is not a product at issue in this case. The parties correctly recognized, however, that the ADI Custodians do, on limited occasions, deal with customers who would like to purchase MDI. To that end, they agreed to apply a filter to the

MDI/TDI search terms as it relates to the ADI Custodians to find relevant documents. The Court agrees that the relevant documents from ADI Custodians would be those documents related to MDI/TDI. WCA produced to Plaintiffs the documents resulting from its search.

Documents unrelated to MDI/TDI, however, are not relevant to Plaintiffs' claims and Plaintiffs have failed to convince the Court otherwise. Accordingly, a document search of the ADI Custodians untethered to MDI/TDI would yield excessive irrelevant documents and exponentially increase the burden on WCA, making such a search overly broad, unduly burdensome, and wholly disproportionate to the needs of the case. Consequently, Plaintiffs' Motion to Compel as to the ADI Custodians is denied.

An appropriate order follows.

## ORDER OF COURT

AND NOW, this 2nd day of August, 2022, for the reasons set forth in the Memorandum above, IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Defendant Wanhua to Include Additional Document Custodian and to Produce Certain Custodial Documents (ECF No. 665) is DENIED.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record