IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION  )<br>)<br>) | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |
| This Document Relates to:  )<br>All Cases  ) | |

**MEMORANDUM AND ORDER OF COURT**

This multi-district litigation concerns an alleged conspiracy to reduce supply and increase prices for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes. The parties have undertaken extensive discovery thus far and currently are operating under discovery and other deadlines set forth in the Court's Case Management Order entered on April 27, 2022. (ECF No. 653). Presently before the Court is Plaintiffs' Motion to Compel Certain Defendants to Produce Custodial Calendars and Text Messages ("Motion to Compel"). (ECF No. 788). Plaintiffs also filed several declarations, (ECF Nos. 791, 792, 793), and a supporting Memorandum. (ECF No. 789). Defendants BASF Corporation ("BASF"), Huntsman International LLC ("Huntsman"), and Wanhua Chemical (America) Co., Ltd. ("WCA") (collectively referred to herein as "Certain Defendants") filed a Response with supporting declarations. (ECF Nos. 799, 801, 802, 803). Plaintiffs filed a Reply. (ECF No. 806). The matter is fully briefed and ripe for disposition. For reasons that follow, Plaintiffs' Motion to Compel will be denied.

    **I.    BACKGROUND**

Plaintiffs seek an order compelling Certain Defendants to produce text messages (after only a linear review) and the full calendars of approximately 45 custodians covering a five-year period pursuant to their First Request for Production of Documents for Unstructured Data ("Document

1

Requests") dated January 30, 2020. (ECF No. 793-1). These calendars and text messages have already been subject to search term review, and BASF and WCA substantially completed their production of responsive documents therefrom in March 2022 and Huntsman did so in April 2022. (ECF Nos. 801, ¶ 14; 802, ¶ 9; 803, ¶ 25). All told, Huntsman produced approximately 27,190 calendar entries (44,732 with families) and 1,542 text message transcripts[1] (1,803 with families) (ECF No. 801, ¶14); WCA produced 5,483 calendar entries (6,254 with families) and 3,453 text message transcripts consisting of 39,293 messages (ECF No. 803, ¶¶ 14, 18); and BASF produced 19,717 calendar entry documents (inclusive of attachments) and 473 text message documents (inclusive of attachments). (ECF No. 802, ¶ 20).

Plaintiffs contend, however, that these document productions yielded by Certain Defendants' search term review are inadequate and that production of text messages (after linear review) and full custodial calendars is necessary. Remaining at issue are documents that have been preserved but not produced because Certain Defendants represent that these documents did not contain any of the applied search terms. In this regard, Huntsman has approximately 61,697 unproduced calendar entries and approximately 85,837 unproduced text messages (inclusive of families) (ECF No. 801, ¶ 15); WCA has approximately 38,276 unproduced calendar entries (44,933 files when including families such as attachments to calendar entries) and 97,658 unproduced mobile message transcripts consisting of approximately 676,016 individual text messages (ECF No. 803, ¶¶ 21, 24); and BASF has approximately 269,000 unproduced calendar entry documents and more than 6,300 unproduced test message documents. (ECF No. 802, ¶ 21). Certain Defendants contend that their search term-generated productions were the result of

---

[1] A text message transcript in this sense covers a 24-hour period to provide context around individual text messages. (ECF No. 803, ¶ 16 and n.3).

agreements between the parties, that producing all remaining calendar entries and text messages irrespective of relevance and in contravention of the parties' Stipulated Order Regarding Discovery of Electronically Stored Information ("Stipulated ESI Protocol"), (ECF No. 313), is beyond the permissible scope of discovery, and that seeking to compel full production of these documents long after conducting their agreed-upon search term review and production is untimely.

As with other aspects of their discovery efforts thus far, counsel for the parties engaged in extensive discussions and correspondence regarding Plaintiffs' Document Requests (ECF No. 793-1), Certain Defendants' objections thereto (*see e.g.,* ECF No. 803-2), and the parties' subsequent agreement to use search terms to winnow the universe of documents for further review and production. (ECF Nos. 793; 801; 802; 803). The parties did so in the context of conferring and reaching agreements on a myriad of other related discovery matters such as the identities of custodians and, particularly relevant here, their Stipulated ESI Protocol. (ECF No. 313). Huntsman, for instance, wrote to Plaintiffs on November 22, 2021, in response to Plaintiffs' correspondence dated October 29, 2021, and to a follow-up conversation between counsel on November 11, 2021, confirming its acceptance of Plaintiffs' proposed compromise to apply search terms, but not technology-assisted review ("TAR"), to identify calendar entries and text messages for further review and production. (ECF Nos. 801, ¶¶ 5-7; 801-2; 801-3). WCA and Plaintiffs confirmed their own agreement in this regard as reflected in Plaintiffs' correspondence dated July 23, 2020, (ECF Nos. 803, ¶¶ 8, 9; 803-3), and by subsequent correspondence between these parties. (ECF Nos. 803, ¶¶ 8, 9; 803-4; 803-5; 803-6). BASF's course of dealing and written communications with Plaintiffs also reflects an agreed upon understanding that search terms would be used to identify, review, and produce relevant calendar entries. (ECF Nos. 802, ¶¶ 5-16; 802-4; 802-5; 802-6; 802-7; 802-8; 802-9). The parties also conferred regarding the search terms to be

