IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION )<br>)<br>)<br>This Document Relates to: )<br>All Cases ) | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

**MEMORANDUM AND ORDER OF COURT**

This multi-district litigation concerns an alleged conspiracy to reduce supply and increase prices for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes. The parties have undertaken extensive discovery thus far and currently are operating under discovery and other deadlines set forth in the Court's Case Management Order entered on April 27, 2022. (ECF No. 653). Presently before the Court is Plaintiffs' Motion to Compel Regarding the Geographic Scope of Defendants' Interrogatory Responses ("Motion to Compel"). (ECF No. 758). Plaintiffs also filed a Declaration of Jason Hartley and a supporting Memorandum (ECF Nos. 759, 760). Defendants BASF SE ("BASF SE"), Dow Chemical Company ("Dow"), Huntsman International LLC ("Huntsman"), and Wanhua Chemical (America) Co., Ltd. ("WCA") (collectively referred to herein as "Objecting Defendants") filed a Response with supporting declarations. (ECF Nos. 781, 782, 783, 784, 785). Plaintiffs filed a Reply. (ECF No. 795). The matter is fully briefed and ripe for disposition. For the reasons that follow, Plaintiffs' Motion to Compel will be granted in part and denied in part.

**I.    BACKGROUND**

Plaintiffs claim that Defendants colluded to manipulate the global production and supply of MDI and TDI to fix prices affecting the U.S. market for these products. (ECF No. 377, ¶¶ 63-

65, 67-68, 151, 158, 168). In support of this claim, Plaintiffs contend that the market for MDI and TDI is global, (*id.*, ¶¶ 63-65, 67-68, 158, 168), that several Defendants maintain significant foreign operations, including maintaining corporate headquarters abroad, (*id.*, ¶¶ 27, 29, 35, 37, 38), and that Defendants engaged in joint ventures and swaps abroad and imported MDI or TDI into the United States. (*Id.*, ¶¶ 40, 217; ECF No. 760, ¶¶ 6, 7). Plaintiffs also contend that the market for MDI and TDI in the United States is affected by the supply of MDI and TDI produced at Defendants' foreign plants. (ECF No. 377, ¶¶ 27, 29, 35, 37, 38).

The parties have been wrestling with the geographic scope of discovery since 2020 when Defendants objected to Plaintiffs' First Request for Production of Documents for Unstructured Data ("Plaintiffs' Document Requests") on the basis that Plaintiffs sought to elicit documents with no apparent connection to the U.S. market for MDI or TDI. (ECF Nos. 760, ¶ 5; 760-3; 762-2; 762-3; 762-4; 762-5; 782, ¶ 5; 783, ¶¶ 3-4). At that time, the parties began a series of meet and confers, and reached agreements or understandings that the geographic scope of Defendants' document productions would reflect an actual effect on U.S. commerce (even if such documents do not expressly mention the United States or locations within it) in a way that purportedly is actionable under the Sherman Act.

Counsel for Plaintiffs and BASF SE[1] agreed that BASF SE would "search for and produce documents that have an 'effect' on the United States," and that the term "effect" would be interpreted "consistent with its meaning under the Sherman Act."[2] (ECF No. 782, ¶ 7). Plaintiffs'

---

1   Counsel first reached this agreement or understanding regarding BASF Corporation's responses and then applied the same agreement or understanding to BASF SE's responses. (ECF No. 782, ¶¶ 6, 10-12).

2   BASF SE avers that it spent approximately 10,000 hours reviewing and quality control checking more than 330,000 documents over a five-month period to complete its document review, and that it produced approximately 107,000 documents with more to come. (ECF No. 782, ¶¶ 25, 29). BASF SE contends that it would need to re-review these documents as part of its search and gathering obligations if compelled to expand its responses as Plaintiffs now insist. (*Id.*, ¶ 30).

counsel confirmed their understanding regarding the relevant scope issues. (ECF No. 782, ¶¶ 12-13). Likewise, counsel for Plaintiffs and Dow agreed that Dow would "produce documents 'concerning the United States markets for MDI and TDI,' defined as documents a reviewer would reasonably understand to affect the United States markets for MDI and TDI that is purportedly actionable under the Sherman Act." (ECF No. 785, ¶¶ 7-8).

