IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION )<br>)<br>) | Master Docket Misc. No. 18-1001 |
| | MDL No. 2862 |
| This Document Relates to:<br>All Cases )<br>) | |

## MEMORANDUM ORDER

Presently before the Court is Defendants' Motion to Take Plus-Factor Discovery from Five Class Members (ECF No. 1068). The Court also considered the legal memoranda, declarations, and other documentation the parties filed in support of their respective positions. (ECF Nos. 1069, 1070, 1071, 1072, 1083, 1084, 1085, 1086, 1089, and 1090). The Motion will be GRANTED for the reasons set forth herein.

This pending motion is the latest in an ongoing string of disputes pertaining to whether certain "downstream" products, markets, and activities are relevant and discoverable in this multi-district litigation concerning an alleged conspiracy to reduce supply and increase prices in the U.S. market for methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), precursor ingredients for the manufacture of polyurethane foam and thermoplastic polyurethanes. (*See* Orders of Court at ECF Nos. 359, 430, and 1039). This time, Defendants seek to elicit information from five absent putative class members regarding their downstream conduct for the purpose of showing that such conduct is "commonplace" and "pro-competitive" and supplies non-collusive explanations of Defendants' own like-type conduct and not of the plus-factor variety that Plaintiffs contend permits an inference of unlawful collusion when considered in conjunction with consciously parallel behavior. *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004). Plaintiffs oppose such discovery contending that this line of "downstream" inquiry is

1

not relevant, that it is improper to seek such discovery from unnamed class members, and that it is unduly burdensome.

Once again, the Court starts is analysis with Federal Rule of Civil Procedure 26(b)(1), which provides, in pertinent part, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[1] By its own terms, this rule permits broad discovery but also expressly pertains to parties. Some courts have not applied the broad scope of Rule 26(b) to individual class members who are absent from the litigation. *See, e.g., Sessions v. Owens-Illinois, Inc.*, No. 1:07-cv-1669, 2011 WL 2415387, at *2 (M.D Pa. June 13, 2011) (citing cases). The Third Circuit has not yet directly addressed this issue, though several district courts have endorsed consideration of various factors before permitting such discovery from absent class members, including: (1) whether the requested information is relevant to common questions; (2) whether the information is not available from the class representative parties; and (3) whether the discovery requests are tendered in good faith and not unduly burdensome. *Id*. While these factors are not mandated by extant Third Circuit precedent,[2] they incorporate prudential considerations already built into the Rule 26(b) framework and appear helpful here.

---

[1] In addition to Rule 26(b), the Court is also empowered by Fed. R. Civ. P. 23(d) to determine the course of proceedings and prescribe measures in class actions to prevent undue repetition or complication. The Court also possesses authority to quash or modify a subpoena directed to a non-party pursuant to Fed. R. Civ. P. 45. Within this framework, determining the scope of discovery is within the sound discretion of the Court and is a case-specific determination. *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019).

[2] These factors are derived from decisions issued by the Seventh Circuit in *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971), *cert. denied*, 405 U.S. 921 (1972) and *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974). *See In Re Allergan Generic Drug Pricing Securities Litigation*, No. 2:16-9449, 2021 WL 236594, at *2 (D.N.J. Jan. 25, 2021). *But cf. In Re Modafinil Antitrust Litigation*, 837 F. 3d 238, 256 n. 17 (3d Cir. 2016).

First, in the Court's estimation, the most important consideration as set forth in both Rule 26(b) and by the Seventh Circuit in *Brennan* and *Clark* and their progeny is whether the desired discovery is relevant to common questions. Information is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and, the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Estate of Eckelberry v. CSX Transp., Inc.*, Civ. No. 18-365, 2019 WL 13199277 (W.D. Pa. Apr. 3, 2019). This Court has already concluded that certain "downstream" conduct can be relevant, stating:

> The point of Defendants' newly sought inquires, as the Court understands it, is focused on Defendants' behavior either directly through Plaintiffs' comments to others concerning Defendants' *force majeure* declarations, <u>or by way of comparison to the behavior of Plaintiffs and others</u> as being consistent with or aberrational to industry norms and standards within the relevant MDI and TDI markets to provide non-collusive explanations for such behavior. On the present record, the Court concludes that such limited inquiries do not transgress *Hanover Shoe* nor violate the Court's July 20, 2020 Order [ECF No. 359].

*See* February 9, 2024 Memorandum and Order of Court (ECF No. 1039, at 9) (emphasis added).

