IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION | : : : | Master Docket Misc. No. 18-1001 |
| | | MDL No. 2862 |

*This Document Relates to All Actions*

## <u>REPORT AND RECOMMENDATION</u>

Hon. Thomas J. Rueter (Ret.)                                June 3, 2025
Special Master

## I.        BACKGROUND

Presently before the Special Master for resolution is Plaintiffs' Discovery Motion

No. 5 -- Motion to Compel Defendant Huntsman to Produce Documents Withheld as Privileged

(the "Motion," ECF No. 1076) and Memorandum of Law in support thereof ("Pls.' Mem.," ECF

No. 1077), defendant Huntsman International LLC's ("Huntsman") Opposition to thereto (ECF

No. 1087, the "Opposition"), and Plaintiffs' Reply (ECF No. 1091). By Order dated April 23,

2025, the Honorable W. Scott Hardy referred the Motion to the undersigned for resolution (ECF

No. 1186).

In the Motion, Plaintiffs move to compel Huntsman to produce 296 documents in

Huntsman's seventh privilege log improperly withheld on the following grounds: (1) the

attorney-client privilege (16 deficient entries); (2) business advice (255 deficient entries); and (3)

work product (25 deficient entries) (collectively, the "Documents"). In the alternative, Plaintiffs

request that the Documents be submitted to the Special Master for in camera review. (Pls.' Mem.

at 1.) Huntsman did not consent to the instant in camera review arguing that Plaintiff has failed

to present evidence sufficient to support a reasonable belief that the in camera review may yield

evidence that establishes the privilege's inapplicability. (Opposition at 1, 9 (citing <u>Goark v.</u>

Timek, 989 F. Supp. 2d 378, 400 (D.N.J. 2013)), and requests that the Motion be denied[1]. Id. At the direction of the undersigned, Huntsman submitted the Documents to the Special Master on May 5, 2025 for in camera inspection, along with its relevant privilege log (the "Privilege Log") and a list identifying individuals named in the Documents by position/title. The undersigned has considered all submissions of the parties and all attachments thereto and has issued this Report and Recommendation within thirty (30) days of receipt of the Documents.

## II.    DISCUSSION

### A.    Legal Standards

**1.    The Attorney-Client Privilege/Business Advice.** Plaintiffs assert that Huntsman improperly withheld documents on the grounds of the attorney-client privilege, see Motion Ex. A – 16 entries, and documents that involve business advice rather than legal advice, see Motion Ex. B – 255 entries. "The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quotation omitted). The party asserting the privilege bears the burden of proving its applicability. Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 126 (3d Cir. 1986); Fed. Trade Comm'n v. AbbVie, Inc., 2016 WL 4478803, at *2 (E.D. Pa. Aug. 25, 2016). "A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and

---

[1]    Although Huntsman does not agree that an in camera review is appropriate, Huntsman does agree that an in camera review may be performed by a special master. (Opposition at 10 n.8.) Huntsman requests that the costs of any in camera review should be borne solely by Plaintiffs. Id. at 10.

certain reasons for preserving their confidentiality." <u>Parisi v. State Farm Mut. Auto. Ins. Co.</u>, 2017 WL 4403326, at *4 (W.D. Pa. Oct. 2, 2017). <u>See also</u> <u>SmithKline Beecham Corp. v. Apotex Corp.</u>, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (same).

Plaintiffs cite to <u>Sodexomagic, LLC v. Drexel Univ.</u>, 291 F. Supp. 3d 681 (E.D. Pa. 2018), in which the court held that the "party seeking to assert the privilege must 'identify [a] specific attorney with whom a confidential communication was made' in order to satisfy" its burden of establishing the applicability of the attorney-client privilege. <u>Id.</u> at 685 (quoting <u>SmithKline</u>, 232 F.R.D. at 477). (Pls.' Mem. at 5-6.) However, courts have held that it is not always fatal to an assertion of the attorney-client privilege for corporate employees not to identify a specific attorney in their internal communications. <u>See</u> <u>Gionfriddo v. Wal-Mart Stores E. LP</u>, 2010 WL 11711433, at *1 n.1 (E.D. Pa. Sept. 1, 2010) (denied plaintiff's motion to compel production of a document described on defendant's privilege log as "Correspondence from Wal-Mart Store #2141 to Wal-Mart Legal Department"). The court in <u>In re Abilify (Aripiprazole) Prod. Liab. Litig.</u>, 2017 WL 6757558 (N.D. Fl. Dec. 29, 2017), explained as follows:

> With regard to those instances where a specific name is not identified, this is not fatal to the assertion of privilege so long as it is evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney. Indeed, it is not uncommon within a complex organization that when a request for information is made by outside counsel communications among corporate employees transmitting the request for information frequently will simply refer to the request coming from outside counsel as opposed to a specific attorney or law firm. **The important inquiry from a privilege perspective is the nature of the communication and the context in which it is made and not necessarily the precise identification of the source of the request for information.**

<u>Id.</u> at *6 (emphasis added). A party's failure to identify a specific attorney is not necessarily fatal to the assertion of the attorney-client privilege especially where, as here, the court has examined

the context of documents "where the source of the legal request or legal advice is identified as

legal department or outside counsel and make a determination as to whether the document is

privileged . . . because the document transmits or requests legal advice or the document contains

a request by an attorney for information to be used in threatened litigation or ongoing litigation."

