**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>*This Document Relates to: All Actions* | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANT COVESTRO LLC, AND FOR APPROVAL OF NOTICE PLAN AND CLAIMS PROCESS**

# TABLE OF CONTENTS

**I. INTRODUCTION** ..... **1**

**II. BACKGROUND** ..... **1**

**III. SETTLEMENT NEGOTIATIONS AND AGREEMENT** ..... **3**

A. Settlement Negotiations and Agreement with COVESTRO LLC ..... 3

B. Definition of the Settlement Class ..... 4

**IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS** ..... **5**

A. Numerosity Is Easily Satisfied ..... 6

B. There Are Common Questions of Law and Fact ..... 6

C. Plaintiffs' Claims Are Typical of the Class ..... 6

D. Plaintiffs Adequately Represent the Class ..... 7

E. The Proposed Settlement Class Satisfies Rule 23(b)(3) ..... 8

F. A Class Action Is the Superior Method of Adjudication ..... 9

G. Settlement Class Counsel Meet the Requirements for Appointment ..... 9

**V. THE SETTLEMENT IS WITHIN THE RANGE OF APPROVAL** ..... **10**

A. The Settlement Is Fair, Reasonable, and Adequate ..... 11

1. The Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class. ..... 11

2. The Settlement was reached after arm's length negotiations ..... 12

3. The Settlement provides adequate relief for the Settlement Class. ..... 13

4. The proposed Settlement treats Settlement Class Members equitably. ..... 15

5. The proposed Settlement alternatively merits preliminary approval under the Third Circuit's pre-2018 factor analysis. ..... 16

**VI. CLAIMS ADMINISTRATION AND NOTICE PLAN .................................................... 19**

A. The Court Should Appoint Endeavor Bank As the Escrow Agent ............................... 19

B. The Court Should Direct Settlement Class Notice to the Class .................................... 19

1. The Robust, Multilayered Proposed Notice Plan Will Provide the Best Notice Practicable. ........................................................................................................ 20

2. Plaintiffs' Proposed Notice Satisfies Rule 23 and Due Process ............................. 22

C. The Proposed Claims Process and Plan of Allocation Are Fair and Reasonable. ......... 22

D. The Court Should Order the Production of Direct Purchaser Customer Contact Information ......................................................................................................... 23

E. Proposed Notice Schedule ........................................................................................ 24

. **VII. CONCLUSION ........................................................................................................ 25**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abramson v. Agentra, LLC*,
2021 WL 3370057 (W.D. Pa. Aug. 3, 2021) ....14

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
No. 09-ML-2007 (C.D. Cal.) ....7

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ....8

*In re Auto. Refinishing Paint Antitrust Litig.*,
2003 WL 23316645 (E.D. Pa. Sep. 5, 2003) ....12

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ....12, 19

*Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
513 F.Supp.2d 322 (E.D. Pa. 2007) ....23

*In re Broiler Chicken Grower Antitrust Litig. (No. II)*,
No. 6:20-md-2977-RJS-CMR (E.D. Okla.) ....7

*In re Cattle and Beef Antitrust Litigation*,
No. 22-md-03031 (D. Minn.) ....7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ....16

*In re Chocolate Confectionary Antitrust Litig.*,
No. 08-md-1935 (M.D. Pa. Dec. 12, 2011) ....5

*In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*,
795 F.3d 380 (3d Cir. 2015) ....5

*Cole's Wexford Hotel, Inc. v. UPMC, et al.*,
No. 10-1609 (W.D. Pa. July 29, 2016) ....5

*Colella v. Univ. of Pittsburgh*,
569 F.Supp.2d 525 (W.D. Pa. 2008) ....10

*Dehainaut v. California Univ. of Pennsylvania*,
2011 WL 3810132 (W.D. Pa. Aug. 29, 2011) ....10

*Dewey v. Volkswagen AG*,
681 F.3d 170 (3d Cir. 2012) ....7

*In re: Domestic Drywall Antitrust Litig.*,
322 F.R.D. 188 (E.D. Pa. 2017)....................5

*In re Farm-Raised Salmon and Salmon Prods. Antitrust Litig.*,
No. 1:19-cv-21551-CMA (S.D. Fla.)....................7

*In re Flonase Antitrust Litig.*,
2013 WL 12148283 (E.D. Pa. Jan. 14, 2013)....................22

*Fond du Lac Bumper, et al, v. Gordon, et al.*,
No. 09-CV-0852 (E.D. Wis.)....................7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................14, 16

*Grier v. Chase Manhattan Auto. Fin. Co.*,
2000 WL 175126 (E.D. Pa. Feb. 16, 2000)....................12

*Hall v. Accolade, Inc.*,
2019 WL 3996621 (E.D. Pa. Aug. 23, 2019)....................11

*Haston v. Resurgent Cap. Servs., L.P.*,
2024 WL 6979747 (W.D. Pa. Jan. 19, 2024)....................11, 16

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)....................8

*Jones et al v. Bain Capital Private Equity et al.*,
No. 20-cv-02892 (W.D.Tenn.)....................7

*In re K-Dur Antitrust Litig.*,
2008 WL 2699390 (D.N.J. Apr. 14, 2008)....................6, 7

*Lazy Oil Co. v. Wotco Corp.*,
95 F.Supp.2d 290 (W.D. Pa. 1997)....................17

*In re Linerboard Antitrust Litig.*,
203 F.R.D. 197,207 (E.D. Pa. 2001)....................6

*In re Linerboard Antitrust Litig.*,
292 F.Supp.2d 631 (E.D. Pa. 2003)....................10, 12, 13

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)....................5

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Co.*,
2014 WL 631031 (E.D. Pa. Feb. 18, 2014)....................5

*In re Nat'l Football League Players' Concussion Inj, Litig.*,
301 F.R.D. 191 (E.D. Pa. 2014) .......... 18

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) .......... *passim*

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 278 (E.D. Pa. 2012) .......... 6, 9, 13

*In re Processed Egg Prods. Antitrust Litig.*,
No. 2:08-md-2002-GEKP (E.D. Pa.) .......... 7

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013) .......... 9

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) .......... 9

*In re Suboxone Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020) .......... 15

