**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: DIISOCYANATES ANTITRUST LITIGATION<br><br>*This Document Relates to: All Actions* | Master Docket Misc. No. 18-1001<br><br>MDL No. 2862 |

# DECLARATION OF JASON S. HARTLEY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANT COVESTRO LLC, AND FOR APPROVAL OF NOTICE PLAN AND CLAIMS PROCESS

1. I am a partner with the law firm Hartley LLP, and along with my co-counsel Megan E. Jones, partner at Hausfeld LLP, I serve as Court-appointed Interim Co-Lead Counsel for the Plaintiffs and the proposed Class.[1] *See* Case No. 18-md-1001, ECF. No. 1251.

2. I make this Declaration in support of Plaintiffs' motion for preliminary approval of settlement with Defendant Covestro LLC (the "Settlement") and approval of notice plan and claims process, based upon my personal knowledge, as well as records and information available to me. If called as a witness, I could and would testify competently to the matters stated in this Declaration.

3. Because this Declaration is submitted in support of the Settlement, it is inadmissible in any subsequent proceedings, other than in connection with the Settlement. In the event that the Settlement is not approved by the Court, this Declaration and the statements contained herein are made without prejudice to Plaintiffs' position on the merits of this action.

---

[1] The proposed Class is represented by Plaintiffs Utah Foam Products, Inc., Rhino Linings Corporation, Tri-Iso Tryline LLC, and American Polymers Corp.

**SUMMARY OF THE ACTION**

4. After extensive investigation, Plaintiffs filed the first complaint on June 28, 2018. *Utah Foam Prods., Inc. v. Bayer A.G. et al.*, No. 18-cv-0858 (W.D. Pa.) ECF No. 1. Along with other direct purchaser class action complaints, this complaint alleged antitrust violations against the Defendants on behalf of hundreds of direct purchasers of MDI and TDI products.

5. Prior to our clients filing this case, counsel commenced and pursued an extensive investigation of the MDI and TDI market, including reviewing public data and statements and working with an expert to analyze the market and potential overcharges. In addition, thorough research was conducted on the legal claims, product-swap agreements and inter-competitor meetings, and reviewing and analyzing the briefing and orders in a related antitrust conspiracy case involving many of the same Defendants and involving a related market for urethane products. That investigation culminated in this action.

6. Since filing the initial complaints, Plaintiffs have vigorously prosecuted their claims at every stage of the litigation. After continuing to investigate their claims and work with consulting experts, Plaintiffs filed an amended class action complaint on February 2, 2019, No. 18-cv-1001, ECF No. 166 ("CAC").

7. On November 12, 2019, Defendants moved to dismiss the CAC Complaint, ECF Nos. 224-235, which Plaintiffs opposed on December 30, 2019. ECF Nos. 247-250. the Court denied the motions on March 9, 2020. ECF Nos. 289, 291.

8. Plaintiffs filed a second amended class action complaint on September 10, 2020. ECF No. 378 ("SAC"). Thereafter, the parties proceeded with fact discovery.

9. Throughout the discovery period, Plaintiffs served requests for production of documents, interrogatories, and subpoenas for deposition testimony. The parties extensively

litigated every aspect of this case, including years of meet and confers regarding the scope of discovery requests, deposition limits, custodians, structured data, date ranges, search methodology and search terms, the scope of third-party subpoenas, and entry of a protective order.

10. The parties also negotiated and submitted competing scheduling proposals and worked to submit a Case Management Order.

11. To aid with the widespread and complex discovery process, the Court appointed a Special Master to oversee certain discovery disputes on May 6, 2021. ECF No. 503.

12. Over the last five years, the parties have engaged in lengthy and substantial fact discovery. Plaintiffs document requests, interrogatories, and subpoenas for documents and for testimony. The parties contested many of these discovery requests, often resulting in motion practice over the production of structured data, jurisdictional discovery, and search methodologies.