used, and certain of Plaintiffs' proposed search terms were ultimately incorporated into BASF's review process. (ECF Nos. 801, ¶¶ 8-14; 802, ¶¶ 6-17; 803, ¶¶ 8-9).

Despite Certain Defendants' efforts to search for, review, and substantially produce voluminous responsive calendar entries and text messages in accordance with their agreements with Plaintiffs to use search terms to winnow the universe of calendar entries and text messages for further review and production, Plaintiffs subsequently reversed their position concerning Certain Defendants' use of search terms. (ECF Nos. 793-2; 802, ¶¶ 18-19; 802-9; 803, ¶ 10; 803-7; 803-8). Plaintiffs now insist on a linear review and production of text messages and the full production of custodial calendar entries.

## II.     DISCUSSION

The scope and limits of discovery are defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides, in relevant part: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Here, the parties do not dispute that calendar entries and text messages of Certain Defendants' custodians may be relevant and discoverable. What they do dispute is whether Plaintiffs may insist on the wholesale production of such calendar entries and the full linear review of all such text messages without first applying search terms to winnow those documents for further review and production.

Plaintiffs contend that the Court should compel the full production of calendar entries and the production of text messages after a linear review because courts routinely order the full production of calendars without first applying search terms and because the search term review improperly risks excluding relevant evidence. The Court disagrees.

First, Plaintiffs contend that courts routinely order the production of entire calendars without the application of search terms. The cases cited by Plaintiffs are unpersuasive. The pretrial order referred to in *In re Generic Pharm. Pricing Antitrust Litig.*, No. 2:16-md-0272724-CMR (E.D. Pa. Feb. 9, 2018) (ECF No. 560), was issued when that court denied a request to stay all discovery and instead permitted the plaintiffs to move forward with 91 document requests including one such request seeking "all calendars." It does not address any pertinent relevance objections and offers no meaningful reasoning or precedent for this Court's consideration here. Plaintiffs' reliance on *In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489, 2009 WL 10703132, at *3-4 (D.D.C. July 13, 2009) is likewise unhelpful because the court in that case ordered the production of calendars from a small subset of document custodians while permitting the exclusion or redaction of the custodians' personal entries and made this ruling early in the case and not, as here, after the parties have already substantially completed their review and production of such documents. There is nothing in either of these antitrust cases that directs or persuades this Court to require wholesale production of documents without first using search terms. The non-antitrust cases cited by Plaintiffs are similarly unhelpful. Plaintiffs essentially contend that the use of search terms are *per se* inadequate but offer no controlling or persuasive authority to support their contention.

Second, while it is true that the use of search terms is imperfect and may exclude some relevant documents, not using search terms when reviewing a voluminous universe of documents

5

also risks expending time and resources to cull through and produce large amounts of irrelevant documents. Consequently, search term methodologies are routinely used, particularly in large and complex commercial and antitrust cases, as an acceptable if not preferred approach. Only a reasonable search for responsive information pursuant to a reasonably comprehensive search strategy is necessary, and "in an era where vast amounts of electronic information is available for review, . . . [c]ourts cannot and do not expect that any party can meet a standard of perfection." *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (citation omitted).

Importantly, here, the parties previously agreed upon the Stipulated ESI Protocol which does not exclude calendar entries or text messages, and which requires that they "discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of document collection, review for production, . . . and facilitating production in accordance with the deadlines set by the Court . . . with the goal of identifying responsive documents." (ECF No. 313 at 5, ¶5(a)). This Stipulated ESI Protocol also provides for a process by which the parties are to develop and apply search terms, as well as a dispute resolution process. (*Id.* at 5-6, ¶¶ 5(a)(ii); 21, ¶ 9). Plaintiffs and Certain Defendants did confer and ultimately agreed[2] to use search terms for the identification, review, and production of calendar entries and text messages and Certain Defendants relied upon those agreements to review and produce voluminous responsive documents accordingly. Plaintiffs have presented no basis to persuade this Court to disrupt those agreements and thus expand Certain Defendants' review and production obligations (and the

---

[2] Plaintiffs' agreements with each of the Defendants, including Certain Defendants, are not wholly identical and in certain instances vary widely. By way of example, in October 2021, Plaintiffs entered into a Court-approved stipulation with Defendant Dow to produce calendar entries and text messages, (ECF No. 559), and they entered into a Court-approved stipulation with Defendant Covestro LLC to produce text messages consistent with the ESI Protocol. (ECF No. 560).

commensurate costs and burdens created thereby) by obviating the use of search terms at this far-along juncture. *MAO-MSO Recovery, LLC v. Mercury Gen.*, 2019 WL 1423772, at *3 (C.D. Cal. Feb. 19, 2019); *Genzyme Corp. v. Lupin Ltd.*, 2011 WL 2490603, at *3 (D. Md. June 21, 2001).