As with Dow and BASF SE, counsel for Plaintiffs and Huntsman similarly agreed that Huntsman would "search for and produce documents that may be apparent or discernable from the face of the document or context of the document that it affects or relates to the United States." (ECF No. 783, ¶ 6). This agreement was followed up with Huntsman's counsel writing: "As discussed, Huntsman will produce documents containing information that is reasonably understood to affect the U.S. market . . . To determine whether the information in a document would affect the U.S. market for MDI, we will look to the specific language of the document as well as relevant context, such as the locations and job functions of the sender and recipient. As to documents located outside the United States, Huntsman is not categorically objecting to searching for such documents to the extent that Huntsman reasonably believes the document would contain information relating to the pricing and/or production of MDI in the United States." (*Id.*, ¶ 7). Plaintiffs' counsel never objected or otherwise responded to this last correspondence, so Huntsman searched for and produced documents accordingly. (*Id.*, ¶ 8).

Thereafter, Plaintiffs served interrogatories on the domestic Defendants on April 12, 2021, and on the foreign Defendants (including BASF SE) on October 25, 2021.[3] (ECF No. 782, ¶¶ 13, 15; ECF No. 785 ¶ 9; ECF No. 785, ¶ 9). Plaintiffs' interrogatories at issue here seek to elicit:

---

3   Despite being materially identical, the identifying numbers for each interrogatory directed to the domestic Defendants and to the foreign Defendants varies so the identifying numbers for the interrogatories directed to the

    (i)    the identities and contact information of personnel who had managerial responsibility for recommending, reviewing, setting, deciding, or approving prices, price increases, production, capacity, inventory levels, supply, or output of MDI and/or TDI, along with personnel authorized to implement or make decisions relating to changes to production, capacity, or inventory levels;

    (ii)    inter-competitor meetings and communications regarding MDI and TDI products;

    (iii)    the names of the products, costs of manufacture, and factors influencing pricing;

    (iv)    plants, production activity (including volume of U.S. sales generated), declarations of force majeure, and other plant disruptions; and

    (v)    joint ventures and swaps.

(ECF Nos. 760, 762-2, 762-3, 762-4, and 762-5).

Presently at issue is the adequacy of Objecting Defendants' responses to these interrogatories.[4] The Objecting Defendants re-asserted their geographic objections and limited their interrogatory responses to matters affecting the United States' market in accord with their prior agreements and understandings reached when responding to Plaintiffs' Document Requests.[5] (ECF Nos. 782, ¶ 16; 783, ¶ 10; 785, ¶ 10).

---

domestic Defendants are used herein with the corresponding interrogatory numbers directed to the foreign Defendants, if different, noted in footnotes.

4    It appears that all other Defendants responded to these interrogatories without objecting to the global geographic scope or otherwise responded based upon limitations deemed acceptable to Plaintiffs. Consequently, Plaintiffs limit their Motion to these Objecting Defendants but assert in a footnote that "multiple" other Defendants "have been less than clear" about the scope of their interrogatory responses and therefore seemingly suggest that their Motion encompasses these other Defendants' responses to the extent those responses were improperly limited in geographic scope. (ECF No. 759 at 1 n.1). As Plaintiffs' Motion does not specifically address any purported deficiencies by these non-objecting Defendants and because the non-objecting Defendants have not been afforded an opportunity to respond to any specific contentions in this regard, the Court's disposition of the instant Motion to Compel is limited to the Objecting Defendants.

5    Because the various Objecting Defendants do not uniformly object to each interrogatory at issue, Plaintiffs supplied a summary chart cataloging the objections to each interrogatory at issue by each corresponding Objecting Defendant. (ECF No. 760-2). The Court also notes that WCA did not object or limit its interrogatory responses based on geographic scope so the Court will consider it among the non-objecting Defendants. (ECF No. 781 at 8; ECF No. 795 at 2 n.1; ECF No. 784).