Defendants' newest requested downstream inquiries come after Plaintiffs took the deposition of Domenic Sinopoli, a former employee of Defendant Wanhua Chemical (America) Co., Ltd. ("WCA") and before that an executive with downstream polyurethane foam manufacturer Woodbridge Foam Corp.[3], and asked him a series of questions pertaining to Woodbridge's downstream marketplace conduct. (ECF No. 1072-1). Although Plaintiffs direct the Court's attention to portions of Mr. Sinopoli's deposition testimony related to his purported involvement

---

[3] When working for WCA, Mr. Sinopoli's duties focused on clients in the automotive industry, flexible foam industry, and the "CASE" market which encompassed a segment of urethanes including coatings, adhesives, sealants and elastomers. (ECF No. 1072-1, pp. 25-26). Prior thereto, Mr. Sinopoli worked for Woodbridge Foam Corp., a Canadian affiliate of The Woodbridge Company, where he held varied positions starting with R&D Engineer and ending with Executive Director. (*Id.*, p. 37).

in a prior price fixing conspiracy and his deletion of text messages, inquires that seem germane to his credibility and for possible impeachment, the fact remains that Plaintiffs also delved extensively into Mr. Sinopoli's communications and other interactions with competitors in the downstream foam markets while working for Woodbridge. (ECF No. 1072-1, pp. 46-51, 59-63). Inquiries into such topics to elucidate circumstantial plus-factors cannot elicit relevant evidence for Plaintiffs but not for Defendants. Ultimately, it remains to be seen whether such evidence, when reviewed the context of a complete record, will be admissible and material for summary judgment or otherwise. The Court has already forewarned the parties that "interactions with competitors and customers concerning matters unrelated to Defendants and in downstream markets seems far afield of the target" (ECF No. 1039, p. 9), and the Court reminds the parties again here that Mr. Sinopoli's deposition testimony in many or all respects may be similarly off-target. Regardless, such downstream interactions with competitors appears relevant to common questions on the present record.

Next, the Court considers whether the information sought by Defendants is not available from the class representative parties. Plaintiffs contend that Defendants already had ample opportunities to discover potentially relevant downstream information from them and any other pertinent information has been available from the public record in *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968 (N.D. Ohio 2015). However, *In re Polyurethane Foam Antitrust Litig.* involves a totally different time frame (1999-2012 versus 2016 to present) and such information sources are not substantially equivalent substitutes for eliciting the requested discovery directly from the five absent putative class members identified by Defendants' motion.

Finally, the Court considers whether Defendants' desired discovery requests are tendered in good faith and not unduly burdensome. Plaintiffs note that Defendants' present motion was

4

filed after Defendants were informed that Plaintiffs intended to file a spoliation motion concerning Mr. Sinopoli's deletion of text messages, seemingly to suggest that the instant motion was being filed out of spite or in retaliation. Yet, there is no basis in the record to support that insinuation. Plaintiffs' delving into Mr. Sinopoli's interactions with other downstream competitors is the more plausible explanation for Defendants' pursuit. Moreover, one of the principal arguments for imposing a heightened standard for permitting discovery directed to absent class members is the policy goal of avoiding a multiplicity of actions and its hindrance by encouraging exclusion from class-based adjudication when absent class members are forced to participate in the discovery process, *see In re Allergan Generic Drug Pricing Securities Litigation*, 2021 WL 236594, at *3, yet here, the characteristics of the putative class (particularly the five absent putative class members) and the nature of the key legal and factual issues germane to these discovery requests, notably, interactions among and between market participants, present a very different circumstance than, say, a mass tort class, such that absent class members here would not be susceptible to exclusion if required to respond to limited and targeted discovery requests propounded in the later stages of discovery in this case. Moreover, the relevance and application of such downstream conduct in relation to circumstantial "plus-factors" pertaining to parallel behavior in the MDI and TDI markets has been a hotly contested issue thus far and its exact boundaries remain uncertain, particularly on the present record.

Nor is there any basis on the current record to conclude that propounding targeted discovery on this issue to five absent putative class members would pose an undue burden. The parties have exchanged millions of pages of documents and taken a multitude of depositions thus far. In that context, propounding targeted discovery requests to five absent putative class members (characterized as some of the largest) after working with Plaintiffs to narrow the scope of those

requests seems reasonable and proportionate to the needs of the case. Beyond characterizing these discovery requests as "overbroad and irrelevant," Plaintiffs do not identify any specific and particularized reasons why they are unduly burdensome, and the present record simply does not support such a finding.[4]

For the foregoing reasons, the Court concludes that Defendants demonstrated good cause to propound targeted discovery regarding downstream market conduct directed to five specified absent putative class members.

## ORDER

THEREFORE, this 19th day of August 2024, upon consideration of Defendants' Motion to Take Plus-Factor Discovery from Five Class Members, it is ORDERED that said Motion (ECF No. 1068) is GRANTED and that Defendants have leave to serve subpoenas substantially in the form set forth in ECF No. 1072-6 upon The Woodbridge Company, Carpenter Co., Elite Comfort Solutions LLC, FXI, Inc. (f/k/a Foamex LP), and Future Foam Inc.

/s/ *W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:  All Counsel of Record

---

[4] Nothing in this Memorandum and Order of Court would prevent any of these absent putative class members from presenting such arguments themselves with adequate evidentiary support.