Id.

Lastly, "[a] document need not be authored or addressed to an attorney in order to

be properly withheld on attorney-client privilege grounds. . . . In the case of a corporate client,

privileged communications may be shared by non-attorney employees in order to relay

information requested by attorneys." SmithKline Beecham Corp., 232 F.R.D. at 477 (quotation

omitted).

Counsel, especially in-house counsel, often play dual roles of legal counsel and

business advisor, rendering legal advice often difficult to distinguish from business advice in a

corporate setting. For the attorney-client privilege to apply, the "primary purpose of the

communication at issue must be to gain or provide legal assistance." Paramount Fin. Commc'ns,

Inc. v. Broadridge Investor Commc'n Sols., Inc., 2016 WL 5404462, at *2 (E.D. Pa. Sept. 28,

2016). Preliminary or red-lined drafts of documents reflecting attorney-client communications

are protected from disclosure since they reveal not only client confidences, but also legal advice

and opinions of attorneys, all of which are protected by the attorney-client privilege. Id. Certain

categories of documents are generally not privileged even though they include communications

with an attorney and include the following: (1) underlying facts; (2) communications seeking

business advice; (3) copying any attorney on an email does not make the email privileged; and

(4) attaching a communication to a privileged document does not make the attachment

privileged. In re Human Tissue Prod. Liab. Litig., 255 F.R.D. 151, 164 (D.N.J. 2008), appeal

denied, judgment aff'd, 2009 WL 1097671 (D.N.J. April 23, 2009). "Where a lawyer provides non-legal business advice, the communication is not privileged." Wachtel v. HealthNet, Inc., 482 F.3d 225, 231 (3d Cir. 2007). However, when a decision or communication involves consideration of various business concerns, the attorney-client privilege applies if the decision "was infused with legal concerns and was reached only after securing legal advice." Se. Pa. Trans. Auth. v. CaremarkPSC Health, L.P., 254 F.R.D. 253, 258 (E.D. Pa. 2008) (quotation omitted).

    2.    **Work Product Doctrine**. "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . . or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party asserting the work product doctrine bears the burden of proving its applicability. Fed. Trade Comm'n v. AbbVie, Inc., 2016 WL 4478803, at *6 (E.D. Pa. Aug. 25, 2016). The work product doctrine provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). See Upjohn Co. v. United States, 449 U.S. 383, 399 (1981); Hickman v. Taylor, 329 U.S. 495, 509-12 (1947). See also In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003) (The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.") (quotation omitted). See also King Drug Co. of Florence, Inc. v. Abbott Labs., 2023 WL 2646926, at *1 (E.D. Pa. Mar. 27, 2023) (same).

    "[T]he Third Circuit makes clear that the materials must be prepared in anticipation of litigation, and not in the ordinary course of business" for the work product privilege to apply. Fouad v. The Milton Hershey Sch. and Trust, 2020 WL 3265245, at *13

(M.D. Pa. June 17, 2020) (citation omitted). Distinguishing between routine internal investigations and work product for litigation purposes, is often difficult in the context of the application of the work product doctrine. As noted by Plaintiffs, courts have stated that "if the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." Heinzl v. Cracker Barrel Old Country Store, Inc., 2015 WL 6604015, at *7 (W.D. Pa. Oct. 29, 2015).

### B.    The Documents

The parties detailed the protracted history of negotiations and agreements regarding Huntsman's productions and versions of the Privilege Log. Considering all of the parties' arguments and applying the legal principles outlined herein, the Special Master determined that conducting an in camera review of the Documents was the most prudent and expeditious way to settle the disputes between the parties and to move this case forward. The undersigned notes that the majority of the documents contain only partial redactions; only a minority of the documents are redacted in full. Also, a fair number of the documents are duplicates, provided by different sources. The undersigned has carefully reviewed each of the Documents and makes the following recommendations:

1.    **Plaintiffs' Appendix A – Failure to Identify Attorney.** With respect to the sixteen Documents identified in Plaintiffs' Appendix A, Plaintiffs argue that these Documents were improperly withheld because Huntsman "failed to identify the specific attorney with whom an allegedly confidential communication was made." (Pls.' Mem. at 5.) The entries on the Privilege Log for many of the Documents refer to "Huntsman legal team" and/or "requesting information to assist in rendering legal advice." Most of these entries involve

instances where non-legal employees are, inter alia, discussing issues which they are referring to Huntsman's legal department for review and advice, or gathering documents/information for attorneys within Huntsman's legal department. In these entries, while a specific in-house attorney is not named, there is a sufficient "nexus" between the communication and "an attorney." Schwarz Pharma, Inc. v. Teva Pharmaceuticals USA, Inc., 2007 WL 2892744, at *3 (D.N.J. Sept. 27, 2007).