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .......... 8, 15, 22

*In re: Urethane Antitrust Litig.*,
No. 04-md-01616 (D. Kan.) .......... 7

*Utah Foam Prods., Inc. v. Bayer A.G. et al.*,
No. 18-cv-0858 (W.D. Pa.) .......... 1

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 5

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .......... 8, 14

*In re Wellbutrin XL Antitrust Litig.*,
2011 WL 3563385 (E.D. Pa. Aug. 11, 2011) .......... 15

**Statutes**

Sherman Act .......... 8

**Other Authorities**

Fed. R. Civ. P. 23 .......... *passim*

Fed. R. Evid. 803 .......... 4

## I. INTRODUCTION

Plaintiffs respectfully move for certification of a Settlement Class and for preliminary approval of a Settlement with Defendant Covestro LLC (the "Settlement"). Plaintiffs also move for approval of the proposed notice plan and claims process. This settlement provides $7,000,000 for the benefit of the Settlement Class and cooperation with document authentication from Covestro LLC. Because the Settlement Class satisfies Federal Rule of Civil Procedure 23(a) and 23(b)(3), Settlement Class Counsel satisfy Rule 23(g), and the settlement is fair and adequate under Rule 23(e), Plaintiffs respectfully request that the Court 1) grant preliminary approval of the Settlement, 2) appoint Interim Co-Lead Counsel as Settlement Class Counsel, 3) certify the Settlement Class, 4) approve the form of notice and the proposed claims process, 5) direct notice of the Settlement to potential members of the Settlement Class, 6) stay all proceedings against Covestro LLC except those relating to approval of the Settlement, and 7) set a date for a final settlement approval hearing.[1]

## II. BACKGROUND

Plaintiffs filed the initial complaint on June 28, 2018, after extensive investigation. *See Utah Foam Prods., Inc. v. Bayer A.G. et al.*, No. 18-cv-0858 (W.D. Pa.) ECF No. 1.[2] Plaintiffs filed an amended class action complaint on February 2, 2019. ECF No. 166 ("CAC"). Plaintiffs filed their second amended class action complaint on September 10, 2020. ECF No. 378 ("SAC"). Plaintiffs' investigation included research into the allegations of an unlawful agreement among

---

[1] Plaintiffs reincorporate their request here for Defendants other than Covestro LLC and BASF Corporation to timely provide class member contact information so that notice can be effectuated. *See* ECF Nos. 1271, 1272. Covestro LLC will separately provide class member contact information pursuant to the terms of the Settlement Agreement, *see* Ex. A to the Hartley Decl.

[2] On November 28, 2018, the Court appointed Hausfeld LLP and Hartley LLP as Interim Co-Lead Counsel for the putative class. No. 18-mc-1001, ECF No. 107.

Defendants, Defendants' product-swap agreements and inter-competitor meetings, and work with economic experts. *See* Decl. of Jason S. Hartley ("Hartley Decl."), at ¶¶ 4-6, 8.

Plaintiffs allege that "Defendants…agreed, combined, and conspired with each other to fix, raise, maintain and/or stabilize prices and to limit supply for MDI and TDI products sold in the United States" in violation of Section 1 of the Sherman Act. ECF No. 378 at ¶ 16. Plaintiffs also allege that each Defendant, during the relevant period beginning January 1, 2016, unlawfully acted in concert to moderate and suppress MDI and TDI supply in order to drive up the price of MDI and TDI products. ECF No. 378 at ¶ 44. Defendants moved to dismiss the CAC on November 12, 2019, ECF Nos. 224-235, which Plaintiffs opposed on December 30, 2019, ECF Nos. 247-250. This Court denied the motions to dismiss on March 9, 2020. ECF Nos. 289, 291.

Since the initial complaints, the parties have spent extensively litigated every aspect of this case, including negotiating and substantively meeting and conferring regarding discovery requests, deposition limits, custodians, structured data, search methodology, and entry of a protective order. *See* Hartley Decl. at ¶¶ 9-10. The parties also negotiated and submitted competing scheduling proposals. *Id.* at ¶ 10. These negotiations were contentious and resulted in motions practice over the production of structured data, jurisdictional discovery, and search methodologies. *Id.* at ¶¶ 12, 14. On May 6, 2021, the Court appointed a Special Master to oversee certain discovery disputes in this case. *Id.* at ¶ 11; ECF No. 503.

Over the last five years, the parties have engaged in lengthy and substantial fact discovery. Hartley Decl. at ¶¶ 12-16. The parties met and conferred several times to negotiate the scope and substance of discovery. *Id.* at ¶ 9. Plaintiffs served on and received from Covestro LLC document requests, interrogatories, and subpoenas for documents and for testimony. The parties contested many of these discovery requests, resulting in motions practice. *Id.* at ¶¶ 9, 12. In response to

Plaintiffs' discovery requests, Covestro LLC produced millions of pages of responsive documents, electronically stored information, and phone records. *Id.* at ¶ 13. Plaintiffs also took several depositions of Covestro LLC employees, including high-ranking executives, and produced class representatives as witnesses for depositions. *Id.* at ¶ 14. The yearslong fact discovery resulted in the production of critical testimony and documents that Plaintiffs will use in their arguments on class certification and summary judgment. *Id.* ¶¶ 15-16. At all times, Covestro LLC denied liability and damages and continues to deny Plaintiffs' allegations.

## III. SETTLEMENT NEGOTIATIONS AND AGREEMENT

### A. Settlement Negotiations and Agreement with Covestro LLC

Plaintiffs and Covestro LLC reached settlement after confidential, protracted arm's-length negotiations, Hartley Decl. at ¶ 17, resulting in both monetary relief for the Settlement Class and Covestro LLC's cooperation with document authentication in Plaintiffs' prosecution of their claims against the remaining Defendants.

The settling parties, through their counsel, first began discussing the possibility of settlement on April 1, 2026, after guidance from the Court to explore the possibility of resolution among the parties. *Id.* at ¶ 18. The settling parties argued their respective positions in early April 2026, and expressed a desire to reach settlement before Covestro LLC's high-ranking employee Mr. Craig Caputo sat for a two-day Rule 30(b)(1) and 30(b)(6) deposition (the final Defendant deposition scheduled in the case). *Id*. However, the settling parties could not reach agreement. Finally, after weeks of negotiation, including negotiation over the extent of Covestro LLC's cooperation, the settling parties reached agreement in principle on April 15, 2026. *Id.* at ¶ 19. The settling parties executed the Settlement Agreement on May 8, 2026. Hartley Decl. at ¶¶ 20-21, Ex. A to Hartley Decl. ("Settlement Agreement").