13. In response to Plaintiffs' discovery requests, Covestro LLC produced millions of pages of responsive documents, electronically stored information, and phone records, which Plaintiffs have diligently reviewed. Plaintiffs also received and reviewed documents produced by third parties in response to document subpoenas. Plaintiffs served subpoenas to obtain phone records for dozens of individuals associated with Defendants. Plaintiffs synthesized this raw data, which enabled them to identify instances where certain employees of Defendants communicated with one another.

14. The fact discovery process has led to more than twenty-five depositions; Plaintiffs took several depositions of Covestro LLC employees, including high-ranking executives, and produced class representatives as witnesses for deposition. Throughout discovery, Plaintiffs filed numerous discovery motions against one or more Defendants, which among other things sought additional documents and custodians, and challenged Defendants' assertions of privilege.

15. Plaintiffs have been active participants in the litigation, having spent time producing documents, responding to interrogatories, and most sitting for multiple depositions.

16. The yearslong fact discovery resulted in the production of critical testimony and documents that Plaintiffs will use in their arguments on class certification and summary judgment.

**SETTLEMENT NEGOTIATIONS**

17. The Settlement is the product of extensive, confidential, and protracted arm's-length settlement negotiations, which included numerous rounds of give and take between Interim Lead Counsel and counsel for Defendant Covestro LLC. The negotiations were hard fought and conducted in good faith.

18. The parties first began discussing the possibility of settlement on April 1, 2026, after guidance from the Court to explore the possibility of resolution among the parties. Tr. of Feb. 26, 2026 Hearing at 21-24. The parties argued their respective positions in early April 2026, and the parties expressed a desire to reach settlement before Covestro LLC's high-ranking employee Mr. Craig Caputo sat for a two-day rigorous Rule 30(b)(1) and 30(b)(6) deposition (the final Defendant deposition scheduled in the case). However, the parties could not reach agreement.

19. Finally, after weeks of negotiation, including negotiation over the extent of Covestro LLC's cooperation, on April 15, 2026, the parties reached an agreement in principle.

20. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of the parties' respective litigation positions and determined that the Settlement brought substantial benefits to the proposed Class at this stage in the litigation, while avoiding the delay and uncertainty of continuing protracted litigation. The parties executed the Settlement on May 8, 2026.

21. A true and accurate copy of the Covestro Settlement Agreement is attached to this declaration as **Exhibit A**.

**THE SETTLEMENT AND ITS FAIRNESS**

22. This is the second settlement in this case, after nearly eight years of litigation. The Settlement reflects an analysis of not only the damages Plaintiffs believe they and the proposed Class suffered in connection with the claims against Defendant Covestro LLC, but also the value of the cooperation by Covestro LLC contemplated in the Settlement Agreement against the remaining Defendants, who are jointly and severally liable for all Class damages.

23. The Settlement is non-reversionary, for a total of $7 million dollars. Covestro LLC has agreed to provide meaningful cooperation to Plaintiffs as set forth in the Settlement Agreement (Ex. A.) by providing declarations, certifications, or affidavits regarding the authentication of documents as business records under Federal Rule of Evidence 803(6), and a declaration from Covestro Deutschland AG employee Mr. Axel Schrecker establishing the elements of FRE 803(6) and/or 902(12) for documents within Mr. Schrecker's personal knowledge or on which he was a signatory, recipient, or author, where the facts indicate that the documents or communications at issue are authentic. The Agreement also includes provisions that protect the Settlement Class's rights to seek the full value of damages from non-settling Defendants.

24. The settlement negotiations were, at all times, at arm's length and hard fought. Throughout this entire process, the parties have been represented by their respective experienced, sophisticated antitrust counsel. Interim Co-Lead Counsel for the Plaintiffs and proposed Class have decades of experience litigating antitrust class actions and know how to fairly, reasonably, and adequately attach a value to the early resolution of antitrust litigation. Counsel for all parties also have substantial experience litigating other antitrust cases throughout the country. For example,