Although the Court finds that Plaintiffs and Certain Defendants have agreed to use search terms for the selection and production of custodial calendar entries and text messages and will hold the parties to those agreements, the record also reflects disagreements between Plaintiffs and Certain Defendants as to the adequacy of the search terms that were applied and Plaintiffs' reservation of rights to pursue follow-up requests.  Correspondence between Plaintiffs and WCA is illustrative. For instance, Plaintiffs wrote to WCA on July 23, 2020, stating:

> Generally speaking, Plaintiffs and WCA agreed that the types of documents requested by this RFP would be included in a search of each custodian who is a person based on an agreed upon search term protocol. The parties also agreed that based on the results of the search, Plaintiffs may have some additional follow-up requests for this RFP and WCA indicated its willingness to discuss these follow-up requests.

 (ECF No. 803-3 at 7).  Plaintiffs subsequently wrote:

> [WCA] stated it will produce responsive documents for this RFP based on an agreed upon search protocol for the negotiated set of custodians. [WCA] also maintained its objection to the wholesale production of certain categories of documents, e.g., calendars or diaries. Plaintiffs explained that given the nature of these types of documents, they may have a higher-than usual number of follow-up requests for potentially responsive information for this RFP. For example, different custodians may use different types of shorthand references for meetings they attended which may require discrete follow-up search queries for each custodian. [WCA] stated that it understood Plaintiffs may request follow-up search queries for potentially responsive materials for this RFP.

(ECF No. 803-5 at 3).

It is plainly evident that the parties were not wholly in agreement as to the actual search terms to be utilized despite agreeing, generally, to the use of search terms. Within this context, the parties expressly contemplated that Plaintiffs would likely propound follow-up discovery requests.

7

In the Court's estimation, however, Plaintiffs have not demonstrated on the current record that Certain Defendants search terms or search methodologies pertaining to calendar entries or text messages are unreasonable or inadequate. Even so, the foregoing communications between Plaintiffs and WCA, as well as record evidence of correspondence between Plaintiffs and Huntsman and BASF, demonstrate that the parties contemplated Plaintiffs making follow-up discovery requests based upon their review of calendar entries and text messages identified and produced after Certain Defendants' applied their search terms. Such targeted follow-up discovery requests for discernably relevant information, rather than the wholesale production of documents that will certainly yield significant amounts of irrelevant material, is more aptly proportional to the needs of this case. In making this decision, the Court acknowledges that antitrust cases such as this one, which involves allegations of nationwide anticompetitive collusion in the MDI and TDI industry, are matters of public importance in which the amount in controversy is significant. The Court also considered the parties' resources and their relative access to relevant information. Most importantly here, however, is the burden or expense of re-reviewing the entire universe of calendar entries and text messages *sans* search terms when balanced against the likely benefit of doing so. Given the substantial time and effort undertaken to search for and produce calendar entries and text messages thus far, and the anticipated time and expense to re-review and produce a broader universe of such documents, such an endeavor is outweighed by the likely benefit of such efforts. Rather, a targeted, follow-up approach as the parties expressly contemplated, is more proportional to the needs of the case at this juncture.

Accordingly, while the Court is not compelling Certain Defendants to undertake a linear review of voluminous text messages and to produce such text messages along with the full custodial calendar entries without application of their previously applied search terms, and while

the Court is not directing Certain Defendants to re-review the full universe of documents through the lens of Plaintiffs' proposed but rejected search terms, the Court does recognize that Plaintiffs may propound targeted follow-up discovery requests that seek to elicit relevant evidence that is proportional to the needs of the case. Such follow-up discovery requests should be non-cumulative, specifically targeted and not generalized, and be informed by the documents and other information produced to Plaintiffs thus far.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Certain Defendants to Produce Custodial Calendars and Text Messages is DENIED.

### ORDER OF COURT

Accordingly, this 26th day of January 2023, upon consideration of Plaintiffs' Motion to Compel Certain Defendants to Produce Custodial Calendars and Text Messages (ECF No. 788), IT IS ORDERED that said Motion is DENIED.

IT IS FURTHER ORDERED that Plaintiffs may propound targeted follow-up discovery requests consistent with the Court's Memorandum above.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record