Notwithstanding the parties' prior agreements and understandings, Plaintiffs took issue with the Objecting Defendants' responses, contending that limiting their responses based upon the absence of a nexus to the United States is too narrow and ought to be expanded to include information and individuals that "can" or "may" affect United States pricing and supply." (ECF Nos. 782, ¶ 17; 783, ¶ 13; 785, ¶ 12).  Plaintiffs rejected Objecting Defendants' position that the scope of their responses was consistent with the prior agreements or understandings concerning their responses to Plaintiffs' document requests. Plaintiffs contend that those prior agreements or understandings were applicable only to their Document Requests and not to their subsequent interrogatories.[6]

Plaintiffs ultimately declared an impasse on this issue as early as April 2022 and then filed the instant Motion to Compel several months later. (ECF Nos. 782, ¶ 24; 783, ¶¶ 15-16; 785, ¶ 14). In doing so, Plaintiffs assert that these interrogatories are central to their case and represent a compromise made when agreeing not to compel global production of documents. Plaintiffs also contend that various of the Objecting Defendants improperly limited their responses to these interrogatories in a manner not reflective of the global market for MDI and TDI, and instead limited their responses to what they unilaterally decided are the geographic restrictions of the Sherman Act.  Plaintiffs essentially make two general arguments: first, that foreign conduct is relevant even if such conduct does not affect, but only potentially affects, the market for MDI or TDI in the United States; and, second, that the Objecting Defendants have not established that responding in this broader way would pose a burden beyond the proportional needs of the case.

---

6      Plaintiffs also contend that their prior agreement or understanding with BASF Corporation regarding its document production was not applicable to BASF SE's interrogatory responses. (ECF No. 782, ¶ 19).

For their part, the Objecting Defendants contend that they already produced substantial information regarding foreign conduct insofar as the information requested reasonably bears on imports or exports of MDI or TDI to or from the United States. Objecting Defendants also contend that the parties previously agreed to limit the geographic scope of their discovery responses in this regard. Objecting Defendants also contend that interrogatories seeking to elicit "purely foreign commerce" are not relevant or are marginally relevant at best and unduly burdensome.

## II.     DISCUSSION

Federal Rule of Civil Procedure 37 governs motions to compel discovery, which directs that the scope and limits of discovery are defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides, in relevant part: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[7] Courts look to Federal Rule of Evidence 401 in determining relevance, which states that information is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and, the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Estate of Eckelberry v. CSX Transp., Inc.*, Civ. No. 18-365, 2019 WL 13199277 (W.D. Pa. Apr. 3, 2019). Even so, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The burden of establishing the relevance of discovery sought rests with the moving party.

> When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1). If the moving party meets this initial burden, the burden then shifts to the opposing party

---

7       Rule 26(b)(1) was amended in 2015. At that time, the provision authorizing courts to order discovery of any matter "relevant to *the subject matter involved in the action*" was removed, while retaining the narrower formulation "relevant to *any party's claim or defense*" to govern the parties' scope of discovery. Fed. R. Civ. P. 26(b)(1) (emphasis added). Also removed from the text of Rule 26(b)(1) at that time was the "reasonably calculated to lead to the discovery of admissible evidence" standard. Compare Fed. R. Civ. P. 26(b)(1) (2000) *with* Fed. R. Civ. P. 26(b)(1) (2015); *see also Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 820-21 (W.D. Pa. 2016).

> to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019) (quoting *Wright v. City of Philadelphia*, 2017 WL 1541516, at *1 (E.D. Pa. Apr. 28, 2017)).

*Plump v. La Salle Univ.*, No. 19-cv-4579, 2020 WL 3250532, at *2 (E.D. Pa. June 15, 2020). "The parties and the court have the collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b)(1), 2015 Advisory Committee Notes.  When determining whether a discovery request is proportional to the needs of the case, courts consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).  The determination of the limits of discovery is within the sound discretion of the court and is case-specific. *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019).