The Special Master has carefully reviewed these Documents and concludes that Huntsman properly asserted the attorney-client privilege with respect to the Documents. The Special Master recommends that Plaintiffs' objections to Huntsman's assertions of privilege with respect to these sixteen Documents be **DENIED** and Huntsman's assertions of privilege be **SUSTAINED**.

2.     **Plaintiffs' Appendix B -- Documents Reflecting Routine Business Advice and Not Legal Advice.** With respect to the 255 documents identified in Plaintiffs' Appendix B, Plaintiffs argue that these documents were improperly withheld as they are "communications that facially appear to involve business advice rather than legal advice." (Pls.' Mem. at 7.)

In these Documents, specific in-house counsel and/or outside counsel were involved in the communication. After careful review of the Documents, the Special Master recommends that Plaintiffs' objections to Huntsman's assertions of privilege over the following Documents be **SUSTAINED** as the undersigned finds that the primary purpose in these communications was not to gain or to provide legal assistance and recommends that Huntsman produce the following Documents: Bates numbers: HTN-00456207, HTN-00516775, and HTN-00531401. Additionally, the two lines of redacted language in Document Bates number HTN-

00531416 is not in English. While other similar Documents were accompanied by a translation, this Document was not. Huntsman shall provide the Special Master with the translation of the redacted language in this Document and the Special Master shall issue a Supplemental Report and Recommendation if this Document must be produced.

With the exception of the Documents listed above, the redacted portions of the remaining Documents in this category relate to legal advice. The Special Master recommends that Plaintiffs' objections to Huntsman's assertions of privilege with respect to these Documents be **DENIED** and Huntsman's assertions of privilege be **SUSTAINED.**

**3.      Plaintiffs' Appendix C – Work Product Privilege.** With respect to the twenty-five documents identified in Plaintiffs' Appendix C, Plaintiffs argue that these documents, to which Huntsman asserts both the attorney-client and work product privileges, "do not appear to contain legal advice nor were [they] prepared in anticipation of litigation." (Pls.' Mem. at 9.) After careful review of these Documents, the Special Master recommends that Plaintiffs' objections to Huntsman's assertions of privilege with respect to these Documents be **DENIED** and Huntsman's assertions of privilege be **SUSTAINED**

## III.     RECOMMENDATION

AND NOW, this 3rd day of June, 2025, it is respectfully

### RECOMMENDED

that:

1.      Plaintiffs' Discovery Motion No. 5 -- Motion to Compel Defendant Huntsman to Produce Documents Withheld as Privileged be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2.      Plaintiffs' objections to Huntsman's assertions of privilege be

**SUSTAINED IN PART** and **OVERRULED IN PART** as set forth herein.

3.      Huntman's request to be reimbursed by Plaintiffs for attorneys' fees and

costs incurred in defending its claims of privilege with respect to the above Documents be

**DENIED**.


                                        */s/ Thomas J. Rueter*
                                        Hon. Thomas J. Rueter (Ret.)
                                        Special Master

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE: DIISOCYANATES ANTITRUST   :     Master Docket Misc. No. 18-1001
LITIGATION                          :
                                    :     MDL No. 2862
*This Document Relates to All Actions*     :

## O R D E R

AND NOW, this _____ day of _____, 2025, upon consideration of the

Report and Recommendation of Special Master Hon. Thomas J. Rueter (Ret.) dated June 3,

2025, and any objections thereto, the Report and Recommendation is **APPROVED** and

**ADOPTED**, and it is hereby

### ORDERED

      1.     Plaintiffs' Discovery Motion No. 5 -- Motion to Compel Defendant

Huntsman to Produce Documents Withheld as Privileged (the "Motion," ECF No. 1076) is

**GRANTED IN PART** and **DENIED IN PART** for the reasons set forth in the Report and

Recommendation.

      2.     Defendant Huntsman International LLC shall produce to Plaintiffs the

Documents in accordance with the Report and Recommendation within ten (10) days from the

date of this Order.

      3.     Defendant Huntsman International LLC's request to be reimbursed for

attorneys' fees and costs incurred in defending the Motion is **DENIED**.

      BY THE COURT:

      _____

      Hon. W. Scott Hardy
      United States District Judge