### B. Definition of the Settlement Class

The Settlement provides that Plaintiffs shall seek appointment of Interim Co-Lead Counsel as Settlement Class Counsel for the purposes of the Settlement and certification of the following "Settlement Class" for settlement purposes only:

> All persons and entities in the United States, its territories, and/or the District of Columbia who purchased or received directly (including through controlled subsidiaries, agents, affiliates and/or joint ventures) the Products[3] from any of (1) Defendants,[4] Covestro AG, Wanhua Chemical Group Co., Ltd., Mitsui Chemicals, Inc., Mitsui Chemicals America, Inc., MCNS (a.k.a. Mitsui Chemicals & SKC Polyurethanes, Inc.) or MCNS Polyurethanes USA Inc., or (2) the subsidiaries, affiliates, or successors of any of the foregoing, at any time during the Class Period.[5] The Class excludes the defendants named in the Complaint and/or any complaint filed in the Class Actions, alleged co-conspirators, and any of their parents, subsidiaries or affiliates. The Class further excludes state and federal government entities. The Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

The Settlement provides that Covestro LLC will pay $7 million into a non-reversionary settlement fund. *Id.* at ¶ 23. Interim Co-Lead Counsel believe this recovery is fair and reasonable, particularly in light of the cooperation Covestro LLC has agreed to provide: (a) declarations, certifications, or affidavits regarding the authentication of documents as business records under Federal Rule of Evidence 803(6) and (b) a declaration establishing the elements of FRE 803(6) and/or 902(12) from Covestro Deutschland AG employee, Mr. Axel Schrecker, attesting to the authenticity and veracity of factual statements for documents within Mr. Schrecker's personal knowledge or on which he was a signatory, recipient, or author, where the facts indicate that the

---

[3] Products mean any and all kinds of methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"), no matter the trade name under which such product was sold.

[4] "Defendants" means all entities set forth in Paragraph 13 of the Covestro Settlement Agreement. Hartley Decl., Ex. A.

[5] The Class Period runs from January 1, 2016 up to and including the Execution Date of the Settlement, which is May 8, 2026.

documents or communications at issue are authentic. *See* Hartley Decl., Ex. A, Settlement Agreement at ¶¶ 76-77.

The Settlement Agreement does not provide for reversion of any of the Settlement funds. Upon final judgment, and in exchange for the agreed monetary relief, payment of notice and administrative costs from the Settlement fund, and cooperation, Plaintiffs shall release claims, as defined in the Settlement, against Covestro LLC and Releasees, not other Defendants. Settlement Agreement at ¶¶ 40-45.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

To qualify for settlement-class certification, an action must satisfy Rule 23(a), plus one of the subdivisions of Rule 23(b). Fed. R. Civ. P. 23(a) & 23(b). Rule 23(a) requires that: (1) the proposed class is so numerous that joinder of individual claims would be impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the proposed class representatives are typical of class members; and (4) the proposed class representatives will adequately represent the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires that common questions of law and fact predominate over individual questions, and that class treatment be superior to other methods of adjudication. *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 391 (3d Cir. 2015). Courts in this Circuit certify classes of direct purchasers, for litigation and for settlement.[6] This Settlement Class satisfies the Rule 23(a) and 23(b)(3) requirements.

---

[6] *See, e.g. Cole's Wexford Hotel, Inc. v. UPMC, et al.*, No. 10-1609, ECF No. 413 (W.D. Pa. July 29, 2016); *In re: Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188 (E.D. Pa. 2017); *In re Chocolate Confectionary Antitrust Litig.*, No. 08-md-1935, ECF No. 1106 (M.D. Pa. Dec. 12, 2011); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Co.*, 2014 WL 631031, at *1 (E.D. Pa. Feb. 18, 2014).

### A. Numerosity Is Easily Satisfied

Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). In the Third Circuit, "numerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Here, because the proposed class includes hundreds of direct purchasers of MDI and TDI products, numerosity is satisfied. Hartley Decl. at ¶ 4.

### B. There Are Common Questions of Law and Fact

A common question, for purposes for Rule 23(a)(2), is a "common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "For purposes of Rule 23(a)(2), even a single common question will do." *Marcus*, 687 F.3d at 597.

Courts "routinely find commonality among antitrust class members alleging conspiracy to fix prices." *In re K-Dur Antitrust Litig.*, 2008 WL 2699390, at *4 (D.N.J. Apr. 14, 2008). In this case, the central issue is whether the settling Defendants conspired with other Defendants to suppress the supply of MDI and TDI products and fixed at supracompetitive levels the prices of MDI and TDI sold to the Settlement Class. Plaintiffs' SAC sets forth common questions relating to the supply restriction and price-fixing conspiracy. ECF No. 377, ¶¶ 44-51. Accordingly, the proposed Settlement Class satisfies commonality.

### C. Plaintiffs' Claims Are Typical of the Settlement Class

The Third Circuit has a "low threshold" for satisfying typicality. *NFL Players*, 821 F.3d at 428. "If the claims of the named plaintiffs and putative class members involve the same conduct

by the defendant, typicality is established regardless of factual differences." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 290 (E.D. Pa. 2012).

Here, Plaintiffs and the Settlement Class make identical claims, based on the same allegations of anticompetitive conduct. Covestro LLC's alleged liability to each Settlement Class Member is independent of the individual circumstances of any Settlement Class Member. In the antitrust context, courts in this Circuit find typicality satisfied when the named plaintiffs assert that defendants' anticompetitive conduct resulted in overcharges to plaintiffs and the class. *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197,207 (E.D. Pa. 2001). For the same reasons, typicality is satisfied here.

### D. Plaintiffs Adequately Represent the Settlement Class

Finally, a class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement considers two factors: (1) the interests and incentives of the representative plaintiffs; and (2) the experience and performance of class counsel. *Dewey v. Volkswagen AG*, 681 F.3d 170, 181 (3d Cir. 2012).