Hartley LLP was appointed lead or co-lead class counsel for plaintiffs in the following antitrust class actions: *In re: Urethane Antitrust Litig.,* No. 04-md-01616 (D. Kan.), *In re Aftermarket Automotive Lighting Prods. Antitrust Litig.,* No. 09-ML-2007 (C.D. Cal.), *Fond du Lac Bumper, et al, v. Gordon, et al.,* No. 09-CV-0852 (E.D. Wis.); *Jones et al v. Bain Capital Private Equity et al.,* No. 20-cv-02892 (W.D. Tenn.), *In re Cattle and Beef Antitrust Litigation,* No. 22-md-03031 (D. Minn.), among others. My co-counsel Hausfeld LLP ("Hausfeld") was appointed co-lead counsel on behalf of a certified class of broiler chicken growers also alleging supply restrictions and price-fixing. *In re Broiler Chicken Grower Antitrust Litigation (No. II)*, MDL No. 6:20-2977 (E.D. Okla.). Hausfeld also served as co-lead counsel in *In re Processed Egg Products Antitrust Litigation*, No. 68-md-2002 (E.D. Pa.), and in *In re Atlantic Farm-Raised Salmon Antitrust Litigation*, 19-cv-21551 (S.D. Fla.). Those cases similarly alleged collusive supply restraints, price-fixing and other anticompetitive conduct. This extensive experience has provided class counsel with valuable insight into commodity markets, the associated volume of commerce, and the risks inherent in this specific subset of antitrust litigation, which further supports approval of the Settlement.

25. During the initial investigation, through discovery and litigation, and in relation to this settlement, Interim Co-Lead Counsel researched, analyzed, and evaluated many contested legal and factual issues. Thus, Co-Lead Counsel recognize the facts and benefits, risks and consequences of continued litigation versus the proposed settlement with Covestro LLC.

26. There was no collusion or preference among counsel for the parties at any time during their negotiations. To the contrary, the negotiations were hard fought, and fully informed. Plaintiffs sought to, and did, obtain a significant monetary benefit for the proposed Class from Covestro LLC at this point in the litigation and, equally important, significant cooperation with

authentication of documents, as set forth in the Settlement Agreement, to aid Plaintiffs' continued prosecution of this action against the remaining Defendants. For the avoidance of doubt, there was no discussion or agreement of any kind regarding the amount of attorneys' fees, costs, or service awards that Plaintiffs' counsel or Plaintiffs may seek from the Court related to the Settlement.

27. Upon the Court's approval of Endeavor Bank as the escrow agent for the Settlement and the triggers contained in the Settlement, Defendant Covestro LLC will cause to be paid the full $7 million into an escrow account for the Settlement. Endeavor Bank's resume and certain prior engagements as escrow agent is attached to this declaration as **Exhibit B**. Covestro LLC also agrees to provide significant cooperation as set forth in the Settlement Agreement, which will assist Plaintiffs in prosecuting their remaining claims against the other Defendants.

28. Plaintiffs propose an experienced and well-regarded notice and claims administrator, Kroll, to serve as the notice and claims provider for the Settlement. Under the proposed Notice Plan, Kroll will provide direct notice, including long-form notice by mail and email where available, to the Settlement Class. Additionally, Kroll will create a settlement website and operate a toll-free number to assist class members in understanding their rights under the Settlement.

29. Plaintiffs have also contractually required Kroll to make a number of commitments to ensure the absence of any financial or ethical conflicts of interest, and to implement best practices to minimize fraudulent claims.

30. Plaintiffs believe that these commitments are in the best interests of the Settlement Class and ensure that the Settlement funds are being zealously guarded.

31. I have personally prosecuted numerous antitrust class actions as lead counsel, co-lead counsel, and in other leadership positions. I have negotiated many settlements during those

years. In my opinion, and in the opinion of my esteemed Co-Lead Counsel Megan E. Jones, the proposed settlement agreement with Defendant Covestro LLC is fair, reasonable, and adequate. All Co-Lead Counsel, based on their experience, believe that the Settlement is in the best interests of the Settlement Class. This is because the Settlement provides substantial benefits to the Settlement Class and avoids the delay and uncertainty of continuing protracted and contentious litigation with the settling Defendant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 22, 2026, in San Diego, CA.

*/s/ Jason S. Hartley*
Jason S. Hartley