Plaintiffs allege violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3, so relevant evidence for these types of claims falls into two broad categories: first, direct evidence that the Defendants entered into an unlawful agreement; and second, circumstantial evidence such as consciously parallel behavior along with "plus factors" that permit an inference of unlawful collusion. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004). Moreover, the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA") also contributes to supplying the contours of what foreign conduct is of consequence in determining whether Defendants unlawfully conspired to fix MDI and TDI prices in the United States in violation of the Sherman Act.  Indeed, the FTAIA excludes from the Sherman Act's reach "conduct involving trade or commerce (other

than import trade or import commerce) with foreign nations" unless the conduct "has a direct, substantial, and reasonably foreseeable effect" on domestic commerce. 15 U.S.C. § 6a(1). Therefore, courts have held that commercial activities taking place abroad are outside the scope of the Sherman Act and thus not of consequence in determining Plaintiffs' claims if the conduct "adversely affect[s] only foreign markets." *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004). Such foreign conduct would only fall within the purview of the Sherman Act if it had "a direct, substantial, and reasonably foreseeable effect" on domestic commerce. 15 U.S.C. § 6a(1). *See Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640, 2020 WL 7779017 (N.D. Cal. Dec. 31, 2020) ("foreign conduct can sometimes be relevant evidence of domestic conduct. The clearest example of this is an international price-fixing conspiracy . . . .") (citing *In re Aspartame Antitrust Litig.*, No. 2:06-cv-1732, 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008) (citing cases)).

Although Plaintiffs contend that Objecting Defendants' reliance on the FTAIA is "mistaken," Plaintiffs offer nothing more than the tautology that the FTAIA "does not prohibit the discovery of information that is otherwise discoverable," and that the FTAIA does not preclude discovery related to foreign commerce relevant to antitrust claims alleging a domestic injury. (ECF No. 795 at 4) (citing *Aspartame*, 2008 WL 2275531, at *2; *Urethane*, 261 F.R.D. at 575). True enough. Defendants do not dispute this point[8] but merely assert that the FTAIA supplies the relevance standard for the discovery of such foreign conduct, necessitating a showing that such foreign conduct must have "a direct, substantial, and reasonably foreseeable effect" on domestic

---

8      Objecting Defendants do dispute Plaintiffs' reliance on earlier district court decisions that used the "reasonably calculated to lead to the discovery of admissible evidence" standard that has since been removed from Fed. R. Civ. P. 26(b)(1), contending that such decisions are "incomplete," "erroneous," and contrary to the advisory committee's pervasive and continuing concerns about the abuse of discovery." *See Cole's Wexford Hotel*, 209 F. Supp. 3d at 822-23. While the removal of the "reasonably calculated" standard from Rule 26(b)(1) does alter the presently applicable scope of discovery, neither Plaintiffs nor Objecting Defendants address how that change impacts whether specific items are discoverable here, so the Court will not delve into that issue either.

commerce.  *See* 15 U.S.C. § 6a(1).  Objecting Defendants note that they have not objected to these discovery requests as irrelevant *per se* simply because they seek to elicit information regarding foreign conduct. Rather, Objecting Defendants contend that such foreign conduct is relevant, and thus discoverable, only if it has "a direct, substantial, and reasonably foreseeable effect" on domestic commerce and is otherwise proportional to the needs of the case.

The Court agrees with Objecting Defendants' understanding of the relevant geographic scope of discovery here. Moreover, the Court notes that Objecting Defendants represent that they (at least BASF SE) "produced large numbers of documents about overseas activities with a connection to U.S. commerce" and will continue to do so.  (ECF No. 781 at 7).  Plaintiffs nonetheless take generalized issue with certain of Objecting Defendants' interrogatory responses.

With the foregoing background and principles in mind, the Court now turns to the specific interrogatories at issue. The Court notes that while the parties address each interrogatory at issue in categorical fashion, their principal arguments are framed generally around relevance and burdensomeness. The Court addresses each category in turn.