Here, Plaintiffs' interests align with those of the Settlement Class. Both Plaintiffs and Settlement Class Members seek to recover damages for overcharges resulting from the Defendants' alleged antitrust conspiracy. Rule 23(a)(4) is satisfied where "all of the class members have the same financial incentive." *K-Dur*, 686 F.3d at 223.

As to the second prong, the experience and efforts of Settlement Class Counsel are more than adequate. Lead counsel for Plaintiffs have substantial experience in litigating complex antitrust cases throughout the country, including those involving other commodity products. For example, Hausfeld LLP ("Hausfeld") was appointed co-lead counsel on behalf of a certified class of broiler chicken growers in a case that also alleged supply restrictions and price-fixing. *See In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 6:20-md-2977-RJS-CMR (E.D. Okla.).

Hausfeld also served as co-lead counsel in *In re Processed Egg Prods. Antitrust Litig.*, No. 2:08-md-2002-GEKP (E.D. Pa.), and *In re Farm-Raised Salmon and Salmon Prods. Antitrust Litig.*, No. 1:19-cv-21551-CMA (S.D. Fla.). Hartley LLP was appointed lead or co-lead counsel for plaintiffs in the following antitrust class actions: *In re: Urethane Antitrust Litig.,* No. 04-md-01616 (D. Kan.), *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.,* No. 09-ML-2007 (C.D. Cal.), *Fond du Lac Bumper, et al, v. Gordon, et al.,* No. 09-CV-0852 (E.D. Wis.); *Jones et al v. Bain Capital Private Equity et al.,* No. 20-cv-02892 (W.D.Tenn.), and *In re Cattle and Beef Antitrust Litigation,* No. 22-md-03031 (D. Minn.), among others. These foregoing experiences have provided class counsel with valuable insight into commodity markets, the associated volume of commerce, and the risks inherent in this specific subset of antitrust litigation, which further supports approval of the Settlement. Accordingly, the Settlement Class satisfies Rule 23(a)(4).

### E. The Proposed Settlement Class Satisfies Rule 23(b)(3)

A proposed class meets the predominance requirement of Rule 23(b)(3) when "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is "readily met" in antitrust class actions. *Amchem Prods.*, Inc. v. Windsor, 521 U.S. 591, 625 (1997). In the Third Circuit, courts are also "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc).[7]

Predominance requires only that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut*

[7] *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) ("[H]ere we are not as concerned with 'formulat[ing] some prediction' as to how this element of a Sherman Act violation would 'play out' at trial, 'for the proposal is that there be no trial,' and instead our inquiry into the element of antitrust injury is solely for the purpose of ensuring that issues common to the class predominate over individual ones.") (internal quotation and citation omitted).

*Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Here, multiple common questions lie at the heart of all Settlement Class members' claims, including whether Defendants conspired to suppress the supply of MDI and TDI products, and whether Defendants' conspiracy caused market-wide supracompetitive MDI and TDI prices. Because the question of liability is central to the Settlement Class, predominance is satisfied. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) ("The predominance test is met in an antitrust case because consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members.") (quoting *In re Flat Glass Antitrust Litig.*, 319 F.R.D. 472, 483-84 (W.D. Pa. 1999)).

**F. A Class Action Is the Superior Method of Adjudication**

The superiority inquiry under Rule 23(b)(3) requires that class treatment be a superior method of adjudicating Plaintiffs' and Settlement Class Members' claims. To certify a settlement class, the Court is not required to perform a rigorous analysis of the superiority factors. *Amchem*, 521 U.S. at 620; *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013).

Here, class treatment is the superior method of adjudication. *Processed Egg Prods.*, 284 F.R.D. at 294 (explaining that a "class action enables individual direct purchasers to pursue their claims in an economically feasible manner…with greater bargaining power for settlement purposes."). Moreover, after nearly eight years of litigation, it is far preferable to maintain this as a Settlement Class rather than starting from scratch on behalf of each Class Member.

Because Plaintiffs have satisfied Rule 23(a) and (b)(3) for the purposes of the proposed Settlement Class, the Court should provisionally certify the proposed Settlement Class.

**G. Settlement Class Counsel Meet the Requirements for Appointment**

Under Rule 23(g), if the Court certifies the Settlement Class, it must appoint Settlement Class Counsel. In the Third Circuit, when deciding whom to appoint as Settlement Class Counsel,

courts consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).

This Court has repeatedly appointed Megan E. Jones of Hausfeld LLP and Jason S. Hartley of Hartley LLP as Interim Co-Lead Counsel for the putative class in this action and Plaintiffs respectfully request the Court to appoint Ms. Jones and Mr. Hartley as Settlement Class Counsel. The Court is also well aware of proposed Settlement Class Counsel's experience and knowledge of the applicable law. ECF Nos. 81, 82, 1249, 1250. Proposed Settlement Class Counsel possess decades of antitrust expertise and are among the preeminent antitrust class action litigators in the United States. They conducted a broad pre-suit investigation and were among the first to file suit. Over nearly eight years, Settlement Class Counsel have briefed multiple motions to dismiss, engaged in discovery negotiations that often resulted in motion practice, and oversaw extensive fact discovery. Settlement Class Counsel have committed significant resources towards litigating this case, and will commit the necessary time and funding to advocate on behalf of the Settlement Class. Courts have recognized Settlement Class Counsel's expertise in this field and repeatedly found that Settlement Class Counsel satisfy both Rule 23(a)(4) and 23(g). ECF No. 81, 82. Accordingly, Plaintiffs request appointment as Settlement Class Counsel for the Settlement.

## V. THE SETTLEMENT IS WITHIN THE RANGE OF APPROVAL

Pennsylvania courts recognize a "strong judicial policy in favor of the voluntary settlement of lawsuits." *Dehainaut v. California Univ. of Pennsylvania*, 2011 WL 3810132, at *4 (W.D. Pa. Aug. 29, 2011). Settlements are especially favored "in class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation." *Colella v. Univ. of Pittsburgh*, 569 F.Supp.2d 525, 530 (W.D. Pa. 2008) (internal quotation and citation omitted).