### (i) Identities and Contact Information of Foreign Personnel with Managerial Responsibility for MDI or TDI Production Volumes and Prices

Plaintiffs move to compel responses to Interrogatory Nos. 1 and 2, which seek to elicit the identities and contact information of personnel with managerial responsibility for MDI and TDI prices and production levels. BASF SE and Huntsman object. Though, while doing so, they represent that they provided this information for operations with "more than a *de minimis* connection" to the United States.  (ECF No. 781 at 11).  BASF SE supplied the names and job titles of ten of its European employees whose responsibilities "reasonably may have impacted the U.S.," (ECF No. 781 at 11; ECF No. 762-5 at 13), along with the files of eleven custodians who

worked outside of the United States. (ECF No. 781 at 11; ECF No. 782, ¶ 28). Huntsman supplied the name of a European-based employee and document custodian who had responsibility for certain swap transactions that included transactions that occurred in the United States. (ECF No. 781 at 11; ECF No. 783, ¶ 17). Plaintiffs remain unsatisfied notwithstanding these responses.

In the Court's view, the identities of foreign personnel who had managerial responsibilities reasonably understood *to affect* the market for MDI and TDI in the United States are relevant and provide a starting point for exploring the scope of their responsibilities, activities, and interactions with other potentially relevant persons. However, other than seeking an order compelling Objecting Defendants to broaden the scope of their responses generally, Plaintiffs do not proffer any factual predicate or otherwise propose how to discern who among Objecting Defendants' executives *may potentially affect* prices of MDI or TDI in the United States to satisfy their burden that the information they seek to compel is relevant. *Atkinson*, 414 F. Supp. 3d at 744. To force BASF SE and Huntsman to cast a broader net at this juncture, considering the parties' prior agreements and understandings on this topic and Objecting Defendants' significant efforts to produce similarly responsive documents over the past two years, would have the practical result of imposing a speculative, overly broad, duplicative, and unduly burdensome global obligation governing the scope of their responses to Interrogatory Nos. 1 and 2. Plaintiffs have not established that the broader responses they seek to compel would be relevant, and, even if they were relevant, not sufficiently relevant to justify and outweigh the burden of searching or re-searching for and producing such information. Accordingly, Plaintiffs' Motion to Compel is denied to the extent Plaintiffs seek to compel BASF SE and Huntsman to supply global responses to Interrogatory Nos. 1 and 2 without an actual, as opposed to a speculative, connection to the MDI and TDI market in the United States.

### (ii) Meetings and Communications Between Competitors about MDI or TDI

Plaintiffs move to compel responses to Interrogatory Nos. 5 and 15,[9] which seek to elicit information pertaining to meetings (including trade association meetings) and communications, globally, with other competitors concerning various enumerated aspects of MDI or TDI.  Again, BASF SE and Huntsman object, contending that they already produced documents and information reflecting such meetings or communications with a connection to the United States even if occurring abroad, and that to abide by Plaintiffs' broader discovery demands here would force them to search for and provide irrelevant information at great burden.  (ECF No. 781 at 11).

Plaintiffs do not proffer any factual predicate or otherwise demonstrate the relevance of particular meetings or communications to support their Motion.  Instead, Plaintiffs merely posit a generalized notion that any meeting or communication between competitors that *may potentially affect* the market for MDI or TDI in the United States is relevant and discoverable.  Once again, Plaintiffs have not established that the expanded responses they seek are, in fact, relevant; and, even if they are relevant, that they are sufficiently relevant to justify and outweigh the burden of searching and re-searching for and producing such information.  Accordingly, Plaintiffs' Motion is denied to the extent Plaintiffs seek to compel BASF SE and Huntsman to supply global responses to Interrogatory Nos. 5 and 15 without an actual, as opposed to possible or speculative, connection to the market for MDI and TDI in the United States.