At the preliminary approval stage, the "Court's task is to evaluate whether the settlement is within the range of reasonableness." *Haston v. Resurgent Cap. Servs., L.P.*, 2024 WL 6979747, at *1 (W.D. Pa. Jan. 19, 2024) (quoting *In re Nat'l Football League Players' Concussions Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016)).

**A. The Settlement Is Fair, Reasonable, and Adequate**

Rule 23(e)(2) provides that the court should approve a settlement "only on finding that it is fair, reasonable, and adequate" after considering several factors:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, courts consider these factors only to determine whether the court would "likely" approve the proposed settlement. *Hall v. Accolade, Inc.*, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019). Here, the Settlement amply satisfies all four factors considered under Rule 23(e)(2).

**1. The Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class.**

This factor focuses on the "actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) Advisory Committee Note on 2018 Amendments. As described above, Settlement Class Counsel have expended considerable resources and time to litigate this action for nearly eight years, including wide-ranging discovery and related motion practice, more than twenty-five depositions, and multiple rounds of motions to dismiss. The Class Representatives

have diligently fulfilled their role, responding to discovery requests and sitting for deposition. This factor will likely be satisfied for final approval, and weighs in favor of preliminary approval.

### 2. The Settlement was reached after arm's length negotiations.

In this Circuit, settlements resulting from arm's length negotiations between experienced counsel are accorded substantial weight and deference. *In re Auto. Refinishing Paint Antitrust Litig.*, 2003 WL 23316645, at *2 (E.D. Pa. Sep. 5, 2003) ("Though the ultimate determination of the fairness of a [settlement] is left to the court, it is appropriate to give substantial weight to the recommendations of experienced attorneys, who have engaged in arm's length settlement negotiations, in making this determination.").

Here, the Settlement was negotiated at arm's length. Counsel began initial settlement negotiations in early April 2026, but the parties could not agree on material terms and negotiations. Counsel re-visited the possibility of settlement after Plaintiffs completed a rigorous two-day Rule 30(b)(1) and 30(b)(6) deposition of Covestro LLC's high-ranking employee, Mr. Craig Caputo. On April 15, 2026, after weeks of hard-fought negotiations, the parties reached agreement. Settlement Class Counsel and counsel for Covestro LLC are experienced in antitrust class actions. Settlement Class Counsel have had ample time and the proceedings are sufficiently advanced to permit a proper assessment of the strengths and weaknesses of the case, as well as the propriety of settlement at this stage.

When "evaluating a settlement, a court should be hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013). Rather, courts attach "[a]n initial presumption of fairness … to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful

discovery." *Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000). Accordingly, this factor also weighs in favor of preliminary approval.

**3. The Settlement provides adequate relief for the Settlement Class.**

The proposed Settlement provides substantial relief to the class—both in dollar value and in cooperation. The Settlement provides for a total of $7 million dollars for the benefit of the class. This amount more than doubles the previous ice-breaker settlement reached with BASF Corporation. The Settlement Agreement also includes provisions that protect the Settlement Class's rights to seek the full value of damages from non-settling Defendants. Hartley Decl. at ¶ 23, Ex. A Settlement Agreement at ¶ 78. Beyond monetary relief, the cooperation guaranteed by Covestro LLC will strengthen Plaintiffs' claims against non-settling Defendants. *See Processed Egg Prods.*, 284 F.R.D. at 274 (approving settlement that involved one defendant's cooperation in prosecution of case against remaining defendants); *Linerboard*, 292 F.Supp.2d at 643 (similar).

Courts in the Third Circuit have granted approval of settlements providing similar relief. *Linerboard*, 292 F.Supp.2d at 642-644. Under the adequate relief factor, Courts also consider four subfactors: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3).

**a) The Settlement accounts for the costs, risks and delays of trial.**

Settlement Class Counsel, after litigating this case for nearly eight years and having concluded fact discovery, are well-equipped to assess the proposed Settlement and weigh the relief provided against the costs, risks, and delays associated with litigating this action through trial. Settlement Class Counsel remain confident that the claims against Covestro LLC have merit and will continue to zealously prosecute the same claims against the non-settling Defendants. However, the Settlement Class would also face a number of risks, expenses, and challenges if

litigation were to continue. Settlement Class Counsel appreciate the complexity of this case, which involves multiple corporate defendants and intricate inter-defendant product swap agreements, necessitating the production of hundreds of thousands of documents, more than twenty-five depositions, and significant expenditure on e-discovery and expert fees. Settlement Class Counsel have already incurred significant expenses, which will only increase as the case proceeds.

The Settlement Class also stands to face a number of legal hurdles and delays if the case proceeds to trial, including expert discovery; class certification; and summary judgment. Counsel for all parties have vigorously litigated this case since 2018; Settlement Class Counsel expect forthcoming stages of litigation to be similarly contested. This Circuit has held that "the law favors settlement, particularly in class actions…where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (internal citations omitted); *Warfarin*, 391 F.3d at 535. The Court will likely find this subfactor weighs in favor of preliminary approval.

**b) The Settlement provides an effective method to distribute relief to the Settlement Class.**

Under Rule 23(e)(2)(C)(ii), courts "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" and whether the claims process is "unduly demanding." Fed. R. Civ. P. 23 Advisory Comm. Notes on 2018 Amendments. As described below in Section VI, Settlement Class Counsel propose a straightforward claims process: Settlement Class Members can submit claims forms and receive their share of the Settlement distribution. The allocation plan provides that Class Members who submit valid, timely claims will receive their *pro rata* share of the Settlement funds—allocation on this basis is a widely accepted distribution method. *Abramson v. Agentra, LLC*, 2021 WL 3370057, at *2-3 (W.D. Pa. Aug. 3, 2021). The claims process will make use of Covestro LLC's sales data to assess claims, so individual Settlement Class Members

do not need to submit their own purchase data. Nevertheless, the proposed claims process permits claimants to seek, via a Purchase Audit Request Form, a full audit of their purchase data to verify the accuracy of their assessed *pro rata* share. Courts approve allocation plans that use defendant sales data to assess Settlement Class Member claims. *See In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 n.13 (3d Cir. 2020); *In re Wellbutrin XL Antitrust Litig.*, 2011 WL 3563385, at *13-14 (E.D. Pa. Aug. 11, 2011). This subfactor favors preliminary approval.