### (iii) MDI and TDI Products, Product Costs, and Pricing Factors

Plaintiffs move to compel responses to Interrogatory Nos. 3, 6, and 7, which seek to elicit information pertaining to the names of MDI or TDI products, costs to manufacture those products,

---

[9] These same interrogatories were propounded to the Foreign Defendants at Interrogatory Nos. 4 and 11.

11

and factors that influence pricing of those products. Huntsman is the sole Defendant to object to these interrogatories based upon geographic limits, contending that its MDI imports were too insubstantial to affect the market in the United States and that Plaintiffs failed to identify any customer communications blaming its overseas production issues for price increases in the United States.

Plaintiffs respond that Huntsman's products, production costs, and pricing factors are relevant. The Court agrees. The Court is unpersuaded at this juncture by Huntsman's argument that it should be excused from identifying its foreign-produced products and their production costs and pricing factors simply because its foreign production volume purportedly makes up approximately 2% of its U.S. production. While Huntsman's imports may or may not be *de minimis* in proportion to its overall contribution to the supply of MDI or TDI in the United States, the requested information is relevant, albeit potentially marginally so, to discern the aggregate domestic supply of such products. Moreover, Huntsman's costs and pricing factors may corroborate or refute the veracity of its explanations for price increases as conveyed to customers. Huntsman has not demonstrated, at least on the current record, how responding to these interrogatories would be burdensome or that the burden of producing this information is not justified in proportion to the needs of the case. *Atkinson*, 414 F. Supp. 3d at 744. Accordingly, Plaintiffs' Motion is granted to the extent Plaintiffs seek to compel Huntsman to include its foreign products, costs, and pricing factors in its responses to Interrogatory Nos. 3, 6, and 7.

    **(iv)**     **MDI/TDI Plants, Plant Disruptions, and Production Activity**

Plaintiffs move to compel responses to Interrogatory Nos. 9, 10, and 11, which seek to elicit information pertaining to plants, production activity (including volume of U.S. sales generated), declarations of *force majeure*, and other plant disruptions. Huntsman and Dow object,

12

contending that they already produced information about overseas production activity with a "demonstrable effect in the U.S." and that Plaintiffs identify no evidence of any connection between U.S. price increases and production disruptions at Dow's and Huntsman's foreign plants.

Plaintiffs assert that supply interruptions abroad can impact supply and pricing in the United States even if a particular deactivated plant did not directly supply the U.S. market. Plaintiffs further contend that constraining global supply by an aberrational increase in plant interruptions during the relevant time-period enabled Defendants to unlawfully inflate U.S. prices. (ECF No. 377, ¶¶ 8, 9, 13, 103, 144-51, 162). Plaintiffs also contend that documents produced thus far demonstrate that U.S. employees monitored supply and outages by their international competitors. (ECF No. 760, ¶ 12). In the Court's estimation, on the current record, Plaintiffs have made the requisite showing of relevance while Dow and Huntsman have not established otherwise. Moreover, Dow and Huntsman have not demonstrated how they would be unduly burdened by responding as such. Accordingly, Plaintiffs' Motion is granted to the extent Plaintiffs seek to compel Dow and Huntsman to supply more fulsome responses to Interrogatory Nos. 9, 10, and 11.

### (v) Joint Ventures and Swaps

Plaintiffs move to compel responses to Interrogatory Nos. 8 and 12,[10] which seek to elicit information pertaining to joint ventures and product swaps. Huntsman objects and refuses or limits its responses pertaining to both joint ventures and swaps. BASF SE objects and refuses or limits its responses pertaining to swaps. Huntsman contends that it already supplied information regarding joint ventures in response to Interrogatory No. 5 (pertaining to communications with competitors) to the extent such communications impacted the U.S. market. Both Huntsman and

---

10   These interrogatories were directed to the Foreign Defendants at Interrogatory Nos. 6 and 10.

BASF SE contend that they already supplied information about foreign swaps that could reasonably be understood to affect the market in the United States. Once again, the dispute between the parties centers upon whether certain foreign conduct does or does not affect the market of MDI or TDI in the United States.