**c) The proposed terms for attorney' fees are reasonable.**

Settlement Class Counsel plan to request attorneys' fees up to one-third of the Settlement fund, reimbursement of litigation expenses and of notice and administration costs, and class representative service awards of $15,000 each. Hartley Decl. Ex. A, Settlement Agreement at ¶ 50. The aforementioned expenses and representative service awards shall be paid out of the Settlement fund. *See id.* at ¶ 57. Settlement Class Counsel will submit a request for expenses, service awards, and attorneys' fees at least 30 days prior to the Final Approval hearing. All forms of proposed Notice to the Settlement Class contain sufficient information on the maximum amount Settlement Class Counsel may request in service awards and attorneys' fees to allow Settlement Class Members to make an informed decision about whether to opt out of or object to the Settlement. This manner of notice regarding fees and expenses is consistent with due process. *NFL Players*, 821 F.3d at 444-47. Accordingly, this subfactor weighs in favor of preliminary approval.

**d) No agreements are required to be identified under Rule 23(e)(3).**

Other than the Settlement Agreement, and the supplemental agreement incorporated by reference and submitted to the Court *in camera*, there are no agreements to be identified.

**4. The proposed Settlement treats Settlement Class Members equitably.**

Under the final factor courts evaluate to determine whether a settlement is fair, adequate, and reasonable, the Court must "ensure that the fund distribution is fair and reasonable as to all

participants in the fund." *Sullivan*, 667 F.3d at 326. As discussed *supra*, the Settlement treats all Settlement Class Members equitably—distribution of Settlement funds will be performed on a *pro rata* basis, in accordance with the claims submitted by Settlement Class Members. Given that distribution of settlement funds on a *pro rata* basis is routinely found to be an equitable means of treating Settlement Class Members, the Court will likely find this factor weighs in favor of final approval, and therefore also weighs in favor of preliminary approval.

**5. The proposed Settlement alternatively merits preliminary approval under the Third Circuit's pre-2018 factor analysis.**

Prior to the Rule 23(e) Amendment, courts in the Third Circuit preliminarily approved settlements if four factors were satisfied: (1) the settlement is the product of arm's length, informed negotiation; (2) the settlement falls firmly within the range for approval—that is, it is fair, adequate and reasonable; (3) the settlement does not grant improper treatment to certain members of the class; and (4) the proceedings are sufficiently advanced to allow for adequate evaluation of a proposed settlement that would account for litigation risks. *Haston*, 2024 WL 6979747, at *1.

**a) Under the Third Circuit's factor analysis, the Settlement merits a presumption of fairness.**

The Third Circuit also applied an initial presumption of fairness to the settlement if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *GM Trucks*, 55 F.3d at 785; *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). Here, the Settlement merits the presumption of fairness. The settlement negotiations occurred at arm's length, and Settlement Class Counsel are among the most experienced litigators in antitrust class actions. Although notice is yet to be effectuated, Settlement Class Counsel do not anticipate many, if any, objections to the Settlement, in light of the monetary relief and cooperation offered. Finally, given that the Settlement comes after fact discovery is essentially completed, sufficient

discovery has occurred to allow the parties to reach a fair settlement for Class Members. *NFL Players*, 821 F.3d at 436. Accordingly, the Court should apply the presumption of fairness.

**b) The Settlement satisfies the *Girsh* factors.**

Even with a presumption of fairness, prior to the Rule 23 Amendments, the Third Circuit applies a nine-factor analysis to determine whether a settlement is fair. These factors were articulated in *Girsh v. Jepson*: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d 153, 157 (3d Cir. 1975). This Court has considered these factors in the context of a preliminary approval motion. *Lazy Oil Co. v. Wotco Corp.*, 95 F.Supp.2d 290 (W.D. Pa. 1997). Each of these factors weighs in favor of finding the Settlement to be fair. The first, fourth, fifth and sixth factors overlap with the analysis conducted under Rule 23(e)(2)(C)(i), and weigh in favor of finding the Settlement is fair for the same reasons articulated above.

As to the second factor, notice is yet to be effectuated, but Settlement Class Counsel anticipate that Class Members will react positively to substantial and immediate monetary relief after nearly eight years of litigation, and to the cooperation provided by Covestro LLC that will strengthen Plaintiffs' claims against non-settling Defendants.

The third factor also weighs in favor of finding the Settlement fair—as previously described, this litigation is sufficiently advanced, with fact discovery essentially completed, such that Settlement Class Counsel could properly weigh the relief and cooperation obtained. *See Lazy*

*Oil*, 95 F.Supp.2d at 308 (finding third *Girsh* factor satisfied where fact discovery was "essentially complete."); *NFL Players*, 821 F.3d at 439 (noting that proceedings were sufficiently advanced under third *Girsh* factor even with informal discovery).

The seventh factor is neutral—none of the Defendants are insolvent. And defendants are joint and severally liable, so the Settlement does not limit Plaintiffs' ability to pursue all damages against the remaining Defendants. *NFL Players*, 821 F.3d at 440.

Finally, the eighth and ninth factors require the court to balance the value provided by the settlement with the risks of litigation and trial. *NFL Players*, 821 F.3d at 440. Here, this Settlement provides considerable monetary relief to the Settlement Class, after years of protracted litigation, and also provides meaningful cooperation to Plaintiffs. The value of the Settlement weighs favorably against the risk of litigation and trial. *Id.*; Hartley Decl. at ¶ 31.

**c) The remaining pre-2018 Third Circuit factors favor preliminary approval.**

The analysis above establishes that the Settlement is fair under the Third Circuit's factor analysis. The remaining pre-2018 factors largely overlap with the factors set forth in Rule 23(e)(2). The first and third factors are fully considered by the Rule 23(e)(2) analysis above, and therefore the Court should deem them satisfied for those reasons. The fourth factor is unique, and looks to whether the proceedings are sufficiently advanced. Courts have previously preliminarily approved settlements even without the benefit of any discovery. *In re Nat'l Football League Players' Concussion Inj, Litig.*, 301 F.R.D. 191, 199 n.6 (E.D. Pa. 2014) (collecting cases). Here, the parties

have briefed and obtained rulings on multiple motions to dismiss, and have the benefit of widespread discovery, guided by the Court and Special Master.