Plaintiffs assert that information pertaining to foreign joint ventures may provide a pretext for anticompetitive, inter-competitor communications affecting the MDI/TDI market in the United States. The Court agrees and concludes that such information is relevant here. The Court also concludes that this information is sufficiently relevant to justify the burden placed upon Huntsman to respond. Such joint ventures by their nature are more formal and substantial undertakings with clearer and likely more structured parameters, etc., so gathering information about them to formulate responses to this interrogatory is more readily known, more specifically defined, more finite, and, therefore, less burdensome than searching for and gathering information pertaining to meetings and communications generally. On the current record, the Court finds that Huntsman has not established that responding more broadly would pose an undue burden in proportion to the needs of the case. Accordingly, the Court grants Plaintiffs' Motion to the extent Plaintiffs seek to compel Huntsman to supply more fulsome responses to Interrogatory No. 8.

As for Interrogatory No. 12 relating to swaps, Plaintiffs contend that Defendants promoted their common goal of restricting global supplies of MDI and TDI by entering into swap agreements whereby one competitor would temporarily supply another competitor with a specified amount of MDI/TDI during a specified period (*e.g.*, while a plant was down, declaration of *force majeure*, etc.). (ECF No. 377, ¶¶ 166, 168). Plaintiffs also contend that documents previously produced demonstrate that foreign swaps directly affected domestic supply. (ECF No. 760, ¶¶ 13, 14). As with joint ventures, the Court agrees that foreign swaps are relevant, even if the direct effect on

14

the market in the United States is not fully apparent, because these endeavors demonstrate formalized relationships between competitors, relate to the sources and possible volume of supply (particularly during times of plant disruptions that Plaintiffs contend to be unusually frequent during the relevant period), and provide avenues for pretextual communications with one another beyond the swap(s) at issue. Although it is difficult on the present record to determine how consequential such information will prove to be, Huntsman and BASF SE have not demonstrated that the burden of searching for and producing this information is greater than the proportional needs of the case. Accordingly, the Court grants Plaintiffs' Motion to the extent Plaintiffs seek to compel Huntsman and BASF SE to supply more fulsome responses to Interrogatory No. 12.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Regarding the Geographic Scope of Defendants' Interrogatory Responses is granted in part and denied in part.

### ORDER OF COURT

Accordingly, this 26th day of January 2023, upon consideration of Plaintiffs' Motion to Compel Regarding the Geographic Scope of Defendants' Interrogatory Responses, (ECF No. 758), IT IS ORDERED that said Motion is GRANTED IN PART AND DENIED IN PART as follows:

1. The Motion is GRANTED to the extent Plaintiffs seek to compel Defendant Huntsman International LLC to include its foreign products, costs, and pricing factors in its responses to Interrogatory Nos. 3, 6, and 7.

2. The Motion is GRANTED to the extent Plaintiffs seek to compel Defendants Huntsman International LLC and Dow Chemical Company to include information in response to Interrogatory Nos. 9, 10, and 11, pertaining to their plants, production activity,

declarations of *force majeure*, and other plant disruptions, even if a particular deactivated plant did not directly supply the U.S. market.

3. The Motion is GRANTED to the extent Plaintiffs seek to compel Defendant Huntsman International LLC to include information pertaining to foreign joint ventures in response to Interrogatory No. 8.

4. The Motion is GRANTED to the extent Plaintiffs seek to compel Defendant Huntsman International LLC to include information pertaining to foreign swaps in response to Interrogatory No. 12.

5. The Motion is GRANTED to the extent Plaintiffs seek to compel Defendant BASF SE to include information pertaining to foreign swaps in response to Interrogatory No. 10 (directed to Foreign Defendants).

6. The Motion is DENIED in all other respects.

It is FURTHER ORDERED that Plaintiffs and those Objecting Defendants compelled to supplement interrogatory responses as a result of this Memorandum and Order shall confer and submit a joint status report by February 9, 2023 informing the Court as to the anticipated time period required to comply herewith.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record