In sum, the four Rule 23(e)(2) factors and similar factors previously considered by the Third Circuit, weigh in favor of finding that the Settlement is fair, reasonable, and adequate. Accordingly, the Court will be able to approve the Settlement and certify the Settlement Class.

## VI. CLAIMS ADMINISTRATION AND NOTICE PLAN

### A. The Court Should Appoint Endeavor Bank As the Escrow Agent

Plaintiffs propose Endeavor Bank as the escrow agent for the Settlement. Settlement Class Counsel have used Endeavor Bank in prior, similar cases, and Endeavor Bank is well-reputed and frequently handles escrow accounts for large, complex class cases. A summary of Endeavor Bank's prior engagements as escrow agent is attached as Exhibit B to the Hartley Declaration.

### B. The Court Should Direct Settlement Class Notice to the Class

The Court must direct the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e) requires that class members be afforded reasonable notice of a proposed settlement. To satisfy due process, notice must "enable class members to make an informed decision on whether they should take steps to protect their rights, including objecting to the settlement." *Baby Prods.*, 708 F.3d at 180. There are two components of notice: the form of notice, and the manner of delivery to Settlement Class Members.

Here, the proposed notice is designed to apprise Settlement Class Members of the proposed Settlement, using bold headlines and plain, straightforward language to convey important information regarding the terms of the Settlement. The proposed notice prominently features Settlement Class Counsel's contact information, and instructions to visit the Settlement website where Settlement documents and more information is provided. Plaintiffs propose that notice be

effectuated by United States mail (and by e-mail where available) to the close to 600 Settlement Class Members identified by Plaintiffs' expert, Dr. Russell Lamb, and any other class members Class Counsel subsequently may identify. The claims administrator, Kroll, will also operate a website and call center. This form and method of notice satisfy due process and Rule 23, and Plaintiffs request that the Court approve the proposed Notice plan.

### 1. The Robust, Multilayered Proposed Notice Plan Will Provide the Best Notice Practicable.

***Plaintiffs' Notice Provider***. Plaintiffs have retained an experienced and well-regarded notice and claims administrator, Kroll, to serve as the notice provider for this Settlement. *See* Declaration of Carla A. Peak, Managing Director, Kroll Settlement Administration ("Peak Decl.") at ¶¶ 2-3, 5-6, Exhibit A (listing extensive experience in complex settlement administration). Kroll possesses substantial experience in providing notice and claims administration in large, complex, antitrust class cases such as this one. *Id.* Working together, Kroll and Class Counsel have a set of proposed notices to send to the Class regarding the Settlement. These include:

***Direct Notice***. Proposed forms of the notice materials to that putative Settlement Class are attached as exhibits to the Peak Declaration and include the Long Form Notice at Exhibit B. *Id.* at ¶¶ 11-13, 15. These materials provide easily understood information, including that this is a class action; the amount provided by the Settlement; the Settlement Class definition; Plaintiffs' allegations of Defendants' antitrust violations in plain terms; the opportunity of Settlement Class members to appear through an attorney; the opportunity members of the Settlement Class to opt out of or object to the Settlement; the maximum amount of fees and expenses to be sought by Interim Co-Lead Counsel; the time and manner for requesting exclusion or submitting an objection; the binding effect of a judgment on the Settlement Class; and dismissal of Plaintiffs' claims against Covestro LLC if the Court grants final approval. Peak Decl. at ¶ 22.

Under the proposed Notice Plan, Kroll will send notice by mail the Long Form Notice to Settlement Class Members, using contact information provided by the settling Defendants. The Long Form Notice provides significant information and transparency regarding the Settlement and contains all information required by the Federal Rules and the laws of this Court. The Long Form Notice also provides the URL for the website where class members may review more detailed information about this lawsuit and the Settlement. In addition to physical mail, a short-form Notice shall also be emailed directly to Settlement Class members where email information is available ("Email Notice"). *See* Peak Decl. at ¶¶ 16-19. A copy of the proposed Email Notice is attached as Exhibit C to the Peak Declaration. Email delivery will be attempted multiple times, accounting for bouncebacks or other forms of unsuccessful delivery. *Id.* at ¶ 19.

***Settlement Website and Toll-Free Number.*** Kroll will further assist potential class members in understanding their rights under the Settlement by establishing a case-specific toll-free number and website. Peak Decl. at ¶¶ 23-24. The toll-free telephone number will be equipped with an automated interactive voice response system. *Id.* at ¶ 24. If callers need further assistance, they will have an option to speak with a live operator during business hours. *Id.* The website will provide relevant information and documentation, including a case summary, copies of the Settlement Agreement and related Orders, and a schedule of important dates. *Id.* at ¶ 23.

Kroll will also take precautions to prevent fraudulent claims. For example, Kroll will use proprietary methods to review and identify invalid submissions, including the use of technological and automated methods bolstered by Kroll's extensive experience; and consistently monitor the evolving tactics used to commit fraud in the claims process and update its tools to detect fraud. Peak Decl. at ¶ 34. Class Counsel believe that these disclosures and commitments are in the best interests of the Class and ensure that the Class's funds are being zealously guarded. Hartley Decl.

at ¶¶ 28-30. Plaintiffs request appointment of Kroll as the notice and claims administrator. Courts have regularly approved class notice plans such as the one Plaintiffs propose here, which include multifaceted approaches. *See In re Flonase Antitrust Litig.*, 2013 WL 12148283, at *1 (E.D. Pa. Jan. 14, 2013).

**2. Plaintiffs' Proposed Notice Satisfies Rule 23 and Due Process**

Under Rule 23(c)(2)(B), the proposed class notice:

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for request exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). As demonstrated in Exhibits B and C to the Peak Declaration, Plaintiffs' Class Notice Plan addresses each of these requirements in a clear and easily understood manner. *See* Peak Decl. at ¶¶ 14-24, Exs. B, C. Kroll has opined that the notice plan meets the requirements of Rule 23. Peak Decl. at ¶ 36. Accordingly, the Notice Plan and accompanying forms are adequate under the circumstances and fairly calculated to apprise class members of their rights under the Settlement. *See id.* Plaintiffs submit that this Notice Plan provides the best notice practicable under the circumstances and comports with Rule 23 and due process requirements. Peak Decl. at ¶¶ 9, 36. Interim Co-Lead Class Counsel requests that the Court approve the proposed form and manner of notice to the Settlement Class as set forth in the Notice Plan.

**C. The Proposed Claims Process and Plan of Allocation Are Fair and Reasonable**

Allocation plans comply with Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court's "principal obligation" in approving a claims process is "to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Sullivan*, 667 F.3d at 326. In this Circuit, distribution

based on a *pro rata* share of purchases is inherently reasonable. *Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F.Supp.2d 322, 335 (E.D. Pa. 2007) (collecting cases).

Here, Plaintiffs propose that funds be allocated according to the amount of MDI and TDI products purchased by Settlement Class Members. Kroll will provide a pre-populated claim form with the Class Member's purchase information based on Defendants' records obtained in this litigation. Peak Decl. ¶¶ 30-31. The proposed Pre-Populated Claim Form is attached as Exhibit D to the Peak Declaration. Class members who disagree with or wish to supplement their purchase information can complete an audit form available on the settlement website. *Id.* at ¶¶ 23, 27, 32-33. The Purchase Audit Request Form is attached as Exhibit E to the Peak Declaration.

Plaintiffs also propose a distribution plan that efficiently and cost-effectively disburses settlement funds. Settlement Class Members must submit a timely, valid claim through the settlement website or by mail to be eligible to receive payment. Payments will be sent by secure bank wire transfer or by hard copy check to eligible claimants. Peak Decl. at ¶ 35. Plaintiffs propose that the deadline to submit a claim be 100 days from the date of the Court's Order granting preliminary approval (claims must be received by this date). In the event that this deadline needs to be moved, Plaintiffs will do so with leave of the Court. Accordingly, Plaintiffs respectfully request that the Court approve the proposed claim form and plan of allocation.

### D. The Court Should Order the Production of Direct Purchaser Customer Contact Information

The foregoing Notice Plan proposes direct notice to the Settlement Class in accordance with the requirements of due process and Rule 23 but assumes the prompt and complete availability of class member contact information, such as business names, postal addresses, and e-mail addresses. Peak Decl. at ¶ 12. Federal courts are accorded broad discretion to direct class notice and to order defendants to cooperate in identifying "class members to whom notice must be sent."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355 (1978). The Third Circuit has explained that it is reasonable to require defendants to provide data necessary to effectuate class notice. *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 122 (3d Cir. 2012). Accordingly, district courts regularly order the production of class member contact information for the purposes of class notice. *See, e.g.*, *In re Processed Egg Prods.*, No. 08-md-02002 (E.D. Pa. July 15, 2010) ECF No. 388 at 1-2, Ex. A-1; *In re Domestic Airline Travel Antitrust Litig.*, 322 F.Supp. 3d 64, 72 (D.D.C. 2018).

Accordingly, Plaintiffs reincorporate their request here for the Court to order that Defendants other than Covestro LLC and BASF Corporation timely provide class member contact information so that notice can be promptly and properly effectuated. ECF Nos. 1271, 1272. Covestro LLC will provide class member contact information pursuant to Paragraph 59(a) of the Settlement Agreement.

### E. Proposed Notice Schedule

Below is the proposed schedule for purposes of the notice plan, claims process, and other important deadlines, including a schedule for final approval. To the extent possible, Settlement Class Counsel will work with Kroll to combine notice and claims administration efforts for this Settlement and for the previous settlement with BASF Corporation, in order to economize the Court and the parties' time and resources. The relevant dates below will be populated in the proposed notices once the Court sets dates certain for the following litigation events.

| EVENT | DEADLINE |
|---|---|
| Covestro LLC to issue CAFA notice | Within 10 days of filing of the Motion for Preliminary Approval of Settlement |
| Direct Mail and Email notice to potential Settlement Class Members; update the settlement website | No later than 21 days after the Order |
| Deadline for class members to object, or submit a claim | 100 days after the Order (objections and claims must be received by this deadline) |

| EVENT | DEADLINE |
| --- | --- |
| Deadline for class members to request to opt out of the settlement | 100 days after the Order (requests must be postmarked by this deadline) |
| Interim Co-Lead Counsel to move for attorneys' fees, expenses, and service awards for named representatives | At least 30 days before the Final Approval Hearing |
| Plaintiffs to file affidavits or declarations of the person(s) under whose general direction notice was issued | At least 10 days before the Final Approval Hearing |
| Plaintiffs to file final approval brief, response to any objections, and a proposed final approval order with complete list of Settlement Class Members that opted out of the Settlement | At least 10 days before the Final Approval Hearing or by a date to be set by the Court |
| Final Approval Hearing | At least 135 days after the Court's Order, as the Court's schedule permits |

## VII. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court to enter an Order: preliminarily approving the Settlement; certifying the Settlement Class, and appointing Plaintiffs' Interim Co-Lead Counsel as Settlement Class Counsel; approving and directing the proposed form and manner of notice to the Settlement Class, including directing Defendants to produce class member contact information; appointing Kroll as Notice and Claims Administrator; and setting the proposed schedule for completing further Settlement proceedings.

Dated: May 22, 2026

Respectfully submitted,

*/s/ William Pietragallo, II*
William Pietragallo, II (PA 16413)
**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel.: (412) 263-2000
wp@pietragallo.com

***Interim Co-Liaison Counsel for the Plaintiffs and the Proposed Settlement Class***

Megan E. Jones (*admitted pro hac vice*)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 633-1908
mjones@hausfeld.com

Jason S. Hartley (*admitted pro hac vice*)
Jason Lindner (*admitted pro hac vice*)
Maureen E. Forsyth
**HARTLEY LLP**
101 W. Broadway, Suite 820
San Diego, CA 92101
Tel: (619) 400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com
forsyth@hartleyllp.com

***Interim Co-Lead Counsel for the Plaintiffs and the Proposed Settlement Class***